# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

### CLERK'S CERTIFICATE AND APPEALS COVER SHEET

### ABBREVIATED ELECTRONIC RECORD

Case Caption: The Satanic Temple, Inc. v. City of Boston

District Court Number: 21cv10102-AK

Fee:    Paid?   Yes __X__ No ____   Government filer ____   *In Forma Pauperis* Yes ____   No ____

Motions Pending    Yes ____ No __X__        Sealed documents    Yes ____ No __X__
*If yes, document #* _____        *If yes, document #* _____

*Ex parte* documents    Yes ____ No __X__        Transcripts    Yes ____ No __X__
*If yes, document #* _____        *If yes, document #* _____

Notice of Appeal filed by: Plaintiff/Petitioner __X__   Defendant/Respondent ____   Other: ____

Appeal from:

#47, #51, #63, #75, #76, #78, #87, #88, #119, #120

Other information:

I, Robert M. Farrell, Clerk of the United States District Court for the District of Massachusetts, do hereby certify that the annexed electronic documents:

#47, #51, #63, #75, #76, #78, #87, #88, #119, #120, and #122

with the electronic docket sheet, constitute the abbreviated record on appeal in the above entitled case for the Notice of Appeal # __122__ filed on __August 2, 2023__.

In testimony whereof, I hereunto set my hand and affix the seal of this Court on __August 3, 2023__.

**ROBERT M. FARRELL**
Clerk of Court

/s/Matthew A. Paine
Deputy Clerk

**PLEASE RETURN TO THE USDC CLERK'S OFFICE**

APPEAL

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:21-cv-10102-AK

The Satanic Temple, Inc. v. City of Boston,
Assigned to: District Judge Angel Kelley
Cause: 42:1983 Civil Rights Act

Date Filed: 01/20/2021
Date Terminated: 07/31/2023
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**The Satanic Temple, Inc.**                represented by **Matt Kezhaya**
Crown Law
150 S. Fifth Street
Suite 1850
Minneapolis, MN 55402
479-431-6112
Fax: 612-682-5277
Email: matt@crown.law
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brendan Durrigan**
Durrigan Law
1443A Dorchester Avenue
Boston, MA 02122
781-726-0763
Email: brendandurriganesq@gmail.com
*ATTORNEY TO BE NOTICED*

**Marc J. Randazza**
Randazza Legal Group, PLLC
4974 S. Rainbow Blvd.
Suite 100
Las Vegas, NV 89118
702-420-2001
Email: mjr@randazza.com
*TERMINATED: 04/07/2022*

V.

**Defendant**

**City of Boston,**                represented by **Edward F. Whitesell , Jr.**
City Of Boston Law Department
One City Hall Plaza
Room 615
Boston, MA 02201
617-635-4045

Email: edward.whitesell@boston.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nailah A. Freeman**
Ogletree Deakins Nash Smoak & Stewart,
P.C.
One Boston Place
Suite 3500
Boston, MA 02108
617-994-5700
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicole M. O'Connor**
City Of Boston Law Department
One City Hall Plaza
Room 615
Boston, MA 02201
617-635-4039
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth L. Bostwick**
City of Boston
One City Hall Square
Ste 615
BOSTON
Boston, MA 02201
617-635-4031
Email: elizabeth.bostwick@boston.gov
*ATTORNEY TO BE NOTICED*

**Robert S. Arcangeli**
City Of Boston Law Department
One City Hall Plaza
Room 615
Boston, MA 02201
617-635-4044
Email: robert.arcangeli@boston.gov
*ATTORNEY TO BE NOTICED*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 01/20/2021 | 1 | Civil Cover Sheet & Category Sheet by The Satanic Temple, Inc.. (Durrigan, Brendan) (Entered: 01/20/2021) |
| 01/24/2021 | 2 | COMPLAINT against City of Boston, Filing fee: $ 402, receipt number 0101-8604701 (Fee Status: Filing Fee paid), filed by The Satanic Temple, Inc.. (Attachments: # 1 Exhibit City Council Rules, # 2 Exhibit Council President Email, |

| | | |
|---|---|---|
| | | # 3 Exhibit O'Donnell-Jarry Email, # 4 Civil Cover Sheet Cover Sheet)(Durrigan, Brendan) (Entered: 01/24/2021) |
| 01/25/2021 | 3 | **ELECTRONIC NOTICE TO COUNSEL:** Counsel shall complete and file in PDF format a Local Category Form. The form can be found on the court's website under Resources/Forms. Counsel will use the event under Other Documents- Civil Cover Sheet & Category Sheet. (Vieira, Leonardo) (Entered: 01/25/2021) |
| 01/25/2021 | 4 | ELECTRONIC NOTICE of Case Assignment. Judge Allison D. Burroughs assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge M. Page Kelley. (Finn, Mary) (Entered: 01/25/2021) |
| 01/25/2021 | 5 | Summons Issued as to All Defendants. **Counsel receiving this notice electronically should download this summons, complete one for each defendant and serve it in accordance with Fed.R.Civ.P. 4 and LR 4.1. Summons will be mailed to plaintiff(s) not receiving notice electronically for completion of service.** (Vieira, Leonardo) (Entered: 01/25/2021) |
| 02/19/2021 | 6 | First MOTION for Leave to Appear Pro Hac Vice for admission of Matthew A. Kezhaya Filing fee: $ 100, receipt number 0101-8644113 by The Satanic Temple, Inc.. (Attachments: # 1 Civil Cover Sheet Cover Sheet, # 2 Supplement Arkansas Good Standing, # 3 Supplement MN Good Standing, # 4 Supplement TST Corp. Disclosure Statement, # 5 Affidavit Affidavit of Service)(Durrigan, Brendan) (Entered: 02/19/2021) |
| 02/19/2021 | 7 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered granting 6 Motion for Leave to Appear Pro Hac Vice Added Matthew A. Kezhaya. **Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** Pursuant to Local Rule 83.5.3, local counsel shall also file an appearance in this matter. Further, local counsel shall review all filings and shall personally appear in Court for any hearings or conferences, unless expressly excused by the Court for good cause. (McDonagh, Christina) (Entered: 02/19/2021) |
| 02/19/2021 | 8 | AFFIDAVIT OF SERVICE Executed by The Satanic Temple, Inc.. City of Boston, served on 2/18/2021, answer due 3/11/2021. Acknowledgement filed by The Satanic Temple, Inc.. (Durrigan, Brendan) (Entered: 02/19/2021) |
| 02/19/2021 | 9 | CORPORATE DISCLOSURE STATEMENT by The Satanic Temple, Inc.. (Durrigan, Brendan) (Entered: 02/19/2021) |
| 02/19/2021 | 10 | MOTION for Default Judgment as to City of Boston by The Satanic Temple, Inc.. (Durrigan, Brendan) (Entered: 02/19/2021) |
| 02/22/2021 | 11 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered On February 19, 2021, Plaintiff filed a motion for default judgment. [ECF No. 10 ]. That motion is DENIED. Under Federal Rule of Civil Procedure 5(b)(2)(E), service by email is acceptable if the defendant consents to such service in writing. Fed. R. Civ. P. 5(b)(2)(E) ("A paper is served under this rule by... sending it by other electronic means that the person consented to in writing."). Here, based on the email filed by Plaintiff and Ms. Freeman's response to that email, "I can accept service for the City," [ECF No. 8 at 3], it is unclear whether she consented to service by email or merely consented to accepting service on behalf of Defendant more generally. Plaintiff is directed to either obtain explicit written consent to service via email or otherwise |

| | | effectuate service upon Defendant consistent with the relevant federal rules. Plaintiff is also ordered to provide a copy of the docket sheet to Ms. Freeman. (McDonagh, Christina) (Entered: 02/22/2021) |
|---|---|---|
| 03/12/2021 | 12 | STATUS REPORT *(proof of service of docket sheet)* by The Satanic Temple, Inc.. (Kezhaya, Matthew) (Entered: 03/12/2021) |
| 04/05/2021 | 13 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , MOTION to Dismiss for Lack of Jurisdiction ( Responses due by 4/19/2021) by City of Boston,. (Freeman, Nailah) (Entered: 04/05/2021) |
| 04/05/2021 | 14 | MOTION to Dismiss for Lack of Jurisdiction , MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Memorandum of Law* ( Responses due by 4/19/2021) by City of Boston,.(Freeman, Nailah) (Entered: 04/05/2021) |
| 04/19/2021 | 15 | Opposition re 14 MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Memorandum of Law*, 13 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction filed by The Satanic Temple, Inc.. (Kezhaya, Matthew) (Entered: 04/19/2021) |
| 04/26/2021 | 16 | AMENDED COMPLAINT *as a matter of course pursuant to FRCP 15(a)(1)(B)* against City of Boston,, filed by The Satanic Temple, Inc.. (Attachments: # 1 Exhibit October 2 email from Malcolm Jarry to Council President, # 2 Exhibit October 9 email from ODonnell to Jarry)(Kezhaya, Matthew) (Entered: 04/26/2021) |
| 05/10/2021 | 17 | First MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Amended Complaint*, Amended MOTION to Dismiss for Lack of Jurisdiction *Amended Complaint* ( Responses due by 5/24/2021) by City of Boston,.(Freeman, Nailah) (Entered: 05/10/2021) |
| 05/10/2021 | 18 | MEMORANDUM in Support re 17 First MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Amended Complaint*Amended MOTION to Dismiss for Lack of Jurisdiction *Amended Complaint* filed by City of Boston,. (Freeman, Nailah) (Entered: 05/11/2021) |
| 05/11/2021 | 19 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered denying as moot 13 Motion to Dismiss for Failure to State a Claim; Motion to Dismiss for Lack of Jurisdiction and 14 Motion to Dismiss for Lack of Jurisdiction; Motion to Dismiss for Failure to State a Claim. (McDonagh, Christina) (Entered: 05/11/2021) |
| 05/24/2021 | 20 | MEMORANDUM in Opposition re 17 First MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Amended Complaint*Amended MOTION to Dismiss for Lack of Jurisdiction *Amended Complaint* filed by The Satanic Temple, Inc.. (Kezhaya, Matthew) (Entered: 05/24/2021) |
| 07/21/2021 | 21 | Judge Allison D. Burroughs: MEMORANDUM AND ORDER entered. Defendant's Amended Motion to Dismiss, [ECF No. 17 ], is GRANTED as to Counts II and III and otherwise DENIED. Specifically, Count II is dismissed for lack of standing, and Count III is dismissed for failure to state a claim. **SO ORDERED**. (McDonagh, Christina) (Entered: 07/21/2021) |
| 08/09/2021 | 22 | Request for notice of default by The Satanic Temple, Inc. . (Kezhaya, Matthew) (Entered: 08/09/2021) |
| 08/10/2021 | 23 | ANSWER to 16 Amended Complaint, by City of Boston,.(Freeman, Nailah) (Entered: 08/10/2021) |

| | | |
|---|---|---|
| 08/11/2021 | 24 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered. The parties shall submit a joint proposed schedule by 8/26/21 and indicate whether they object to the court setting a schedule on the written submission.(Folan, Karen) (Entered: 08/11/2021) |
| 08/26/2021 | 25 | JOINT STATEMENT re scheduling conference . (Freeman, Nailah) (Entered: 08/26/2021) |
| 08/30/2021 | 26 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered. The Court will set a schedule for the filing of dispositive motions, if necessary, at a post-discovery status conference on November 2, 2022 at 9:30am. Telephone Status Conference set for 11/2/2022 09:30 AM in Remote Proceeding : Boston before Judge Allison D. Burroughs.(McDonagh, Christina) (Entered: 08/30/2021) |
| 08/31/2021 | 27 | MOTION to Strike 23 Answer to Amended Complaint by The Satanic Temple, Inc.. (Kezhaya, Matthew) (Entered: 08/31/2021) |
| 08/31/2021 | 28 | MEMORANDUM in Support re 27 MOTION to Strike 23 Answer to Amended Complaint filed by The Satanic Temple, Inc.. (Kezhaya, Matthew) (Entered: 08/31/2021) |
| 09/01/2021 | 29 | Judge Allison D. Burroughs: ELECTRONIC ORDER entered: Plaintiff's motion to strike Defendant's answer as untimely, [ECF No. 27 ], is DENIED. The Court is vested with "significant discretionary authority to set and enforce filing deadlines in accordance with the Federal Rules of Civil Procedure." Perez-Cordero v. Wal-Mart P.R., 440 F.3d 531, 533 (1st Cir. 2006). The Court will exercise its discretion to excuse Plaintiff's untimeliness here. Further, although Plaintiff has styled its motion as one to strike, its true aim is a default judgment. See [ECF No. 27 at 2 ("WHEREFORE Plaintiff prays this Court (1) strike Defendant's answer; (2) direct the Clerk to enter a notice of default against Defendant; and (3) enter a default judgment, not different in kind from that prayed for in the amended complaint (FRCP 54(c)).")]. "Default is strong medicine and should be prescribed only in egregious cases." Hooper-Haas v. Ziegler Holdings, LLC, 690 F.3d 34, 3738 (1st Cir. 2012) (citations omitted). This is not such a case. Although Defendant's counsel should have kept better track of deadlines and/or sought an extension, the Court is not prepared to strike the answer (and potentially lay the groundwork for a default judgment) because it was filed six days late. That said, Defendant's counsel should be mindful of deadlines moving forward. (McDonagh, Christina) (Entered: 09/01/2021) |
| 09/01/2021 | 30 | NOTICE of Appearance by Marc J. Randazza on behalf of The Satanic Temple, Inc. (Randazza, Marc) (Entered: 09/01/2021) |
| 10/15/2021 | 31 | ELECTRONIC NOTICE of Reassignment. District Judge Angel Kelley added. Judge Allison D. Burroughs no longer assigned to case. (Danieli, Chris) (Entered: 10/15/2021) |
| 10/26/2021 | 32 | NOTICE of Appearance by Robert S. Arcangeli on behalf of City of Boston, (Arcangeli, Robert) (Entered: 10/26/2021) |
| 10/27/2021 | 33 | Emergency MOTION for Protective Order by City of Boston,.(Arcangeli, Robert) (Entered: 10/27/2021) |
| 10/27/2021 | 34 | MEMORANDUM in Support re 33 Emergency MOTION for Protective Order filed by City of Boston,. (Attachments: # 1 Exhibit)(Arcangeli, Robert) (Entered: 10/27/2021) |

| 10/28/2021 | 35 | Letter/request (non-motion) from Matthew A. Kezhaya (for The Satanic Temple) *requesting a briefing schedule.* (Kezhaya, Matthew) (Entered: 10/28/2021) |
| --- | --- | --- |
| 10/28/2021 | 36 | District Judge Angel Kelley: ELECTRONIC ORDER entered. Plaintiff has until October 29, 2021 at 9:00 am to file a statement explaining why the deposition of Councilor Michelle Wu was scheduled for November 2, 2021. The filing should be limited to this issue. Plaintiff has until November 12, 2021 to oppose the motion for protective order and motion to quash regarding the deposition of City Councilor at large Michelle Wu and to address defendant' request for attorney's fees. (Pacho, Arnold) (Entered: 10/28/2021) |
| 10/29/2021 | 37 | Letter/request (non-motion) from Matthew A. Kezhaya (for The Satanic Temple) *objecting to order to disclose opinion work product.* (Kezhaya, Matthew) (Entered: 10/29/2021) |
| 10/29/2021 | 38 | Letter/request (non-motion) from Matthew A. Kezhaya (for The Satanic Temple) *explaining why the deposition of Councilor Michelle Wu was scheduled for November 2, 2021.* (Kezhaya, Matthew) (Entered: 10/29/2021) |
| 10/29/2021 | 39 | NOTICE of Appearance by Nicole M. O'Connor on behalf of City of Boston, (O'Connor, Nicole) (Entered: 10/29/2021) |
| 10/29/2021 | 40 | District Judge Angel Kelley: ELECTRONIC ORDER entered re 33 Emergency MOTION for Protective Order.<br><br>Based upon the filings related to Defendant's motion 33 , the motion is ALLOWED in part, solely with regard to prohibiting Plaintiff's deposition of Councilor Michelle Wu on November 2, 2021 as noticed, and in accordance with Fed.R.Civ.P. 45(d) and Fed.R.Civ.P. 26(c). Resolution of Defendant's 33 Emergency MOTION for Protective Order beyond the noticed deposition date is reserved for further briefing by the parties. As per 36 ELECTRONIC ORDER, Plaintiff must file opposition to 33 Emergency MOTION for Protective Order by November 12, 2021. If Plaintiff files opposition, Defendant will have until November 26, 2021 to file any reply. (Pacho, Arnold) (Entered: 10/29/2021) |
| 11/01/2021 | 41 | NOTICE of Withdrawal of Appearance by Robert S. Arcangeli (Arcangeli, Robert) (Entered: 11/01/2021) |
| 11/12/2021 | 42 | RESPONSE to Motion re 33 Emergency MOTION for Protective Order filed by The Satanic Temple, Inc.. (Attachments: # 1 Exhibit Councilor Flaherty's LinkedIn profile, # 2 Exhibit City's privilege log)(Kezhaya, Matthew) (Entered: 11/12/2021) |
| 11/26/2021 | 43 | REPLY to Response to Motion re 33 Emergency MOTION for Protective Order filed by City of Boston,. (Freeman, Nailah) (Entered: 11/26/2021) |
| 11/26/2021 | 44 | SUR-REPLY to Motion re 33 Emergency MOTION for Protective Order filed by The Satanic Temple, Inc.. (Kezhaya, Matthew) (Entered: 11/26/2021) |
| 12/02/2021 | 45 | District Judge Angel Kelley: ELECTRONIC ORDER entered. Pursuant to Local Rule 7.1(b)(3), the Court STRIKES Plaintiff's 44 sur-reply filed in connection with the briefing of Defendant's 33 Emergency Motion for Protective Order. The Court already set a full 40 briefing schedule for this motion on October 29, 2021. Consistent with that briefing schedule and with Local Rule 7.1, additional papers may be submitted only by leave of Court. (Lara, Miguel) (Entered: 12/02/2021) |
| 12/10/2021 | 46 | ELECTRONIC NOTICE issued requesting courtesy copy for 33 Emergency MOTION for Protective Order , 34 Memorandum in Support of Motion, 43 Reply to Response to Motion, 37 Letter/request (non-motion), 38 Letter/request (non- |

| | | |
|---|---|---|
| | | motion), 42 Response to Motion,. Counsel who filed this document are requested to submit a courtesy copy of this document (or documents) to the Clerk's Office by 12/17/2021. **These documents must be clearly marked as a Courtesy Copy and reflect the document number assigned by CM/ECF.** (Lara, Miguel) (Entered: 12/10/2021) |
| 04/06/2022 | 47 | District Judge Angel Kelley: MEMORANDUM AND ORDER entered. Defendant's Motion for Protective Order [Dkt. 33 ] is GRANTED, with costs and reasonable attorneys' fees to be awarded to Defendant. (Lara, Miguel) (Entered: 04/06/2022) |
| 04/07/2022 | 48 | NOTICE of Withdrawal of Appearance by Marc J. Randazza (Randazza, Marc) (Entered: 04/07/2022) |
| 04/13/2022 | 49 | RESPONSE TO COURT ORDER by City of Boston, *SUBMISSION IN RESPONSE TO APRIL 6, 2022 AWARD OF COSTS AND ATTORNEYS FEES & REQUEST FOR ATTORNEYS FEES.* (Attachments: # 1 Affidavit, # 2 Affidavit, # 3 Affidavit, # 4 Affidavit)(Freeman, Nailah) (Entered: 04/13/2022) |
| 04/14/2022 | 50 | MOTION for Certificate of Appealability by The Satanic Temple, Inc..(Kezhaya, Matthew) (Entered: 04/14/2022) |
| 04/15/2022 | 51 | District Judge Angel Kelley: MEMORANDUM AND ORDER entered. Plaintiff's 50 MOTION for Certificate of Appealability is DENIED. See full text for further detail. (Lara, Miguel) (Entered: 04/15/2022) |
| 05/31/2022 | 52 | Joint MOTION for Protective Order by City of Boston,. (Attachments: # 1 Text of Proposed Order)(O'Connor, Nicole) (Entered: 05/31/2022) |
| 06/09/2022 | 53 | District Judge Angel Kelley: PROTECTIVE ORDER entered. (Lara, Miguel) Modified on 6/9/2022 - NEF regenerated with correct PDF. (Entered: 06/09/2022) |
| 06/15/2022 | 54 | NOTICE of Appearance by Robert S. Arcangeli on behalf of City of Boston, (Arcangeli, Robert) (Entered: 06/15/2022) |
| 07/21/2022 | 55 | MOTION for Reconsideration re 21 Memorandum & ORDER, *as to the Free Speech / Free Exercise claim (Count 2)* by The Satanic Temple, Inc..(Kezhaya, Matthew) . (Entered: 07/21/2022) |
| 08/03/2022 | 56 | Opposition re 55 MOTION for Reconsideration re 21 Memorandum & ORDER, *as to the Free Speech / Free Exercise claim (Count 2)* filed by City of Boston,. (O'Connor, Nicole) (Entered: 08/03/2022) |
| 09/02/2022 | 57 | MOTION to Quash *and Request for Sanctions* by City of Boston,. (Attachments: # 1 Exhibit Deposition Notice to Mayor Wu, # 2 Exhibit email exchange, # 3 Exhibit email exchange, # 4 Exhibit email exchange, # 5 Exhibit email exchange, # 6 Exhibit email exchange)(O'Connor, Nicole) (Entered: 09/02/2022) |
| 09/06/2022 | 58 | STATUS REPORT *re: discovery; forthcoming related case* by The Satanic Temple, Inc.. (Attachments: # 1 Exhibit (1) 2016 statement from then-Councilor Wu, # 2 Exhibit (2) 2017 statement from then-Councilor Ensaibi-George, # 3 Exhibit (3) TST notice to Boston that Wu is not under prot. order)(Kezhaya, Matt) (Entered: 09/06/2022) |
| 09/11/2022 | 59 | Opposition re 57 MOTION to Quash *and Request for Sanctions* filed by The Satanic Temple, Inc.. (Kezhaya, Matt) (Entered: 09/11/2022) |
| 09/12/2022 | 60 | STATUS REPORT *as to Boston's ongoing and transparent discovery obstruction* by |

| | | The Satanic Temple, Inc.. (Kezhaya, Matt) (Entered: 09/12/2022) |
|---|---|---|
| 09/13/2022 | 61 | Response by City of Boston, to 60 Status Report *and Status Report* 58 . (Attachments: # 1 Exhibit 30(b)(6) Depo Subpoena, # 2 Exhibit email dated July 18, # 3 Exhibit email dated July 29, # 4 Exhibit O'Donnell Depo Excerpt, # 5 Exhibit email dated Sept 1, # 6 Exhibit email regarding bench warrant, # 7 Exhibit email regarding scheduling, # 8 Exhibit email to follow up regarding scheduling, # 9 Exhibit email regarding scheduling, # 10 Exhibit email regarding agreement, # 11 Exhibit email confirming cancellation of depos)(O'Connor, Nicole) (Entered: 09/13/2022) |
| 09/15/2022 | 62 | Emergency MOTION to Quash *Deposition Subpoena to Mayor Wu* by City of Boston,. (Attachments: # 1 Exhibit Deposition Subpoena)(O'Connor, Nicole) (Entered: 09/15/2022) |
| 09/16/2022 | 63 | District Judge Angel Kelley: ELECTRONIC ORDER entered. Defendant's 57 MOTION to Quash and Defendant's 62 Emergency MOTION to Quash *Deposition Subpoena to Mayor Wu* are **GRANTED**. In light of the Court's prior Orders granting the City's motion for a protective order prohibiting the deposition of Mayor Wu [see Dkt. 47] and denying Plaintiff's motion for a certificate of appealability [see Dkt. 51], the deposition of Mayor Wu as noticed may not go forward. The proper avenue for Plaintiff to seek modification of the terms of the Protective Order is through a motion for reconsideration. Any motion for reconsideration must state which additional facts, adduced through discovery in the intervening months, have materially changed the circumstances such that the deposition of Mayor Wu is now necessary. Such a motion must specify how such facts were adduced, what efforts the parties have made to discover the information Plaintiff seeks through the avenues permitted by the Protective Order, why the other witnesses the City has identified cannot be sources of this information and, why, on the basis of such newly discovered facts, there is reason to believe that Mayor Wu's testimony will be of *unique* relevance to this case. Moreover, such a motion must further demonstrate that the above factors supporting modification outweigh the potential for the deposition to be harassing, duplicative, and unduly burdensome. See Fed. R. Civ. P. 26(b) and 45(d).<br><br>The parties, particularly Plaintiff's counsel, are further **ORDERED** to cease filing unsolicited status reports with the Court, as these reports have not provided the Court with any relevant information other than indicia that Plaintiff has not read or complied with its previous orders. The Court takes no action on Defendant's motion for sanctions at this time, but will consider imposition of sanctions if Plaintiff's counsel continues to indicate to the Court that he is not complying with orders or conducting discovery in good faith.<br><br>(Kelly, Danielle) (Entered: 09/16/2022) |
| 09/20/2022 | 64 | NOTICE Resetting a Hearing.<br><br>Status Conference set for 11/2/2022 10:30 AM in Courtroom 8 (In person only) before District Judge Angel Kelley.<br><br>Should the parties wish to appear by video conference, and all parties assent to such change, they may reach out to the Courtroom Deputy Clerk to modify the hearing no later than two business days prior to the scheduled hearing. (Lara, Miguel) (Entered: 09/20/2022) |

| 09/30/2022 | 65 | MOTION for Recusal by The Satanic Temple, Inc..(Kezhaya, Matt) (Entered: 09/30/2022) |
|---|---|---|
| 10/06/2022 | 66 | MOTION for Reconsideration by The Satanic Temple, Inc.. (Attachments: # 1 Exhibit Exhibits)(Kezhaya, Matt) (Entered: 10/06/2022) |
| 10/13/2022 | 67 | Opposition re 65 MOTION for Recusal filed by City of Boston,. (Bostwick, Elizabeth) (Entered: 10/13/2022) |
| 10/13/2022 | 68 | NOTICE of Appearance by Elizabeth L. Bostwick on behalf of City of Boston, (Bostwick, Elizabeth) (Entered: 10/13/2022) |
| 10/18/2022 | 69 | MOTION for Extension of Time to November 25, 2022 to Complete Discovery by The Satanic Temple, Inc..(Kezhaya, Matt) (Entered: 10/18/2022) |
| 10/18/2022 | 70 | Proposed MOTION for Order to Proposed Order Granting Discovery Extension by The Satanic Temple, Inc..(Kezhaya, Matt) (Entered: 10/18/2022) |
| 10/20/2022 | 71 | MEMORANDUM in Opposition re 66 MOTION for Reconsideration filed by City of Boston,. (Bostwick, Elizabeth) (Entered: 10/20/2022) |
| 10/28/2022 | 72 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 69 Motion for Extension of Time to Complete Discovery through November 25, 2022. (Lara, Miguel) (Entered: 10/28/2022) |
| 10/28/2022 | 73 | ELECTRONIC NOTICE Canceling Hearing. The Status Conference previously set for 11/2/22 is CANCELLED. (Lara, Miguel) (Entered: 10/28/2022) |
| 11/10/2022 | 74 | NOTICE of Appearance by Edward F. Whitesell, Jr on behalf of City of Boston, (Whitesell, Edward) (Entered: 11/10/2022) |
| 12/06/2022 | 75 | District Judge Angel Kelley: ORDER entered. For reasons explained in the attached Order, Plaintiff's 65 Motion for Recusal is **DENIED**. (Pacho, Arnold) (Entered: 12/06/2022) |
| 12/06/2022 | 76 | District Judge Angel Kelley: ORDER entered. For reasons explained in the attached Order, Plaintiff's 55 Motion for Reconsideration of the Court's 21 Order is **DENIED**. (Pacho, Arnold) (Entered: 12/06/2022) |
| 12/13/2022 | 77 | NOTICE of Withdrawal of Appearance by Robert S. Arcangeli (Arcangeli, Robert) (Entered: 12/13/2022) |
| 12/23/2022 | 78 | District Judge Angel Kelley: ELECTRONIC ORDER entered. Plaintiff's 66 Motion for Reconsideration of 47 Protective Order is **DENIED**.  As the Court previously ordered, [see Dkt. 63], it will only entertain a motion to reconsideration if facts have materially changed the circumstances such that the deposition of Mayor Wu is now necessary.  Plaintiff is required to show, among other factors, why "the other witnesses the City has identified cannot be sources of this information." Further, "the practice of calling high ranking government officials as witnesses" is discouraged, absent "extraordinary circumstances."  See Bogan v. City of Boston, 489 F.3d 417, 423 (1st Cir. 2007).  This type of discovery is permitted "only where it is shown that other persons cannot provide the necessary information."  Id. |

| | | |
|---|---|---|
| | | Here, Plaintiff did not depose the Rule 30(b)(6) representative whom the City designated as the person with knowledge of Mayor Wu's subjective intent. It relies on the statements of other witnesses instead of, as the 63 order requires, first developing testimony from the appropriate designee. The Court will not modify its protective order in the absence of evidence that Plaintiff has complied with its 63 order, and that the Rule 30(b)(6) designee cannot provide specific information that is necessary to the resolution of Plaintiff's claims.<br><br>(Lara, Miguel) (Entered: 12/23/2022) |
| 12/28/2022 | 79 | MOTION for Sanctions by The Satanic Temple, Inc.. (Attachments: # 1 Appendix Appendix of exhibits)(Kezhaya, Matt) (Entered: 12/28/2022) |
| 12/28/2022 | 80 | Amended MOTION for Sanctions by The Satanic Temple, Inc.. (Attachments: # 1 Appendix appendix of exhibits)(Kezhaya, Matt) (Entered: 12/28/2022) |
| 01/10/2023 | 81 | District Judge Angel Kelley: ELECTRONIC ORDER entered **FINDING AS MOOT** 79 Motion for Sanctions. (Pacho, Arnold) (Entered: 01/10/2023) |
| 01/10/2023 | 82 | RESPONSE to Motion re 80 Amended MOTION for Sanctions filed by City of Boston,. (Attachments: # 1 Affidavit with Exhibits "A' & "B")(Bostwick, Elizabeth) (Entered: 01/10/2023) |
| 01/13/2023 | 83 | District Judge Angel Kelley: ELECTRONIC ORDER entered REFERRING CASE to Chief Magistrate Judge M. Page Kelley. Referred for: Management of Motions for Sanctions. Fact discovery concluded in this matter on November 25, 2022. The Court previously granted Defendant's 33 request for reasonable attorneys' fees and costs, with the amount to be evaluated and assessed at the conclusion of discovery. That request and Plaintiff's 80 motion for sanctions are hereby referred.<br><br>(Pacho, Arnold) (Entered: 01/13/2023) |
| 01/13/2023 | 84 | ELECTRONIC NOTICE issued requesting courtesy copy of 80 plaintiff's motion for sanctions, including the appendix of exhibits. Counsel who filed this document are requested to submit a courtesy copy of this document to the Clerk's Office by January 20, 2022. **The document must be clearly marked as a Courtesy Copy and reflect the document number assigned by CM/ECF.** (Ferguson, Kerry) (Entered: 01/13/2023) |
| 01/19/2023 | 85 | Magistrate Judge M. Page Kelley: ELECTRONIC ORDER entered. Judge Angel Kelley previously allowed defendant's request 33 for attorneys' fees and costs in connection with defendant's motion for a protective order, see 47 , and has referred the question of the amount of the award to this court 83 . Defendant previously filed a memorandum asking for $8,334.24 in attorneys' fees and costs associated with the motion 49 . Plaintiff shall file a response to 49 stating its objections, if any, to defendant's request for attorneys' fees and costs 49 no later than Monday, February 6, 2023.(Lovett, Jarrett) (Entered: 01/19/2023) |
| 02/06/2023 | 86 | Opposition re 33 Emergency MOTION for Protective Order *(as to attorney's fees, 49 )* filed by The Satanic Temple, Inc.. (Attachments: # 1 Exhibit A - marked up 49 ) (Kezhaya, Matt) (Pacho, Arnold). (Entered: 02/06/2023) |
| 02/14/2023 | 87 | Magistrate Judge M. Page Kelley: ORDER entered. MEMORANDUM AND ORDER: The City's petition 49 is **allowed in part and denied in part.** The court |

| | | |
|---|---|---|
| | | deducts.4 hours from the requested amount and awards the City $8228.25 in attorneys' fees. (Vieira, Leonardo) (Entered: 02/14/2023) |
| 02/14/2023 | 88 | Magistrate Judge M. Page Kelley: ORDER entered: For the above reasons, plaintiff's motion for sanctions 80 is **denied.** (Vieira, Leonardo) (Entered: 02/14/2023) |
| 03/02/2023 | 89 | District Judge Angel Kelley: ELECTRONIC ORDER entered. Fact discovery closed on November 25, 2022. [Dkt. 83]. The parties shall submit a joint status report by Friday, March 10, 2023, to address whether (1) there is any outstanding fact discovery; (2) the parties anticipate expert discovery; (3) the parties anticipate filing dispositive motions; and (4) the parties wish to be referred to the Court's mediation program.(Lara, Miguel) (Entered: 03/02/2023) |
| 03/10/2023 | 90 | JOINT STATEMENT of counsel . (Kezhaya, Matt) (Entered: 03/10/2023) |
| 03/13/2023 | 91 | ELECTRONIC NOTICE of Hearing: Status Conference set for 3/15/2023 11:30 AM in Courtroom 8 (In person only) before District Judge Angel Kelley. (Lara, Miguel) (Entered: 03/13/2023) |
| 03/13/2023 | 92 | Case no longer referred to Magistrate Judge M. Page Kelley. (Lara, Miguel) (Entered: 03/13/2023) |
| 03/14/2023 | 93 | MOTION to Excuse Appearance of Counsel filed by The Satanic Temple, Inc.. (Kezhaya, Matt) Modified on 3/15/2023 to correct docket text. (Lara, Miguel). (Entered: 03/14/2023) |
| 03/15/2023 | 94 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 93 MOTION to Excuse Appearance of Counsel. (Lara, Miguel) (Entered: 03/15/2023) |
| 03/15/2023 | 95 | Electronic Clerk's Notes for proceedings held before District Judge Angel Kelley: Status Conference held on 3/15/2023. Case called. The Court heard from the parties regarding discovery. Plaintiff indicated outstanding discovery needs to be completed. Defendant reported that discovery has closed. An order will enter clarifying future scheduling order deadlines. (Court Reporter: Linda Walsh at lwalshsteno@gmail.com.)(Attorneys present: Matt Kezhaya for Plaintiff; Edward F. Whitesell, Jr. for Defendant) (Lara, Miguel) (Entered: 03/15/2023) |
| 03/16/2023 | 96 | District Judge Angel Kelley: ELECTRONIC ORDER entered. Following a status conference regarding the parties' dispute on the status of discovery, the Court resolves it with an order that discovery is officially closed. [Dkts. 83, 88]. "The [C]ourt has broad power to control discovery." City of Waltham v. U.S. Postal Serv., 11 F.3d 235, 243 (1st Cir. 1993). "In particular, courts have discretion to tailor discovery to the circumstances of the case at hand and to adjust the timing of discovery." Weinreich v. Brooks, No. 21-10496-NMG, 2022 WL 2373796, at *5 (D. Mass. Apr. 4, 2022) (citing Dynamic Image Tech., v. United States, 221 F.3d 34, 38 (1st Cir. 2000)). Plaintiff, The Satanic Temple, Inc. ("TST") filed this case against the City of Boston ("the City") on January 20, 2021, challenging the constitutionality of the City's legislative prayer selection process. [Dkt. 1]. Fact discovery was set to close on October 26, 2022. [Dkts. 25]. Initially, the parties contemplated 15 depositions per |

side to accommodate the 13 city councilors. [Id. at 1-2]. At the outset of discovery, TST sought to depose on Election Day, then-City Councilor Michelle Wu, who was a candidate in the Boston mayoral race, rather than the other city councilors named in the complaint. [Dkts. 34 at 2-3, 34-1, 47 at 3]. The Court granted the City's emergency motion to quash the subpoena for Election Day, November 2, 2021, [Dkt. 40], entered a protective order, and awarded attorney's fees, due to TST's politically motivated publicity stunts to harass then-Councilor Wu, on one of the most important days of her career. [Dkt. 47]. In that same order, the Court set expectations that the parties would "diligently engag[e] in discovery" and that TST would "dispense with [its] impermissible antics and abusive tactics." [Id. at 15].

Since that order, TST has conducted only two depositions: former City Councilor Anissa Essaibi-George and the 30(b)(6) designee, Christine O'Donnell, despite the fact that the City identified other 30(b)(6) deponents, including chiefs of staff for Mayor Wu, Councilor Flynn, Councilor Baker, and Councilor Flaherty, as early as July 2022. [Dkt. 71 at 2]. Plaintiff did not take their depositions. In September 2022, TST filed multiple unsolicited status reports for unknown reasons. [Dkts. 58, 60]. To the extent that TST reached an impasse with the City on any discovery issue, it never filed a motion to compel discovery. Instead of conducting discovery or filing a motion to compel discovery before the discovery deadline, TST filed a motion for the Court to reconsider its decision on the City's motion to dismiss on the one-year anniversary of that decision. [Dkts. 21, 55]. TST also filed motions for the Court to recuse itself and to reconsider its protective order. [Dkts. 65, 66]. TST then filed a motion to extend discovery, which it stated could be completed in thirty days by November 25, 2022. [Dkt. 69]. The Court granted the motion to extend the discovery deadline to November 25, 2022, as requested. [Dkt. 72].

During that time, TST did not conduct any of the remaining 30(b)(6) depositions. [See Dkt. 90]. TST also filed a motion for sanctions, [Dkts. 79, 80], but did not ask for the Court's intervention through a motion to compel discovery. See Fed. R. Civ. P. 37(a); Rivera-Almodovar v. Instituto Socioeconomico Comunitario, 730 F.3d 23, 27 (1st Cir. 2013) (noting that "[a] motion to compel is a standard tool, well within the capability of any reasonably diligent litigant"). In this Court's Standing Order regarding General Motion Practice, publicly available on the District of Massachusetts's website, the Court advises litigants, "[e]xcept for good cause shown, discovery motions must be filed no later than the close of fact discovery." See AK Standing Order regarding General Motion Practice C(1). TST did not file a motion to extend fact discovery beyond the November 25, 2022 deadline, yet states in its status report that fact discovery is outstanding, including several 30(b)(6) depositions. [Dkt. 90]. The Court twice noted on the docket that fact discovery closed on November 25, 2022. [Dkts. 83, 89]. TST did not file a motion to extend discovery, motion to compel discovery after these orders were entered, a motion for reconsideration of these orders, nor a motion for clarification.

Federal Rule of Civil Procedure 16(b)(4) provides that courts may modify a schedule only for "good cause." "To show good cause, a party must demonstrate the deadline in the scheduling order may not reasonably be met, despite the diligence of the party seeking the extension." House of Clean, Inc. v. St. Paul Fire & Marine Ins. Co., 775 F. Supp. 2d 296, 298 (D. Mass. 2011) (citation and internal quotation marks omitted). Since the Court has already granted TST an extension, and Plaintiff fails to show it acted with diligence to complete discovery within the deadline set, the Court declines to allow discovery to continue. As previously stated, discovery closed on November 25, 2022. [Dkts. 83, 89]. TST did not preserve the outstanding discovery disputes with a properly filed motion to compel and has not acted

| | | |
|---|---|---|
| | | diligently in pursuit of discovery. TST chose to expend judicial resources on a multitude of other motions, rather than conduct available discovery within the deadlines. This case is now two years old and shall move forward.<br><br>The parties advised the Court that they intend to file cross-motions for summary judgment. [Dkt. 90 at 3]. The parties shall file their respective motions for summary judgment by May 1, 2023. The parties' oppositions are due by May 22, 2023, and the parties' replies are due by June 5, 2023. The Court directs the parties to the Court's Standing Order regarding General Motion Practice, located on the Court's website.<br><br>(Pacho, Arnold) (Entered: 03/16/2023) |
| 04/25/2023 | 97 | ELECTRONIC NOTICE of Hearing.<br><br>This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the courtroom deputy of the session as soon as possible.<br><br>Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the general orders and public notices of the Court available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.<br><br>Status Conference set for 5/11/2023 12:00 PM in Remote Proceeding : Boston before District Judge Angel Kelley. (Lara, Miguel) (Entered: 04/25/2023) |
| 05/01/2023 | 98 | MOTION for Summary Judgment by City of Boston,.(Whitesell, Edward) (Entered: 05/01/2023) |
| 05/01/2023 | 99 | MEMORANDUM in Support re 98 MOTION for Summary Judgment filed by City of Boston,. (Whitesell, Edward) (Entered: 05/01/2023) |
| 05/01/2023 | 100 | Statement of Material Facts L.R. 56.1 re 98 MOTION for Summary Judgment filed by City of Boston,. (Attachments: # 1 Exhibit 1 - Deposition Excerpts, # 2 Exhibit 2 - Emails, # 3 Exhibit 3 - Answers to Interrogatories, # 4 Exhibit 4 - Answers to Interrogatories, # 5 Exhibit 5 - Schedules, # 6 Exhibit 6 - Deposition Excerpts, # 7 Exhibit 7 - Deposition Excerpts, # 8 Exhibit 8 - Email and Letter, # 9 Exhibit 9 - Email and Charts, # 10 Exhibit 10 - Email, # 11 Exhibit 11 - Email, # 12 Exhibit 12 - Email and Letter, # 13 Exhibit 13 - Email, # 14 Exhibit 14 - MCAD Complaint) (Whitesell, Edward) (Entered: 05/01/2023) |
| 05/01/2023 | 101 | MOTION for Summary Judgment by The Satanic Temple, Inc..(Kezhaya, Matt) (Entered: 05/01/2023) |
| 05/01/2023 | 102 | MEMORANDUM in Support re 101 MOTION for Summary Judgment filed by The Satanic Temple, Inc.. (Kezhaya, Matt) (Entered: 05/01/2023) |
| 05/01/2023 | 103 | NOTICE by The Satanic Temple, Inc. re 101 MOTION for Summary Judgment *[notice of conventional filing: clip of Dr. Hall sermon]* (Kezhaya, Matt) (Entered: 05/01/2023) |
| 05/01/2023 | 104 | Statement of Material Facts L.R. 56.1 re 101 MOTION for Summary Judgment filed by The Satanic Temple, Inc.. (Attachments: # 1 Appendix appendix of exhibits) |

| | | (Kezhaya, Matt) (Entered: 05/01/2023) |
|---|---|---|
| 05/03/2023 | 105 | MOTION to Continue Status Conference to 5/19/2023 by The Satanic Temple, Inc.. (Kezhaya, Matt) (Entered: 05/03/2023) |
| 05/03/2023 | 106 | NOTICE by The Satanic Temple, Inc. (Kezhaya, Matt) (Entered: 05/03/2023) |
| 05/08/2023 | 107 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 105 Motion to Continue.<br><br>This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the courtroom deputy of the session as soon as possible.<br><br>Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the general orders and public notices of the Court available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.<br><br>Status Conference rescheduled to 5/12/2023 12:00 PM in Remote Proceeding : Boston before District Judge Angel Kelley.<br><br>(Lara, Miguel) (Entered: 05/08/2023) |
| 05/12/2023 | 108 | Electronic Clerk's Notes for proceedings held before District Judge Angel Kelley: Status Conference held on 5/12/2023 by video conference.<br><br>Case called. The Court set a jury trial date and oral argument on the pending summary judgment motions. A pretrial order will issue at a later date.<br><br>**NOTICE OF HEARINGS:**<br><br>1. Motion Hearing re 98 MOTION for Summary Judgment, 101 MOTION for Summary Judgment set for 6/28/2023 11:00 AM in Courtroom 8 (In person only) before District Judge Angel Kelley.<br><br>2. Jury Trial set for 3/4/2024 09:00 AM in Courtroom 8 (In person only) before District Judge Angel Kelley.<br><br>(Court Reporter: Linda Walsh at lwalshsteno@gmail.com.)(Attorneys present: Matt Kezhaya for Plaintiff; Edward F. Whitesell, Jr. for Defendant) (Lara, Miguel) (Entered: 05/12/2023) |
| 05/22/2023 | 109 | Opposition re 101 MOTION for Summary Judgment filed by City of Boston,. (Whitesell, Edward) (Entered: 05/22/2023) |
| 05/22/2023 | 110 | Statement of Material Facts L.R. 56.1 re 101 MOTION for Summary Judgment *(Defendant's Responses)* filed by City of Boston,. (Whitesell, Edward) (Entered: 05/22/2023) |
| 05/22/2023 | 111 | RESPONSE to Motion re 98 MOTION for Summary Judgment filed by The Satanic Temple, Inc.. (Kezhaya, Matt) (Entered: 05/22/2023) |

| 05/22/2023 | 112 | Statement of Material Facts L.R. 56.1 re 98 MOTION for Summary Judgment *(TST responses)* filed by The Satanic Temple, Inc.. (Kezhaya, Matt) (Entered: 05/22/2023) |
| --- | --- | --- |
| 05/22/2023 | 113 | Supplemental ADDENDUM re 98 MOTION for Summary Judgment *(TST's supplemental appendix)* filed by The Satanic Temple, Inc.. (Kezhaya, Matt) (Entered: 05/22/2023) |
| 06/05/2023 | 114 | REPLY to Response to 101 MOTION for Summary Judgment filed by The Satanic Temple, Inc.. (Kezhaya, Matt) (Entered: 06/05/2023) |
| 06/23/2023 | 115 | MOTION excuse Attorney Durrigan's attendance at MSJ hearing re 108 Status Conference,,,, Set Hearings,,,, Set Motion and R&R Deadlines/Hearings,,, by The Satanic Temple, Inc..(Kezhaya, Matt) (Entered: 06/23/2023) |
| 06/27/2023 | 116 | District Judge Angel Kelley: ELECTRONIC ORDER entered **GRANTING** 115 MOTION to Excuse Attorney Durrigan's attendance at MSJ hearing. (Pacho, Arnold) (Entered: 06/27/2023) |
| 06/28/2023 | 117 | Letter/request (non-motion) from TST re: requested transcript citations . (Kezhaya, Matt) (Entered: 06/28/2023) |
| 06/28/2023 | 118 | Electronic Clerk's Notes for proceedings held before District Judge Angel Kelley: Motion Hearing held on 6/28/2023 re 98 MOTION for Summary Judgment filed by the City of Boston, 101 MOTION for Summary Judgment filed by The Satanic Temple, Inc..

Case called. The Court heard oral argument on the pending motions for summary judgment. Matter taken under advisement.

(Court Reporter: Linda Walsh at lwalshsteno@gmail.com.) (Attorneys present: Matt Kezhaya for Plaintiff; Edward F. Whitesell, Jr. for Defendant) (Pacho, Arnold) (Entered: 06/28/2023) |
| 07/31/2023 | 119 | District Judge Angel Kelley: MEMORANDUM AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT entered.

For the reasons explained in the attached memorandum, the City's motion for summary judgment [Dkt. 98] is **GRANTED**, and TST's motion for summary judgment [Dkt. 101] is **DENIED**. (Lara, Miguel) (Entered: 07/31/2023) |
| 07/31/2023 | 120 | District Judge Angel Kelley: JUDGMENT entered. (Lara, Miguel) (Entered: 07/31/2023) |
| 07/31/2023 | 121 | ELECTRONIC NOTICE Canceling Hearing. Jury Trial previously scheduled for March 4, 2023 is CANCELLED. (Lara, Miguel) (Entered: 07/31/2023) |
| 08/02/2023 | 122 | NOTICE OF APPEAL 47 MEMORANDUM AND ORDER, 51 MEMORANDUM AND ORDER, 63 ELECTRONIC ORDER, 75 ORDER, 76 ORDER, 78 ELECTRONIC ORDER, 87 MEMORANDUM AND ORDER, 88 ORDER, 119 MEMORANDUM AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT, 120 JUDGMENT by The Satanic Temple, Inc. Filing fee: $ 505, receipt number AMADC-9975279 Fee Status: Not Exempt. NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov MUST be completed and submitted to the Court of Appeals. **Counsel shall register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf. Counsel shall also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section** |

at http://www.ca1.uscourts.gov/cmecf. **US District Court Clerk to deliver official record to Court of Appeals by 8/22/2023. (Kezhaya, Matt)**

**Modified on 8/3/2023 to Correct Docket Text and Add CM/ECF Document Links to Orders Being Appealed as Counsel Kezhaya Failed to Follow the CM/ECF NextGen Prompts When Filing the Notice of Appeal in Violation of Court Rules and CM/ECF NextGen Administrative Procedures (Paine, Matthew).**

**(Entered: 08/02/2023)**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THE SATANIC TEMPLE, INC., | ) | |
| | ) | Case No. 21-CV-10102-AK |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF BOSTON, MA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER ON DEFENDANT CITY OF BOSTON'S EMERGENCY MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH REGARDING THE DEPOSITION OF CITY COUNCILOR AT LARGE MICHELLE WU

**A. KELLEY, D.J.**

Currently pending before the Court is Defendant City of Boston's ("Defendant" or "the City") Emergency Motion for Protective Order and Motion to Quash Regarding the Deposition of City Councilor At Large Michelle Wu. [Dkt. 33 ("Def.'s Mot.")]. For the reasons set forth below, Defendant's motion is <u>GRANTED</u>. Additionally, Defendant's request for costs and attorneys' fees is <u>GRANTED</u>, with the amount to be determined pending further motion by Defendant and subsequent litigation.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

The City's motion [Def.'s Mot.] arises out of a subpoena that Plaintiff The Satanic Temple ("Plaintiff" or "TST") served on then-City Councilor At Large Michelle Wu, in connection with litigation wherein Plaintiff has challenged the constitutionality of the Boston City Council's invocation selection policy. TST filed this action on January 20, 2021 [Dkt. 1],

1

challenging the constitutionality of Defendant's legislative prayer selection process under both the First and Fourteenth Amendments to the United States Constitution, as well as the Free Exercise Clause of the Massachusetts Constitution. [Dkt. 2 ("Compl.") at ¶¶ 74–109; Dkt. 16 ("Am. Compl.") at ¶¶ 74–117].

The Boston City Council has a "longstanding tradition" of beginning its legislative sessions with invocations or prayers [Dkt. 34 ("Def.'s Mem. Supp. Mot.") at 1], with each City Councilor selecting a guest invocation speaker on a rotating basis for each session [id.; Am. Compl. at ¶¶ 2, 8]. Per the Amended Complaint, TST is a religious organization headquartered in Salem, MA and with a Boston area membership of 2,449 [id. at ¶¶ 20–21]. TST initiated this litigation to challenge the City Council's tradition and its repeated denials of TST's requests to deliver the invocation in 2016–2018 [id. at ¶¶ 12, 23; Dkt. 16-1]. TST has alleged that these denials and the City's legislative prayer practice violate the Establishment Clause of the First Amendment (Count 1), the Free Speech Clause and Free Exercise Clause of the First Amendment (Count 2), the Equal Protection Clause of the Fourteenth Amendment (Count 3), and the Free Exercise Clause of the Massachusetts Constitution (Count 4), essentially by failing to provide equal or proportional opportunities for participation by all religious groups. [Am. Compl. at ¶¶ 105–11]. Following the City's filing of a Motion to Dismiss the Amended Complaint [Dkt. 17], the Court dismissed Counts 2 and 3 on July 21, 2021 [Dkt. 21], leaving Counts 1 and 4 active claims in this litigation.[1]

On August 26, 2021, the parties submitted a joint proposed pretrial schedule containing, in relevant part, a September 9, 2021 deadline for initial disclosures and a November 19, 2021 deadline for any amendments to pleadings, with a deadline the following year for the completion

---

[1] Specifically, the Court dismissed TST's Free Speech and Free Exercise claim (Count 2) for lack of standing [Dkt. 21 at 8], and dismissed TST's Equal Protection Clause claim (Count 3) for failure to state a claim [id. at 15].

of all discovery by October 26, 2022. [Dkt. 25]. On August 30, 2021, the Court entered an order

adopting these discovery deadlines. [Dkt. 26].

Withing two months of the Court's scheduling order, on October 27, 2021 the City filed

its Emergency Motion for Protective Order and Motion to Quash Regarding the Deposition of

City Councilor At Large Michelle Wu. [Def.'s Mot.]. On October 22, 2021, Plaintiff had served

a deposition subpoena on Councilor Wu (hereinafter "Mayor Wu" in light of her current position

and title)[2] for her appearance on November 2, 2021 at 9:00 am, at The Satanic Temple's

headquarters in Salem, MA. [Dkt. 34-1 ("Def.'s Mem. Supp. Mot. Ex. 1")]. November 2, 2021

was the date of Boston's local elections, in which Mayor Wu was a mayoral candidate on the

ballot. [Def.'s Mem. Supp. Mot. at 3]. The City states that upon receiving the deposition notice,

it informed Plaintiff that Mayor Wu would be unavailable that day, and asserts that Plaintiff's

counsel stated he was unwilling to reschedule the noticed deposition date. [Id.]

On October 27, 2021, the parties conferred pursuant to Local Rule 7.1, though their

accounts of this conference differ. [Def.'s Mem. Supp. Mot. at 3; Dkt. 35]. In his October 28,

2021 filing requesting a briefing schedule on the City's emergency motion, Plaintiff's counsel

stated the City "proposed to alleviate the emergency by rescheduling the deposition sufficiently

into the future to allow briefing this issue in the ordinary course of time." [Dkt. 35]. He then

claims the City "reneged" on that agreement when it refused to provide actual dates for Mayor

Wu's deposition. [Id.] However, in the email exchange Plaintiff's counsel attached to his filing,

counsel for the City stated the City "*maintains* that it will not produce Ms. Wu to testify without

a court order in this matter" [Dkt. 35-2] (emphasis added), and in its memorandum supporting its

emergency motion, the City states that at the October 27, 2021 conference, it "again informed

---

[2] Ms. Wu was elected and sworn in as Mayor of Boston between the time of Plaintiff's filing of opposition to the
City's motion, and the City's filing of their reply. [Dkt. 43 at 1].

Plaintiff of Councilor Wu's unavailability and [the City's] position with respect to the deposition of Councilor Wu" [Def.'s Mem. Supp. Mot. at 3].

Following Plaintiff's request for a briefing schedule and in light of the imminence and significance of the noticed deposition date, on October 28, 2021, the Court ordered Plaintiff to file a statement limited to the issue of "why the deposition of Councilor Michelle Wu was scheduled for November 2, 2021," and set a standard briefing schedule for the remaining, non-emergency issues raised in the City's motion—specifically the motion for a protective order. [Dkt. 36]. On October 29, 2021, Plaintiff's counsel filed two letters with the Court: one objecting to the Court's order [Dkt. 37], and another submitted in compliance with the order and providing an explanation for noticing Mayor Wu's deposition for Election Day [Dkt. 38].

Based on Plaintiff's failure to provide any compelling justification for noticing Mayor Wu's deposition for Election Day (not to mention his admitted intent to invite maximum inconvenience, political attention, and media scrutiny of TST's litigation through the deposition notice) [Dkt. 38], along with the obvious hardship posed to Mayor Wu, on October 29, 2021 the Court issued an order granting in part the City's motion, "solely with regard to prohibiting Plaintiff's deposition of Councilor Michelle Wu on November 2, 2021 as noticed," and reserving judgment on the motion as a whole pending further briefing [Dkt. 40]. This Memorandum and Order addresses the Motion for a Protective Order.

In accordance with the Court's ordered briefing schedule, Plaintiff filed opposition to the City's motion on November 12, 2021 [Dkt. 42 ("Pl.'s Opp'n")], and the City filed its reply on November 26, 2021 [Dkt. 43 ("Def.'s Reply")]. Plaintiff then filed a sur-reply that same day [Dkt. 44], which the Court struck from the record [Dkt. 45], due to Plaintiff's failure to seek

leave to file additional papers beyond those set by the Court's briefing schedule and by the Local Rules.

## II.    LEGAL STANDARD

Fed. R. Civ. P. 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." Fed. R. Civ. P. 26(b)(1). See also KinectUs LLC v. Bumble Trading LLC, No. 21-MC-91665-ADB, 2021 WL 6066539, at * 2 (D. Mass. Dec. 22, 2021). Moreover, "[a]s the Supreme Court has instructed, because 'discovery itself is designed to help define and clarify the issues,' the limits set forth in Rule 26 must be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig., No. MDL 13-2419-FDS, 2013 WL 6058483, at *3 (D. Mass. Nov. 13, 2013) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)); see also Green v. Cosby, 152 F. Supp. 3d 31, 34 (D. Mass. 2015), modified on reconsideration, 160 F. Supp. 3d 431 (D. Mass. 2016); Cabi v. Boston Children's Hosp., No. 15-CV-12306-DJC, 2017 WL 8232179, at *1 (D. Mass. June 21, 2017).

Accordingly, litigants may serve subpoenas on third parties as per Fed. R. Civ. P. 45, but the subpoena "must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)." Cates v. Zeltiq Asethetics, Inc., No. 20-MC-91234, 2020 WL 5517457, at *2 (D. Mass. Sept. 14, 2020) (quoting Green, 152 F. Supp. 3d at 34).

Notwithstanding the general latitude afforded parties seeking relevant information during discovery, the Court is required by Fed. R. Civ. P. 26(b)(2)(C) to "limit the frequency or extent of discovery otherwise allowed by the [Rules of Civil Procedure] or by local rule if it determines

that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Cabi, 2017 WL 8232179, at *2 (quoting Fed. R. Civ. P. 26(b)(2)(C)).

In order to minimize excessive expense, delay, and potential abuse of process, the Federal Rules of Civil Procedure therefore grant the courts the authority to, "for good cause, issue a [protective] order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... forbidding the disclosure [or] discovery." Cabi, 2017 WL 8232179, at *2 (quoting Fed. R. Civ. P. 26(c)(1)(A)).

Relatedly, under Rule 45, the Court "'must quash or modify a subpoena that: ... subjects a person to undue burden' on timely motion from a party or non-party." KinectUs, 2021 WL 6066539, at *2 (quoting Fed. R. Civ. P. 45(d)(3)(A)(iv)). When ruling on such a motion, the Court must "weigh the need of the party seeking discovery against any undue hardships created by permitting it," and consider the potential discovery's "relevance, the requesting party's need, the breadth of the request, and the burden imposed." Id. (quoting Green, 152 F. Supp. 3d at 36). "A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." Peoples v. Time Warner Cable, Inc., No. 3:16-CV-11398-MGM, 2017 WL 2836991, at *2 (D. Mass. June 30, 2017) (quoting Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986)).

## III.    DISCUSSION

As per the Court's October 29, 2021 order [Dkt. 40] allowing the City's motion to quash the deposition subpoena solely with regard to the November 2, 2021 deposition date, the Court has already found that under the standards set by Federal Rules of Civil Procedure 26(c) and 45(d), Plaintiff's deliberate scheduling of Mayor Wu's deposition for Election Day for the Mayoral race created an impermissible undue burden.

The City asserts there are readily available alternative sources of the "discoverable information" Mayor Wu might possess (namely, the 47 total individuals named in Defendant's initial disclosures) [Def.'s Mem. Supp. Mot. at 2–3, 5]. It also argues the lack of any mention of Mayor Wu in Plaintiff's complaint supports the City's claim that Plaintiff's intent has been to harass Mayor Wu rather than to pursue discoverable information relevant to this litigation challenging the City Council's legislative prayer scheme. [Id. at 2, 6]. In further support of its claim of harassment, the City cites Plaintiff's disinterest even in deposing those City Councilors it does name in its complaint [id. at 3], and the evident targeting of Mayor Wu for an Election Day deposition so early in discovery due to her then-status as one of Boston's only two candidates for mayor [id. at 6]. Moreover, the City asserts Mayor Wu is a high-ranking government official (and that she was as City Councilor as well), affording her extra protections from litigation discovery absent personal involvement or demonstrated need. [Id. at 4].

Following Plaintiff's filing of the aforementioned letter objection and explanatory letter, Plaintiff filed opposition focusing heavily on the question of whether and when Mayor Wu would qualify as a "high-ranking government official," and arguing Mayor Wu "has unique knowledge about the facts" [Pl.'s Opp'n at 9], due to her having declined to invite TST to give

the invocation, her recounting of the City Council's invocation policy in an email, and her presence on the City's privilege log [id. at 10–11].

For the reasons discussed below, the Court finds the weighing of potential burdens and alternatives under Fed. R. Civ. P. 26(b)(2)(C), as well as the imposition of undue burden and annoyance under Fed. R. Civ. P. 26(c)(1) and 45(d)(1), necessitates limiting discovery by issuing a protective order to preclude Plaintiff's deposition of Mayor Wu.

### A. Mayor Wu's Relevance to this Litigation – Analysis under Fed. R. Civ. P. 26(b)(2)(C)

While the City does not dispute that Mayor Wu may possess relevant knowledge or information regarding the City Council's invocation practice [Dkt. 43, Def.'s Reply at 2], it makes numerous arguments directing to less burdensome sources of the same information, and Mayor Wu's overall lack of relevance to the instant litigation. See generally [Dkt. 34, Def.'s Mem. Supp. Mot.; Def.'s Reply].

Under Fed. R. Civ. P. 26(b)(2)(C), the Court is obligated to limit otherwise allowable discovery if, in relevant part, it determines the information "can be obtained from some other source that is more convenient, less burdensome, or less expensive," or if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C). In a case upholding the validity of subpoenas of non-parties even where the information sought was alleged to be publicly available, one District of Massachusetts court explained the standard as follows: "If the material sought by subpoena is readily available, either from a party to the action or from a public source, obtaining it through subpoena on a nonparty often will create an undue burden. The mere availability of the documents from another source, however, does not preclude a subpoena directed to a nonparty if the party serving the subpoena

can show that it is more expeditious to obtain the documents from a witness." In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig., No. MDL 13-2419-FDS, 2013 WL 6058483, at *7 (D. Mass. Nov. 13, 2013) (quoting Gray v. Town of Easton, No. 3:12cv166, 2013 WL 2358599, at *3 (D. Conn. May 29, 2013)). Accordingly, where the information sought in this case is not only readily available from up to 47 other people, but also where the particular nonparty subpoena at issue burdens the City's highest-ranking official and was largely issued as a publicity stunt, it is not difficult to find undue burden in favor of a protective order.

When the City provided Plaintiff a list of 47 individuals who might possess relevant information, it provided readily available alternatives that would be "more convenient, less burdensome, [and] less expensive." Fed. R. Civ. P. 26(b)(2)(C). Moreover, the City correctly points out that Plaintiff's primary surviving claim under the Establishment Clause of the First Amendment ultimately hinges on an analysis of the constitutionality of the invocation practice itself. [Def.'s Reply at 2–3]. This is as distinct from Plaintiff's claims under the Equal Protection Clause, which, had they survived the City's motion to dismiss, would have required an inquiry into potential impermissible selective treatment by the City Councilors. [Dkt. 21 at 14; Def.'s Reply at 2–3]. Because the Court dismissed the Equal Protection claim in July 2021, the only relevant and discoverable information to be obtained from current or former City Councilors would be of a relatively general nature regarding the Council's prayer scheme, which further diminishes the importance of Mayor Wu's testimony and indicates this information could easily be provided by lower-ranking government officials. Notably, TST has failed to allege anything to the contrary in support of its surviving claims.

In an attempt to claim Mayor Wu does possess unique knowledge regarding this litigation, TST asserts that her inclusion as the only then-City Councilor on the City's privilege

log, despite not being the only Councilor from whom TST sought an invocation invitation, "suggests that Wu had the most involved role among the Councilors in determining that TST shall not be invited." [Pl.'s Opp'n at 11]. The Court is entirely unpersuaded by this conclusory assumption. For example, it is just as likely (and just as privileged and therefore undiscoverable) that Mayor Wu was actually the most concerned with ensuring the City Council's legislative prayer scheme provided opportunity for participation by minority religious groups. Moreover, despite noting it directed its requests for an invitation to multiple City Councilors besides Mayor Wu, TST is notably silent in its opposition filing as to who those Councilors are, and why none of them have been noticed for depositions despite the purported imperative of deposing Mayor Wu as based on her time on the Council. [Id.]

Finally, while the discovery process is still newly underway, TST still *has* "ample opportunity to obtain the information by discovery in the action" under Fed. R. Civ. P. 26(b)(2)(C). As such, its conduct in noticing Mayor Wu's deposition for Election Day so quickly, and intentionally doing so in order to attract publicity and tarnish the reputation of a rising political leader [Dkt. 38], demonstrates further violation of Rule 26(b)(2)(C).

## B. Undue Burden Imposed by Plaintiff's Deposition of Mayor Wu – Analysis under Fed. R. Civ. P. 26(c)(1) and 45(d)(1)

In addition to the burdens imposed by Plaintiff's noticing of Mayor Wu's deposition already discussed above, it is worth highlighting the City's claim that requiring Mayor Wu to participate in a deposition "in this discovery process will in fact interfere with her government responsibilities" [Def.'s Reply at 2], as well as its recognition that, were every Boston City Councilor to be deposed "regarding every invitation extended to an invocation speaker, 'such

officials [would] spend an inordinate amount of time tending to pending litigation' rather than running the government'" [id. (quoting United States v. Morgan, 313 U.S. 409, 422 (1941))].

In order for undue burden to justify the issuance of a protective order, there must be a finding of "good cause[,] [which] must be based on a particular factual demonstration of potential harm, not on conclusory statements." Peoples v. Time Warner Cable, Inc., 2017 WL 2836991, at *2. Yet in addition to the interference with local government—a harm which cannot be overlooked amidst a catastrophic, years-long global pandemic—the City also enumerates how Plaintiff's counsel's admissions regarding his motives for noticing Mayor Wu's deposition when and how he did constituted harassment of Mayor Wu, improperly shifted attention towards the irrelevant subject of Mayor Wu's "personal ambitions," and redirected City resources away from the elections and other City business and towards responding to Plaintiff's bad-faith deposition notice. [Dkt. 43 at 6].

Moreover, unlike in many cases where motions for protective orders under Rules 26 and 45 were at least partially denied, Defendant's objections to Plaintiff's subpoena have nothing to do with many of the most readily given—and difficult to verify—reasons for seeking such a protective order, such as confidentiality or party desires to prevent access to certain documents or communications. See, e.g., In re New England Compounding Pharmacy, Inc., 2013 WL 6058483, at *11 (seeking to avoid, inter alia, disclosure of proprietary business information); Green v. Cosby, 152 F. Supp. 3d 31, 36 (D. Mass. 2015), modified on reconsideration, 160 F. Supp. 3d 431 (D. Mass. 2016) (seeking to avoid disclosure of marital communications and embarrassment associated with questions regarding infidelity); Peoples, 2017 WL 2836991, at *4 (seeking to avoid opposing party access to documents they could then use "to try and elicit admissions" pertaining to the case). Not only are these bases often able to be easily remedied

11

with a confidentiality agreement or protective order prescribing specific practices for handling

information, but they are also much more readily employed in bad faith—that is, to actually

avoid disclosure of relevant information—than the City's arguments in its motion here. The City

appears to be in full cooperation with Plaintiff in the discovery process insofar as it involves the

actual business of discovery—the compiling of relevant, not overly burdensome information for

the purposes of litigation.

The Court finds no need to delve into the issue of whether Wu is or was a "high ranking

government official," whether as Mayor or City Councilor, due to Mayor Wu's absence from

Plaintiff's allegations in its Complaint, the lack of any compelling reasons to believe Mayor Wu

possesses relevant information personally, as well as Plaintiff's admitted intent to depose Mayor

Wu solely for political and publicity-related reasons. The Court's ordinary obligations to limit

discovery as per Rules 26 and 45 apply fully and sufficiently here, and weigh in favor of the

issuance of a protective order without reaching that definitional question—though Plaintiff's

stated desire to target Mayor Wu due to her status as a mayoral candidate certainly supports this

Court's finding of undue burden, annoyance, and oppression in violation of Rule 26(c)(1).

Independent of a potential deponent's profession or media exposure, it is in exceptionally

bad faith to intentionally notice a deposition for a date and time when a party knows the

deponent will be unavailable or greatly inconvenienced. In his explanatory letter to the Court,

Plaintiff's counsel states that he, as an attorney, has "a sworn duty to do anything short of

breaking the law to see to it that my client's goals are recognized." [Dkt. 38 at 2]. Yet this is not

the case. Rules such as the Massachusetts Rules of Professional Conduct (and other states'

equivalents), various ethics rules and guidelines, and the Rules of Civil Procedure govern

attorney and litigant conduct in all sorts of ways that reach beyond conduct that is simply

illegal—and they do so precisely to prevent the type of abuse of process Plaintiff's counsel has employed here.

### C. Awarding of Costs and Fees Related to this Motion

Defendant asserts Plaintiff's conduct with regard to noticing Mayor Wu's deposition is in violation of Fed. R. Civ. P. 45(d)(1) [Dkt. 34, Def.'s Mem. Supp. Mot. at 6], and requests reasonable attorneys' fees and costs in the present motion [Dkt. 33, Def.'s Mot. at 1].

Under Fed. R. Civ. P. 45(d)(1), the Court "*must* enforce [the] duty [to avoid imposing undue burden or expense on a person subject to subpoena] and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1) (emphasis added). For all the reasons discussed above, Plaintiff's failure to comply with Rule 45 here is evident to this Court. Moreover, it appears as though Plaintiff was trying to force the City to commit to producing Mayor Wu as part and parcel of the parties' attempted negotiations to amend the noticed deposition date and therefore avoid filing of the present motion on an emergency basis, though it was not clearly portrayed that way in Plaintiff's submission requesting a briefing schedule [Dkt. 35]. The Court asked for a statement on why Plaintiff's counsel noticed Mayor Wu's deposition for Election Day precisely to get at the 'emergency' basis issue—an issue Plaintiff's counsel himself asked the Court to address [Dkt. 35]. Despite Plaintiff's counsel's claim that the City "reneged" on a deal to produce Mayor Wu for a deposition on a different date [Dkt. 35], what the record [Dkt. 35-2] actually appears to show is that the City sought to avoid filing their motion on an emergency basis, and reached out to Plaintiff's counsel to request Mayor Wu's deposition be noticed for a date further in the future so as to accomplish this.

13

The City was entitled to take issue with both the timing of the noticed deposition *and* the fact Mayor Wu was noticed at all—and Plaintiff's attempts to conflate these issues and to portray the City as having "reneged" are disingenuous and distracting. The awarding of costs and fees to Defendant is well warranted here. In addition to Plaintiff's admitted, impermissible motives behind its deposition notice to Mayor Wu, TST's conduct here forced briefing of this motion, some of which was on an emergency basis, to occur much earlier in the discovery process than it would have otherwise, if it would have taken place at all. Motion practice on a compressed timeline or where ultimately unnecessary to the litigation at hand inherently puts more burden on parties and attorneys, and the Federal Rules of Civil Procedure make explicit their purpose to thwart abusive discovery and other litigation practices.

In addition, Plaintiff's assertion that the City cannot be entitled to attorneys' fees due to the fact Defendant's attorneys "are public employees who are paid a salary… [and] not charging an hourly rate to bring the motion" is nothing short of absurd. [Dkt. 42, Pl.'s Opp'n at 12]. That a party's attorneys are paid from public coffers does not mean their time, efforts, and resources are therefore to be subject to unfettered abuse of process. The argument put forth by Plaintiff's counsel here would incentivize private attorneys and those charging the highest rates to engage in abusive discovery practices and file frivolous motions for the sole purpose of billing their clients and draining opponents' resources. Moreover, the Court is persuaded by Defendant's assertion that allowing depositions under circumstances where counsel has acknowledged impermissible motives would create perverse incentives for potential litigants, encouraging legal action merely to harass or gain access to government officials or candidates. [Def.'s Mem. Supp. Mot. at 6]. This, along with Plaintiff's counsel's abovementioned failure to acknowledge any of the myriad rules intended to guide and govern his conduct as an attorney, supports the awarding

of costs and fees to Defendant on this motion. Pending submissions by Defendant and adjudication of the amount to be awarded, the parties are expected to continue diligently engaging in discovery, with the hope that Plaintiff will dispense with impermissible antics and abusive tactics.

## IV.     CONCLUSION

The surviving claims in this matter represent an issue of first impression in the First Circuit. As the Court noted in its decision on Defendant's Motion to Dismiss [Dkt. 21 at 12], it is not at all clear whether the invocation practice of the City Council violates the First Amendment, meaning Plaintiff has brought a meaningful legal challenge with potentially broad effect. Distracting from the significance of that challenge with tactics Plaintiff's counsel facially admitted to employing in order to get the attention of the public and the City's now highest-ranking government official does a disservice to the gravity of the constitutional claims at issue.

For the foregoing reasons, Defendant City of Boston's Motion for Protective Order and Motion to Quash Regarding the Deposition of City Councilor At Large Michelle Wu [Dkt. 33] is **GRANTED**.  Defendant City of Boston's request for reasonable attorneys' fees and costs is likewise **GRANTED** and the amount shall be evaluated and assessed at the conclusion of discovery.  At this stage, the parties shall continue in discovery to meet the October 26, 2022 deadline.

**SO ORDERED.**

April 6, 2022                                                  /s/ Angel Kelley
                                                        ANGEL KELLEY
                                                        U.S. DISTRICT JUDGE

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THE SATANIC TEMPLE, INC., | ) | |
| | ) | Case No. 21-CV-10102-AK |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF BOSTON, MA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER ON PLAINTIFF THE SATANIC TEMPLE, INC.'S MOTION FOR CERTIFICATE OF APPEALABILITY

**A. KELLEY, D.J.**

The Court is in receipt of Plaintiff The Satanic Temple, Inc.'s ("Plaintiff" or "TST") Motion for Certificate of Appealability [Dkt. 50], and notes Plaintiff's representation regarding compliance with Local Rule 7.1 and Defendant's intent to oppose the present motion. Before Defendant files its opposition, however (and before Plaintiff risks liability for further attorneys' fees incurred by Defendant on this erroneous and flawed motion), the Court DENIES Plaintiff's motion for the following reasons:

Plaintiff essentially seeks immediate appeal of an order that never issued. TST, through counsel, grossly misunderstands the Court's recent order granting Defendant's motion for protective order [Dkt. 47]. In doing so, and by this most recent motion for certificate of appealability, Plaintiff critically misstates both the ruling and effect of the Court's granting of the protective order with regard to the deposition of Mayor Michelle Wu.

1

In its April 6, 2022 Memorandum and Order [Dkt. 47], the Court issued a detailed discussion of Plaintiff's "impermissible antics and abusive tactics" [id. at 15] with regard to its "admitted intent to depose Mayor Wu solely for political and publicity-related reasons" [id. at 12; see also Dkt. 38].[1] The Court found that Plaintiff had not only violated its obligations under the Federal Rules of Civil Procedure regarding discovery, but also that the violations were so egregious that the Court was compelled to impose sanctions in the form of attorneys' fees, pursuant to Fed. R. Civ. P. 26 and 45, for the Defendant's time spent on the litigation surrounding Mayor Wu's deposition noticed for Election Day. [Dkt. 47 at 12].

In Plaintiff's currently pending motion for certificate of appealability [Dkt. 50], it significantly misunderstands and misstates the Court's recent ruling [Dkt. 47] on Defendant's motion for protective order regarding the deposition of Mayor Wu [Dkt. 33]. Whether such misstatements arise from simple incompetence or a more pernicious desire to misstate the record is something the Court cannot know at this time. Nevertheless, contrary to Plaintiff's misstatements, the Court has not "barr[ed]" [Dkt. 50 at 4] any categories of discovery, nor has it "prohibit[ed] TST from taking depositions of Mayor Wu *or any other current or former Councilor*" [id. at 7] (emphasis added), as Plaintiff claims in its recent motion. In fact, the Court specifically cited Defendant's reference to the availability of up to 47 other individuals from whom Plaintiff could obtain the discovery sought [Dkt. 47 at 9], and expressly questioned why Plaintiff had *not* noticed any other current or former City Councilors for depositions—

---

[1] (Letter from Plaintiff's counsel explaining, *inter alia*, "[a]t bottom, my litigation strategy on this matter involved pitting Wu's and the City's litigation goals (i.e., concocting a credible lie as to why my client will never receive an invite, but which is also somehow not unconstitutional religious discrimination) against Wu's personal goals (i.e. winning her mayoral election). My bet was that her self-interest would win out against the litigation, and she would choose to expend her limited time and efforts on her campaign as opposed to internalizing whatever post-hoc justification the City comes up with based on the extrinsic proof;" "I would accept as a consolation prize, that Michelle Wu would cut off her nose to spite her face by publicly announcing her self-appointed status as above the law;" and "By merely issuing the notice of deposition, I forced a cascading chain of events that has drawn public attention to this dispute").

2

particularly given that there are City Councilors mentioned in Plaintiff's complaint (none of whom are Mayor Wu) [id. at 7, 9–10]. Essentially, the Court found Plaintiff's conduct with regard to the noticing of Mayor Wu's deposition to fail miserably in complying with the standards set forth for discovery by the Federal Rules of Civil Procedure and related caselaw, and that Plaintiff's abuse of process in this regard necessitated the *sole* limitation on discovery of prohibiting the deposition of Mayor Wu. It is an egregious misreading of the Court's order to seek appealability on the grounds Plaintiff does now, because the Court's order does not have the effects Plaintiff claims in its recent motion.

The motion for certificate of appealability [Dkt. 50] is **DENIED**.


**SO ORDERED.**

April 15, 2022                                          /s/ Angel Kelley
                                                         ANGEL KELLEY
                                                         U.S. DISTRICT JUDGE

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### United States District Court

### District of Massachusetts

## Notice of Electronic Filing

The following transaction was entered on 9/16/2022 at 12:18 PM EDT and filed on 9/16/2022

**Case Name:**    The Satanic Temple, Inc. v. City of Boston,
**Case Number:**    1:21-cv-10102-AK
**Filer:**
**Document Number:** 63(No document attached)

**Docket Text:**
**District Judge Angel Kelley: ELECTRONIC ORDER entered. Defendant's [57] MOTION to Quash and Defendant's [62] Emergency MOTION to Quash *Deposition Subpoena to Mayor Wu* are GRANTED. In light of the Court's prior Orders granting the City's motion for a protective order prohibiting the deposition of Mayor Wu [see Dkt. 47] and denying Plaintiff's motion for a certificate of appealability [see Dkt. 51], the deposition of Mayor Wu as noticed may not go forward. The proper avenue for Plaintiff to seek modification of the terms of the Protective Order is through a motion for reconsideration. Any motion for reconsideration must state which additional facts, adduced through discovery in the intervening months, have materially changed the circumstances such that the deposition of Mayor Wu is now necessary. Such a motion must specify how such facts were adduced, what efforts the parties have made to discover the information Plaintiff seeks through the avenues permitted by the Protective Order, why the other witnesses the City has identified cannot be sources of this information and, why, on the basis of such newly discovered facts, there is reason to believe that Mayor Wu's testimony will be of *unique* relevance to this case. Moreover, such a motion must further demonstrate that the above factors supporting modification outweigh the potential for the deposition to be harassing, duplicative, and unduly burdensome. See Fed. R. Civ. P. 26(b) and 45(d).**

**The parties, particularly Plaintiff's counsel, are further ORDERED to cease filing unsolicited status reports with the Court, as these reports have not provided the Court with any relevant information other than indicia that Plaintiff has not read or complied with its previous orders.  The Court takes no action on Defendant's motion for sanctions at this time, but will consider imposition of sanctions if Plaintiff's counsel continues to indicate to the Court that he is not complying with orders or conducting discovery in good faith.**

**(Kelly, Danielle)**

**1:21-cv-10102-AK Notice has been electronically mailed to:**

Nicole M. O'Connor     nicole.oconnor@boston.gov

Nailah A. Freeman     nailah.freeman@boston.gov

Brendan Durrigan     brendandurriganesq@gmail.com

Robert S. Arcangeli     robert.arcangeli@boston.gov

Matt Kezhaya     matt@crown.law, sonia@kezhaya.law

**1:21-cv-10102-AK Notice will not be electronically mailed to:**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE SATANIC TEMPLE, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>CITY OF BOSTON, MA, )<br><br>Defendants. ) | Case No. 21-CV-10102-AK |

## ORDER

**A. KELLEY, D.J.**

Plaintiff The Satanic Temple, Inc., ("Plaintiff" or "TST"), filed a Motion for Recusal on September 30, 2022 [Dkt. 65]. For the following reasons, the Court **DENIES** Plaintiff's Motion.

### I.     Legal Standard

Pursuant to 28 U.S.C. § 455(a), a judge "shall disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned." Id.; see also United States v. Kelley, 712 F.2d 884, 889 (1st Cir. 1983). While "courts must not only be, but seem to be, free of bias or prejudice," allowing "recusal on demand would put too large a club in the hands of litigants and lawyers, enabling them to veto the assignment of judges for no good reason." In re United States, 158 F.3d 26, 30 (1st Cir. 1998). Additionally, "a trial judge must hear cases unless there is some reasonable factual basis to doubt the impartiality or fairness of the tribunal." United States v. Snyder, 235 F.3d 42, 46 (1st Cir. 2000). Courts must weigh the objective facts asserted, not "rumors, innuendos, and erroneous information," and consider whether the facts "provide

what an objective, knowledgeable member of the public would find to be a reasonable basis for

doubting the judge's impartiality." In re United States, 666 F.2d 690, 695 (1st Cir. 1981).

"[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.  In

and of themselves (i.e., apart from surrounding comments or accompanying opinion), they

cannot possibly show reliance upon an extrajudicial source; and *can only in the rarest*

*circumstances evidence the degree of favoritism or antagonism required* . . . when no

extrajudicial source is involved." Liteky v. United States, 510 U.S. 540, 555 (1994) (emphasis

added) (internal citation omitted).  Additionally, "judicial remarks during the course of a trial

that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases,

ordinarily do not support a bias or partiality challenge." Id.


## II.      Discussion

Plaintiff bases its request for recusal on a laundry list of disagreements with this Court's

rulings and orders in this case.  Specifically, TST takes issue with the Court's rulings regarding

the scope of discovery, its motion for certificate of appealability, and its repeated and unsolicited

status reports to the Court.  TST alleges that these decisions lead it to "reasonably suspect" that

the undersigned is "biased and incompetent."  [Dkt. 65 at 1].  However, a case involving a

motion for recusal "is clearly distinguishable from those where a party alleges an error of law

that, despite the hardship of delay, may be fully addressed and remedied on appeal." In re

United States, 666 F.2d at 694.  Though Plaintiff did submit a motion for certificate of

appealability [Dkt. 50], such a request was not warranted.

Given that the caselaw delineates between issues subject to a motion for recusal and those

that may be "fully addressed and remedied on appeal," the Court briefly turns to the issue of

interlocutory appeals.  Id.  Plaintiff submitted its request for such an appeal [Dkt. 50] pursuant to

28 U.S.C. § 1292(b), which provides in relevant part:

> When a district judge, in making in a civil action an order not otherwise appealable under
> this section, shall be of the opinion that such order involves a controlling question of law
> as to which there is substantial ground for difference of opinion and that an immediate
> appeal from the order may materially advance the ultimate termination of the litigation,
> [s]he shall so state in writing in such order.

Id.

 The statute's requirements are clear: It vests in the district judge the authority that, if she

"*shall be of the opinion*," that her order involves several factors, including (1) "a controlling

question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3)

"that an immediate appeal from the order may materially advance the ultimate termination of the

litigation"; then she "*shall so state in writing in such order*."  Id. (emphasis added).  Here, even

if the Court had determined that both a controlling question of law and a substantial ground for

differences of opinion were present—and to be clear, *it has made no such findings*—the Court

could not rule that an immediate appeal from the order would materially advance the ultimate

termination of the litigation, because plaintiff misread the Court's order.  As such, the Court did

not "so state in writing" within its order any of the factors required by Section 1292(b).  Id. In

fact, the Court clearly stated its reasons for denying Plaintiff's motion, not the least of which was

Plaintiff's "egregious misreading of the Court's order" which ignored the fact that "*the Court's*

*order [did] not have the effects Plaintiff claim[ed] in its recent motion*."  [Dkt. 51 at 3]

(emphasis added).  As such, "despite the hardship of delay," Plaintiff's arguments regarding the

protective order, "may be fully addressed and remedied on appeal," In re United States, 666 F.2d

at 694, if not remedied by the Court's response to Plaintiffs' still-pending motion for

reconsideration regarding the protective order, [Dkt. 66].

### III.     Conclusion

Plaintiff's arguments for recusal are based solely on this Court's judicial rulings which cannot, and do not, provide an objective basis for recusal.  Plaintiff's Motion for Recusal [Dkt. 65] is therefore **DENIED.**


**SO ORDERED.**

December 6, 2022                                      /s/ Angel Kelley
                                                     ANGEL KELLEY
                                                     U.S. DISTRICT JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THE SATANIC TEMPLE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-CV-10102-AK |
| | ) | |
| CITY OF BOSTON, MA, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**A. KELLEY, D.J.**

Plaintiff The Satanic Temple, Inc. (hereinafter, "Plaintiff" or "TST"), filed a motion for reconsideration [Dkt. 55] pursuant to Rules 60(b)(5) and (6) requesting that this Court vacate its July 21, 2021, order [Dkt. 21] dismissing Plaintiff's Free Speech/Free Exercise claim [see Dkt. 16 ("Am. Compl.") ¶¶ 91-99 ], which the Defendant, the City of Boston, Massachusetts (hereinafter "Boston"), opposes [Dkt. 56]. For the reasons set forth below, Plaintiff's motion for reconsideration is **DENIED**.

I.      **LEGAL STANDARD**

Rule 60 provides that on motion and just terms, a district court may relieve a party from a final judgment or order. See Fed. R. Civ. P. 60. "Relief under Rule 60(b) is extraordinary in nature and . . . motions invoking that rule should be granted sparingly." Giroux v. FNMA, 810 F.3d 103, 106 (1st Cir. 2016) (quoting Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002)). For a Rule 60(b) motion to succeed, the movant must prove to the district court that, at a

1

bare minimum, (1) its motion is timely; (2) exceptional circumstances favoring the relief are present; (3) if the order or judgment were set aside, it would have a meritorious claim or defense; and (4) if the order or judgment were set aside, the opposing parties would not be subjected to unfair prejudice.  See id.  Rule 60 is separated into six subsections, each of which "describes a particular basis for relief from judgment."  Id. (quoting Ungar v. Palestinian Liberation Org., 599 F.3d 79, 83 (1st Cir. 2010)).


## II.    DISCUSSION

Plaintiff filed the instant motion for reconsideration on July 21, 2022, just under three months after the Supreme Court's decision in Shurtleff v. City of Boston, 142 S. Ct. 1583 (2022), and twenty-five days after its decision in Kennedy v. Bremerton School District, 142 S. Ct. 2407 (2022).  Because Plaintiff filed its motion within a reasonable time after the decisions it cites to justify its request for relief, its motion is timely.


### a.  Relief under Rule 60(b)(5)

Plaintiff first argues that after the Supreme Court's decisions in Shurtleff and Kennedy, this Court's "order of dismissal clashes with the current state of the law and must be vacated." [Dkt. 55 at 1].  Plaintiff also alleges that this Court's order "is no longer equitable" under Rule 60(b)(5).  [Id.].  Because Plaintiff fails to establish that the law upon which this Court's dismissal was based on was reversed or vacated, and the order of dismissal is not an order with prospective application, Plaintiff is not authorized relief under Rule 60(b)(5).

Rule 60(b)(5) "describes three sets of circumstances in which relief from a final judgment may be justified."  Villeneuve v. Avon Products, Inc., 977 F.3d 89, 92 (1st Cir. 2020) (quoting

Comfort v. Lynn School Committee, 560 F.3d 22, 27 (1st Cir. 2009)).  Under the rule, "a court

may grant relief from a final judgment when:  [t]he judgment has been satisfied, released or

discharged;  it is based on an earlier judgment that has been reversed or vacated;  or  applying it

prospectively is no longer equitable."  Comfort, 560 F.3d at 26.  A decision is "based on" an

earlier judgment when that prior judgment is "a necessary element of the decision, giving rise,

for example, to the cause of action or a successful defense. It is not sufficient that the prior

judgment provides only precedent for the decision."  Lubben v. Selective Serv. Sys. Loc. Bd. No.

27, 453 F.2d 645, 650 (1st Cir. 1972) (internal citations omitted).

This Court's decision to dismiss Count II, the Free Speech and Free Exercise claim of

Plaintiff's amended complaint, was not "based on" any of the underlying decisions impacted by

either Shurtleff or Kennedy.  See Lubben, 453 F.2d at 647.  Though this case, Shurtleff, and

Kennedy all involve questions regarding the First Amendment right to free speech, the facts of

each case are easily distinguishable from each other.  This case concerns whether the City of

Boston unconstitutionally denied Plaintiff's requests to lead an invocation at the start of city

council meetings in 2016 and 2017.  [Am. Compl. ¶ 23].  In its order dismissing Count II, this

Court found that the invocation given at the start of each City Council meeting is government

speech, and because government speech is not subject to scrutiny under the Free Speech Clause

of the Constitution, Count II of Plaintiff's Amended Complaint must be dismissed.  [Dkt. 21 at

7].  Far from being based on a decision that would be affected by the Shurtleff or Kennedy

opinions, this Court did not rely on any of the precedent that either of those decisions evaluated.

[See id. at 6–8].  Further, even if this Court had cited one of those underlying decisions in its

reasoning to dismiss Count II, Rule 60(b)(5) "does not authorize relief from a judgment on the

ground that the law applied by the court in making its adjudication has been subsequently

overruled or declared erroneous in another and unrelated proceeding." Lubben, 453 F.2d at 650; see also Comfort, 560 F.3d at 27 ("a change in applicable law does not provide sufficient basis for relief" under Rule 60(b)(5)).

In fact, the two recent Supreme Court decisions appear to further affirm this Court's reasoning in deciding to dismiss Count II. Plaintiff argues that "the Supreme Court held that Boston abused the Government Speech doctrine to further viewpoint discrimination" and that "speech is not 'government speech' unless the government exerts 'active control' over the subject of the message sought to be accommodated." [Dkt. 55 at 2] (citing Shurtleff, 142 S. Ct. at 1592). Though the Shurtleff Court held that "Boston's refusal to let Shurtleff and Camp Constitution raise their flag based on its religious viewpoint abridged their freedom of speech," Plaintiff's interpretation of that holding misses the mark. Shurtleff, 142 S. Ct. at 1587. In Shurtleff, the Supreme Court applied the government speech doctrine to the specific facts in that case, which led to the conclusion that "Boston's flag-raising program does not express government speech." Id. at 1593. In reaching that holding, the Supreme Court was clear in reaffirming the process by which courts must analyze whether actions by the government constitute the government speaking for itself versus improper regulation of private speech:

> In answering these questions, we conduct a holistic inquiry designed to determine whether the government intends to speak for itself or to regulate private expression. Our review is not mechanical; it is driven by a case's context rather than the rote application of rigid factors. Our past cases have looked to several types of evidence to guide the analysis, including: the history of the expression at issue; the public's likely perception as to who (the government or a private person) is speaking; and the extent to which the government has actively shaped or controlled the expression.

Shurtleff, 142 S. Ct. at 1589–90 (citing Walker v. Texas Div., Sons of Confederate Veterans, Inc., 576 U.S. 200, 209–14 (2015). Far from a development in "the state of law arising out of the Free Speech and Free Exercise Clauses," that would somehow alter the law upon which this

Court's order dismissing Plaintiff's Free Speech and Free Exercise claim was based, the Shurtleff opinion does just the opposite: it affirms the very same doctrine the Court used. See Shurtleff, 142 S. Ct. at 1589–90. For clarity, the Court takes a moment to contrast the Shurtleff and Kennedy opinions to its dismissal order in this case.

In Shurtleff, the Supreme Court considered whether the City of Boston violated the First Amendment's Free Speech Clause by refusing to allow a Camp Constitution, a Christian organization, to fly a Christian flag via its program allowing private groups to use one of the three flag poles on the plaza in front of city hall. 142 S. Ct. at 1587. The Court found that Boston's actions did not constitute government speech on the basis of, *inter alia*, "the city's lack of meaningful involvement in the selection of flags or the crafting of their messages." Id. at 1593. Because the Court thus categorized the city's flag-raising program was classified as private, rather than government speech, its refusal to allow the Christian organization to fly their flag violated the Free Speech Clause. See id.

Likewise, the Kennedy Court analyzed whether a school district violated a high school football coach's rights under the Free Speech and Free Exercise Clauses of the Constitution by firing him for "private religious expression" when he knelt to pray at midfield after football games. 142 S. Ct. at 2417. The Kennedy Court determined the coach was engaged in private speech, not government speech attributable to the school district when he prayed at midfield because he "was not engaged in speech ordinarily within the scope of his duties as a coach . . . did not speak pursuant to government policy . . . was not seeking to convey a government-created message," nor was he "instructing players, discussing strategy, encouraging better on-field performance, or engaged in any other speech the District paid him to produce as a coach." Id. at 2424 (internal quotations and citations omitted) Though the Court used a different analysis

to determine whether the coach's speech was private or governmental, see id. at 2421–25, it did

so because the coach's claim involved his status as a government employee.  Id. at 2423 ("To

account for the complexity associated with the interplay between free speech rights and

government employment, this Court's decisions in Pickering v. Board of Ed. of Township High

School Dist. 205, Will Cty., 391 U.S. 563 (1968), Garcetti v. Ceballos, 547 U.S. 410, and related

cases suggest proceeding in two steps").  As in Shurtleff, the Kennedy Court merely affirmed the

precedents for analyzing government speech—albeit in a different factual context not applicable

to this case.  See id. at 2421–25.

     Here, Plaintiff is not a government employee like the Kennedy plaintiff, so the Court did

not conduct its analysis using the Pickering–Garcetti framework.  [See Dkt. 21 at 6–8].

Likewise, though Plaintiff is a religious organization like one of the Shurtleff plaintiffs, the facts

of the two cases are distinguishable.  In dismissing Plaintiff's Free Speech Clause claim, this

Court followed the proper government speech analysis that the Supreme Court reaffirmed in

Shurtleff, citing several of the same precedents, including Walker, 576 U.S. 200, and Pleasant

Grove City v. Summum, 555 U.S. 460 (2009).  Compare [Dkt. 21 at 6–8] with Shurtleff, 142 S.

Ct. at 1589–93.  The facts of this case support this Court's conclusion that Boston's actions

regarding the city council's legislative prayer selection amounted to government speech [see

Dkt. 21 at 7], whereas the facts in Shurtleff did not, see 142 S. Ct. at 1589–93.  The Shurtleff

Court even acknowledged that had Boston's flag-raising program constituted government

speech, "Boston may [have] refuse[d] flags based on viewpoint."  Id. at 1589.  Even if Shurtleff

or Kennedy had vacated or reversed a precedent this Court cited in its dismissal, "a change in

applicable law does not provide sufficient basis for relief," Comfort, 560 F.3d at 27.

Next, the Court analyzes whether its order to dismiss has a prospective application that "is no longer equitable." Fed. R. Civ. P. 60(b)(5). The First Circuit has understood "the class of judgments having prospective application (sometimes referred to as 'prospective force') to be restricted to forward-looking judgments, such as injunctions and consent decrees." Comfort, 560 F.3d at 28. The Court's order of dismissal is not forward-looking; it merely dismisses a portion of Plaintiff's complaint. [See Dkt. 21 at 6–8]. The dismissal is a final judgment which does not qualify for relief under Rule 60(b)(5). As a result, both of Plaintiff's arguments under Rule 60(b)(5) fail to show that it would have a meritorious claim were the previous dismissal of Count II to be set aside, and accordingly, its request under that rule is denied.

**b. Relief under Rule 60(b)(6)**

Finding no relief under Rule 60(b)(5), the Court turns next to the Plaintiff's invocation of Rule 60(b)(6). If litigants are not afforded relief under Rule 60(b)(1)–(5), they may seek relief under the rule's "catch all provision," which "authorizes the district court to grant relief from judgment for 'any other reason that justifies relief.'" Giroux, 810 F.3d at 108 (quoting Ungar, 599 F.3d at 83). This catch all provision is not limitless in its scope; for a motion to succeed under Fed. R. Civ. P. 60(b)(6), "[t]he reason asserted must be one other than those enumerated in 60(b) (1)–(5), and must be sufficient to justify the relief sought." Lubben, 453 F.2d at 651. The Court finds no grounds for relief under the residual clause of Rule 60(b)(6).

Plaintiff mentions Rule 60(b)(6) twice is in its motion's introduction, and not after. [See Dkt. 55 at 1] ("See FRCP (60(b)(6) (any other reason that justifies relief)," and "The order of dismissal clashes with the current state of the law and must be vacated. FRCP 60(b)(5), (6)"). It does not provide any legal or factual bases which would allow the Court to analyze whether it could grant relief under this rule. Instead, Plaintiff inaccurately alleges a change in "the current

state of the law" as discussed above in the Court's analysis of Rule 60(b)(5), and additionally, a novel argument that attempts to impute the Establishment Clause's bar to governmental hostility or coercion into the Free Speech Clause's active control doctrine. These arguments are without merit. In its order dismissing Count II, this Court analyzed the Free Speech and Establishment clauses separately. [See Dkt. 21 at 6–12]. As discussed above, the Supreme Court recently reaffirmed its government speech doctrine, which inherently address the issue of whether the government exhibited active control over the speech. Lastly, because Plaintiff's novel attempt to impute the Establishment Clause's bar against government hostility or coercion of religion is not grounded in any precedent, its legal argument does not qualify as a reason "other than those enumerated in 60(b)(1)–(5)," nor is it "sufficient to justify the relief sought." Lubben, 453 F.2d at 651. Accordingly, Plaintiff cannot be granted relief under Rule 60(b)(6).

## III.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration [Dkt. 55] is **DENIED.**


**SO ORDERED.**

December 6, 2022                                      /s/ Angel Kelley
                                                      ANGEL KELLEY
                                                      U.S. DISTRICT JUDGE

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### United States District Court

### District of Massachusetts

## Notice of Electronic Filing

The following transaction was entered on 12/23/2022 at 3:48 PM EST and filed on 12/23/2022

| | |
|---|---|
| **Case Name:** | The Satanic Temple, Inc. v. City of Boston, |
| **Case Number:** | 1:21-cv-10102-AK |
| **Filer:** | |
| **Document Number:** | 78(No document attached) |

**Docket Text:**
**District Judge Angel Kelley: ELECTRONIC ORDER entered. Plaintiff's [66] Motion for Reconsideration of [47] Protective Order is DENIED.  As the Court previously ordered, [see Dkt. 63], it will only entertain a motion to reconsideration if facts have materially changed the circumstances such that the deposition of Mayor Wu is now necessary.  Plaintiff is required to show, among other factors, why "the other witnesses the City has identified cannot be sources of this information."  Further, "the practice of calling high ranking government officials as witnesses" is discouraged, absent "extraordinary circumstances."  See Bogan v. City of Boston, 489 F.3d 417, 423 (1st Cir. 2007).  This type of discovery is permitted "only where it is shown that other persons cannot provide the necessary information."  Id.**

**Here, Plaintiff did not depose the Rule 30(b)(6) representative whom the City designated as the person with knowledge of Mayor Wu's subjective intent.  It relies on the statements of other witnesses instead of, as the [63] order requires, first developing testimony from the appropriate designee.  The Court will not modify its protective order in the absence of evidence that Plaintiff has complied with its [63] order, and that the Rule 30(b)(6) designee cannot provide specific information that is necessary to the resolution of Plaintiff's claims.**

**(Lara, Miguel)**

**1:21-cv-10102-AK Notice has been electronically mailed to:**

Elizabeth L. Bostwick     elizabeth.bostwick@boston.gov

Edward F. Whitesell, Jr     edward.whitesell@boston.gov, ethan.katz@boston.gov

Nailah A. Freeman     nailah.freeman@boston.gov

Brendan Durrigan     brendandurriganesq@gmail.com

Robert S. Arcangeli     robert.arcangeli@boston.gov

Matt Kezhaya     matt@crown.law, 1339929420@filings.docketbird.com, bill@crown.law, john@crown.law, jordan@crown.law, nick@crown.law, sonia@crown.law

**1:21-cv-10102-AK Notice will not be electronically mailed to:**

Nicole M. O'Connor
City Of Boston Law Department
One City Hall Plaza
Room 615
Boston, MA 02201

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THE SATANIC TEMPLE, INC.,
        Plaintiff,


        v.                                              CIVIL ACTION NO. 21-10102-AK


CITY OF BOSTON, MA,
        Defendant.


MEMORANDUM AND ORDER ON DEFENDANT'S SUBMISSION REGARDING
AWARD OF ATTORNEYS' FEES AND COSTS (#49).

KELLEY, U.S.M.J

I. Introduction.

   This case concerns the Boston City Council's practice of having legislative sessions open

with invocations. Every year, each Boston City Councilor is assigned dates for which they are

responsible for inviting a guest to give an invocation. (#34 at 1.) The Satanic Temple ("TST") is a

religious organization headquartered in Salem, Massachusetts. (#16 ¶ 20 (amended complaint).)

In 2016, 2017, and 2018, TST contacted the Boston City Council and asked to give an invocation.

*Id*. ¶¶ 12, 23; (#34 at 1). The City of Boston responded that City Councilors choose speakers from

their communities for their assigned weeks, and TST could not lead the prayer without having

been invited by a City Councilor. (#16 ¶¶ 13, 24.)  TST was never invited, which led to the present

lawsuit, where TST asserts that the practice of the City Council regarding selecting invocation

speakers violates the Establishment Clause of the First Amendment to the United States

1

Constitution (Count I) and the Free Exercise Clause of the Massachusetts Constitution, Article 46, section 1 (Count IV). *Id*. ¶¶ 74-90, 112-117.[1]

On October 27, 2021, the City filed an Emergency Motion for Protective Order and Motion to Quash Regarding the Deposition of City Councilor Michelle Wu. (#33.) The motion was filed in response to TST's Notice of Deposition of Michelle Wu for November 2, 2021, in Salem, Massachusetts. (#34-1 at 2.) The City of Boston's local election day was November 2, 2021, and then-Councilor Wu was a mayoral candidate in that election. *Id*. at 3.

On April 6, 2022, District Court Judge Angel Kelley granted the City of Boston's Motion for Protective Order and Motion to Quash (#33). *See* #47, Memorandum and Order. She also granted the City's motion for reasonable attorneys' fees under Fed. R. Civ. P. 45(d)(1) for having to file the motion in response to plaintiff's noticing Mayor Wu's deposition. (#47 at 13-15.) Judge Kelley ordered that the "amount shall be evaluated and assessed at the conclusion of discovery." *Id.* at 15. Soon after the order was issued, the City filed a submission in response to Judge Kelley's Order, asking for $8,334.24 for attorneys' fees. (#49.)

On January 13, 2023, Judge Kelley referred to this court the assessment of reasonable attorneys' fees, as discovery ended on November 25, 2022. (#83.) This court ordered plaintiff to file a response to the City's submission (#85), which plaintiff did on February 6, 2023.[2] (#86.) For the reasons set out below, the court awards the City $8,228.25 in attorneys' fees.

---

[1] Plaintiff's claims alleging violation of its rights under the Free Speech Clause and Free Exercise Clause (Count II) and the Equal Protection Clause (Count III) of the United States Constitution were dismissed by District Court Judge Allison Burroughs on July 21, 2021. (#21.)

[2] Much of plaintiff's response consists of criticism Judge Kelley's ruling, although the plaintiff does not actually ask this court to reconsider Judge Kelley's ruling, *see* #86 at 1-7. This court has no authority to reconsider Judge Kelley's ruling.

II. Law.

Fed. R. Civ. P. 45(d)(1) provides that the court "must enforce [the] duty [to avoid imposing undue burden or expense on a person subject to subpoena] and impose an appropriate sanction—which may include lost earnings and reasonable attorneys' fees – on a party or attorney who fails to comply."  The City also points out that since it prevailed on its motion to quash it is entitled to reasonable fees under Fed. R. Civ. P. 37(a)(5)(A). (#49 at 1-2.)

In calculating reasonable attorneys' fees, the court uses the lodestar method. A lodestar amount is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," excluding hours that are "excessive, redundant, or otherwise unnecessary." *Pérez-Sosa v. Garland*, 22 F.4th 312, 321 (1st Cir. 2022) (citations and punctuation omitted). The court first calculates the number of hours reasonably expended by the attorneys for the prevailing party, excluding hours that are redundant, excessive, or unnecessary. *Id*. The court then identifies a reasonable hourly rate, a determination that is ordinarily based on the prevailing rates in the community for attorneys with comparable qualifications, experience and competence. *Id*.[3]

It is the fee-seeker's burden to prove that the proposed hourly rates and the hours expended are reasonable. *Pérez-Sosa v. Garland*, 22 F.4th at 325 (hourly rates); *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008) (hours expended). *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Attorneys are obliged to maintain contemporaneous time records when seeking fees. *Pérez-Sosa*, 22 F.4th at 329 (citing *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir. 1984)). Records need not be too detailed, however, they typically will show the date that the work

---

[3] Once it is properly calculated, the court may elect to adjust the lodestar, upward or downward, if the specific circumstances of the case warrant. *Pérez-Sosa*, 22 F.4th at 321. *See Coutin v. Young & Rubicam P.R., Inc.*, 124 F.3d 331, 337 & n.3 (1st Cir. 1997) (upward or downward adjustment must be in accordance with twelve factors).

was performed, the kinds of work performed and the percentage of time spent on each task. *Id.* (citation omitted). Less detail than that inhibits the opponent in challenging the reasonableness of the hours expended and the district court in calculating the lodestar amount. *Id*. at 329-330 (citation omitted). While the lodestar method requires arithmetic, a district court's task in fashioning reasonable fees "is to do rough justice, not to achieve auditing perfection." *Id*. at 321-322 (citation and punctuation omitted). The court may estimate. *Id*.

Ultimately, the district court's discretion with respect to fee awards is "extremely broad"; its equitable determinations will be afforded considerable deference if supported by a plausible rationale. *Pérez-Sosa v. Garland*, 22 F.4th at 320-321, 330 (punctuation and citations omitted). *See Fox v. Vice*, 563 U.S. 826, 838 (2011).

III. Discussion.

A. Requested rates.

The City requests reimbursement for four attorneys who worked on the motion to quash: Robert Arcangli; Nailah A. Freeman; Nicole O'Connor; and Susan Weise. (#49 at 5.) The hourly rate sought for each attorney is $265, *id*., which this court finds is a strikingly low rate for legal work in the city of Boston. In addition, the fact that the City requests the same hourly rate for attorneys with widely-varying levels of experience indicates that the City may be underestimating its costs. The City states that this rate is consistent with the standard hourly rate that the City pays outside counsel; the rate "is the prevailing rate for attorneys performing similar services – i.e. attorneys providing litigation services to a public entity like the City of Boston." *Id*. at 4.

Each attorney submitted an affidavit attesting to the accuracy of their billing records and stating their experience: Robert Arcangeli is a Senior Assistant Corporation Counsel for the City and has eight years of litigation experience (two of them in the Suffolk County District Attorney's

Office) (#49-1); Nailah Freeman is a Senior Assistant Corporation Counsel for the City and has five years of litigation experience (#49-2); Nicole O'Connor is a Senior Assistant Corporation Counsel for the City and has thirteen years of litigation experience (#49-3); and Susan Weise is the First Assistant Corporation Counsel for the City, has thirty-six years of experience, and oversees all litigation for the City's Law Department. (#49-4.)

Plaintiff does not suggest that the proposed hourly rate is unreasonable, other than arguing the court should adopt a lower rate -- $165 -- for "less demanding tasks," such as "letter writing and telephone conversations." (#86 at 12.) The First Circuit has found that in fashioning a lodestar, a court may distinguish between "core and non-core" tasks and compensate attorneys at less than their typical rates for their performance of "clerical or secretarial tasks." *Matalon v. Hynnes*, 806 F.3d 627, 639 (1st Cir. 2015). But "these are not hard and fast rules," and the First Circuit has not "imposed a rigid requirement that a district court employ a core/non-core analysis when adjudicating a fee petition." *Id*. The court will not use the "core/non-core" analysis here, where the requested hourly rate for the attorneys is relatively low and the overall time requested for "non-core" tasks is minimal. For the same reasons, the court also rejects the notion that attorneys should not be compensated at their regular hourly rate for making telephone calls and writing letters or sending emails, as long as such actions do not take up an unreasonable amount of time.

B. <u>Requested hours.</u>

The City included with its request for fees a table setting out itemized fees for each attorney. (#49 at 7-9.) The City requests a total of 31.45 hours for making its emergency motion, *id*. at 9, which included the motion (#33, three pages); the memorandum in support (#34, nine pages); and reply (#43, 8 pages). TST filed a sur-reply (#44) which the City's attorneys reviewed. Plaintiff attached the City's table to its opposition, with green highlighting on the fees that it

stipulates are reasonable and red highlighting for the fees it disputes. (##86-1 at 1-3.)  The court
will go through each of plaintiff's objections to the specific times billed.  The court notes that the
billing appears to be detailed and contemporaneous as required, and plaintiff does not object to the
billing on these grounds, with one exception which is discussed below at no. 9.

1. Plaintiff argues that Attorneys Arcangeli and Freeman both billed for reviewing the
   notice of deposition and subpoena, which plaintiff characterized as "unethical," and so
   requests that the court deduct .1 hours from the requested amount. (#86 at 9.) The court
   finds that it is reasonable for two attorneys to each have spent six minutes reviewing
   the notice of deposition and subpoena, as these documents are obviously central to the
   motion that the City subsequently filed. While six minutes might seem a long time to
   look at a notice of deposition and subpoena, it seems about right when one allows a
   few extra minutes for the attorneys to comprehend that plaintiff had noticed the
   deposition of Councilor Michelle Wu, who was the front-runner in the Boston Mayoral
   race, in Salem, Massachusetts, at the Satanic Temple, on election day, starting at 9:00
   a.m. (#34-1 at 2-5.)

2. The court finds that it is reasonable for each of the above attorneys to have billed .2
   hours to consider a response to the subpoena. *Id.*

3. The court finds that it is reasonable for each of the above attorneys to have billed .3
   hours to "strategize" with Attorney Weise, whom the court presumes is their boss, and
   for Attorney Weise to have spent .4 hours with them at this meeting.  *Id.* Since the
   record provides no explanation concerning Attorney Weise's billing for a meeting that
   lasted .4 hours rather than .3, the court will reduce Attorney Weise's time to .3 hours.
   Plaintiff's argument that "the time of two lawyers in a courtroom or conference when

6

one would do may be discounted," *id*. at 10, does not make sense here, where the purpose of the billing event is for attorneys to communicate with one another about legal strategy, a task which they could not have accomplished without being together.

4. Plaintiff complains that Attorneys Arcangeli and Freeman both billed for coordinating a meet and confer with plaintiff. *Id*. Plaintiff argues that "none of the time is reasonable because administrative assistants should have coordinated the time." *Id*. The court will deduct one attorney's time for this for .3 hours. The court frequently sees emails between attorneys attempting to set up meet and confers, and in fact the court notes that plaintiff's attorney himself sends emails regarding setting up meet and confers, *see, e.g.*, #80-1 at 345, and so rejects plaintiff's assertion that an administrative assistant necessarily should have set up the conference.

5. Plaintiff complains that Attorneys Arcangeli, Freeman, and Weise all spent time researching the Federal Rules of Civil Procedure (1.8 hours, 1 hour, and 1.5 hours). *Id*. The court finds that it is reasonable for them to have done so for the recorded amount of time.

6. The court finds that it is reasonable for two attorneys to have billed .5 hours for a meet and confer which they both attended. *Id*. at 11.

7. The court finds that it was reasonable for Attorney Weise to review and edit the motion for protective order for 1 hour, and that time is not duplicative of Attorney Freeman's 1.7 hours incorporating the proposed edits. *Id*.

8. Plaintiff states that any time the attorneys spent reviewing plaintiff's sur-reply should be deducted because Judge Kelley struck the sur-reply. *Id*. Judge Kelley struck the sur-reply because plaintiff did not ask leave to file. (#45.) She struck it six days after it was

filed. *Id*. The City's attorneys reviewed the sur-reply before it was struck. (#86-1 at 3.) The court rejects plaintiff's argument, which is frivolous.

9.  On October 27, Attorney Freeman billed 1.7 hours for legal and administrative work, namely, editing and finalizing the motion for protective order and filing and serving it, without specifying how much time each task took. (#86 at 11.) Plaintiff argues that since filing and serving the motion is administrative time that should be billed at a lower rate, and one cannot tell how much time these administrative tasks took, the entire time should be deducted from the bill. *Id*. The court notes that on the docket of this case, as on the docket of many cases, attorneys for both sides file pleadings. The court does not believe that attorneys charge clients a lower hourly rate for the few minutes it takes to file a document, which is probably the same amount of time it would take to email the document to an administrative employee and instruct them to do it. At any rate, as mentioned above, in a situation such as this one, where the City's attorneys are billing relatively small amounts of time for what might be considered administrative tasks, the court declines to find that administrative tasks must be billed at a lower rate, and so rejects this argument.

## IV. <u>Conclusion</u>.

The City's petition (#49) is allowed in part and denied in part. The court deducts .4 hours from the requested amount and awards the City $8228.25 in attorneys' fees.


February 14, 2023

/s/ M. Page Kelley
M. Page Kelley
Chief United States Magistrate Judge

8

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THE SATANIC TEMPLE, INC.,
     Plaintiff,


     v.                                     CIVIL ACTION NO. 21-10102-AK


CITY OF BOSTON, MA,
     Defendant.


ORDER ON DEFENDANT'S MOTION FOR SANCTIONS (#80).

KELLEY, U.S.M.J

I. Introduction.

     This case concerns the Boston City Council's practice of allowing City Councilors to invite guests to appear at the start of legislative sessions and give invocations. Every year, each Boston City Councilor is assigned dates for which they are responsible for inviting a guest to give an invocation. (#34 at 1.) The Satanic Temple ("TST") is a religious organization headquartered in Salem, Massachusetts. (#16 ¶ 20 (amended complaint).) In 2016, 2017, and 2018, TST contacted the Boston City Council and asked to give an invocation. *Id*. ¶¶ 12, 23; (#34 at 1). The City of Boston responded that City Councilors choose speakers from their communities for their assigned weeks, and a representative from TST could not lead the prayer unless invited by a City Councilor. (#16 ¶¶ 13, 24.) A representative from TST was never invited, which led to the present lawsuit, where TST asserts that the practice of the City Council regarding selecting invocation speakers violates the Establishment Clause of the First Amendment to the United States Constitution (Count

1

I) and the Free Exercise Clause of the Massachusetts Constitution, Article 46, section 1 (Count IV). *Id*. ¶¶ 74-90, 112-117.[1]

On December 28, 2022, TST filed a Motion for Discovery Sanctions (#80), complaining that at an August 25, 2022, deposition of one of the City's designated Rule 30(b)(6) witnesses, the City's attorney improperly instructed the witness not to answer certain questions, improperly made speaking objections during the deposition, and failed to produce other Rule 30(b)(6) witnesses for depositions. *See generally, id*. The motion is styled as one for "sanctions," and plaintiff does request costs for taking the deposition and costs and attorneys' fees incurred in bringing the motion, among other things, but plaintiff also requests an order compelling deposition testimony from Mayor Michelle Wu. (#80 at 29.)

The City filed an opposition (#82), arguing first that the motion was untimely, because discovery closed in this case on November 25, 2022, roughly a month before TST filed the motion. *Id*. at 2. Second, the City stated that the dispute as to the scope of Ms. O'Donnell's testimony was caused by plaintiff's counsel's failure to read emails that the City attorney had sent him, and that the deposition was contentious because plaintiff's counsel acted bizarrely (for example, opening the deposition with lowered lights, candles, and an invocation) and plaintiff's counsel irrationally argued at length during the deposition about such things as the meaning of the word "identity," *id*. at 2, 5. Finally, the City asserts that plaintiff's counsel did not confer with the City before filing the motion, as required by Local Rule 7.1, notwithstanding the fact that plaintiff's counsel attached a Rule 7.1 certification to his motion. *Id*. at 3, #82-1 at 1-2 (affidavit of Attorney Elizabeth

---

[1] Plaintiff's claims alleging violation of its rights under the Free Speech Clause and Free Exercise Clause (Count II) and the Equal Protection Clause (Count III) of the United States Constitution were dismissed by District Court Judge Allison Burroughs on July 21, 2021. (#21.)

Bostwick, stating that she did not have a Local Rule 7.1 conference with plaintiff's attorney, nor did any other attorneys for the City), *see* #80 at 31, plaintiff's "LR 7.1 certificate."

Plaintiff's motion is denied because of the violation of Local Rule 7.1. Local Rule 7.1(a)(2) states: "No motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." Plaintiff's counsel's "certificate," attached to his motion, states in full: "Notice is given that I, Matt Kezhaya, notified opposing counsel of this then-forthcoming motion for discovery sanctions. The City did not agree to any part of the motion and did not provide the discovery to which TST is entitled." (#80 at 31.) This is not a proper certification. "Notifying" opposing counsel is not the same as conferring with them in order to resolve or narrow the issues.

As explained by the court in *Martinez v. Hubbard*, 172 F. Supp. 3d 378, 385 (D. Mass. 2016), "[a] Local Rule 7.1 certification is not an empty exercise. Local Rule 7.1 serves a meaningful dual role: it fosters discussion between parties about matters before they come before the court, and it preserves scarce judicial resources. Failure on the part of a litigant to comply with the rule not only affects the other parties, but it impedes the court's process as well." *Id.* (footnote omitted). Plaintiff is cautioned that in the future he may be subject to sanctions for violations of the rule. *See id.*; *Bessette v. IKO Industries, Inc.*, No. 4:19-cv-40017, 2020 WL 3412711 (D. Mass. Ap. 22, 2020).

Even if plaintiff's failure to comply with Local Rule 7.1 did not warrant denial of the motion, the court would still deny the motion because it is untimely. The deposition about which plaintiff complains took place on August 24, 2022. (#82 at 2.) Plaintiff filed the motion on December 28, 2022, nearly four months later. (#80.)

Moreover, in addition to sanctions, plaintiff moves for discovery, *see* #80 at 29, yet discovery closed on November 25, 2022. (#72.) Plaintiff filed no motion for an extension of time

for the close of discovery as required by Fed. R. Civ. P. 6(b)(1). *See Rivera-Almodovar v. Instituto Socioeconomico Comunitario*, 730 F.3d 23, 25-28 (1st Cir. 2013) (holding that litigant must show good cause for extension of time and where "a district court in the exercise of its case management authority sets a reasonable due date, parties should not be allowed casually to flout it or painlessly to escape the foreseeable consequences of noncompliance.'") (Internal citation omitted.) Plaintiff offers no reasons for the late-filing of the motion.

IV. <u>Conclusion</u>.

For the above reasons, plaintiff's motion for sanctions (#80) is denied.


February 14, 2023
/s/ M. Page Kelley
M. Page Kelley
Chief United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| The Satanic Temple, Inc., )　 | |
| ) | |
| Plaintiff, )　 | |
| ) | |
| ) | Civil Action No. 21-CV-10102-AK |
| v. ) | |
| ) | |
| City of Boston, )　 | |
| ) | |
| Defendant. )　 | |
| _____ ) | |

<u>**MEMORANDUM AND ORDER**</u>
<u>**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**</u>

**A. KELLEY, D.J.**

 Plaintiff The Satanic Temple, Inc. ("TST"), brings this suit against Defendant City of

Boston (the "City"), alleging that the Boston City Council (the "City Council") violated TST's

First Amendment rights under the United States Constitution and its free exercise rights under

the Massachusetts Constitution when City Councilors did not extend an invitation to TST or

allow its request to give the invocation before the start of one of its weekly meetings.  Both

parties have filed motions for summary judgment.  [See Dkt. 98; Dkt. 101].  For the following

reasons, the City's motion for summary judgment [Dkt. 98] is **GRANTED**, and TST's motion

for summary judgment [Dkt. 101] is **DENIED**.

**I.**  **BACKGROUND**

 In evaluating the cross-motions for summary judgment, the Court relies on the parties'

statements of material facts, responses thereto, and any attached exhibits the parties have

submitted.  [See Dkt. 100; Dkt. 104; Dkt. 110; Dkt. 112].  The Court accepts as true each

material fact to the extent it has not been disputed by the opposing party and considers contested

1

each material fact that either party has disputed.  Unless otherwise noted, the facts below are undisputed.

### A.    Invocations at City Council Meetings

City Council holds meetings every week, usually on Wednesday, except on holidays or when otherwise ordered.  [Dkt. 112 at ¶¶ 2-3].  There are approximately thirty-five meetings per year.  [Id. at ¶ 4].  Time is set aside at the beginning of each meeting for an invited member of the public, often clergy, to say a few words.  [Id. at ¶ 5].  These invocations have been given at City Council meetings, or prior iterations of the City's local government, since the 1800s.[1]  [Id. at ¶ 1].  At the beginning of the calendar year, City Council staff prepares a schedule of dates for City Council meetings, including the name of the City Councilor responsible for securing an invocation speaker for each meeting.  [Id. at ¶ 8].  While the staff attempts to assign the same number of dates to each City Councilor, it is not always possible.  [Id. at ¶ 7].

The selection of the invocation speaker is left to the discretion of individual City Councilors and their staffs.  [Id. at ¶ 11].  An individual must receive an invitation from a City Councilor to offer an invocation prior to Council meetings, and the City Council does not take requests to give an invocation.  [Id. at ¶ 13].  There are no guidelines or rules governing whom a City Councilor may invite to give an invocation, and no formal, written policy exists.  [Id. at ¶ 12].  The City states that invocation invitations are "based upon personal relationships the Councilors have and the work that the individual invitee does in the district or for their constituents."  [Id. at ¶ 18].  In 2016, in response to TST's first request for an invitation to give the invocation, Michelle Wu ("Wu"), a former City Councilor who is now the Mayor of Boston, described the practice, in writing:

---

[1] The City had an alderman form of local government, not a city council, prior to 1909.  [Dkt. 112 at ¶ 1].

> [E]ach Councilor has the chance to invite 2-3 faith leaders per year to deliver the opening invocation at one of our Council meetings. The invitations are often used to recognize faith leaders who are active in the community and organizations that are representative of their districts. There is no restriction or criteria based on any Councilors' religious preferences. Many of us have a long list of folks we'd like to invite but haven't been able to accommodate.

[Dkt. 100-11 at 2]. Another City employee separately explained that Councilors "have invited members from their district . . . who are active in their neighborhood and engaged community members in addition to being members of the clergy." [Dkt. 104-1 at 23].

Other City Council members and their staff describe the invocation invitations in similar terms. Christine O'Donnell ("O'Donnell"), who is the Compliance Director and counsel for the City Council, explained in a deposition that "the invitations for the invocation are based upon personal relationships the [C]ouncilors have," in other words, "people that they have relationships with because of their districts. It might be work that the individual does in their districts or does for their constituents. That has been the policy." [Dkt. 100-1 at 52:22-24, 53:7-12]. When asked whether there was a basis for limiting who may participate in the invocations, O'Donnell responded, "It's by invitation. So, the limit would be if you don't get an invitation, you don't give the invocation." [Id. at 152:20-153:1]. TST has characterized the selection process as City Councilors "extend[ing] invites only to their friends and political allies." [Dkt. 110 at ¶ 2].

One invocation speaker, Anne Marie Rousseau ("Rousseau"), gave an invocation annually from 2012 to 2020 at the invitation of former Councilor Matt O'Malley ("O'Malley"). [Dkt. 112 at ¶ 17]. In addition to volunteering for Councilor O'Malley's campaign, Rosseau was co-chair of the Ward 11 Democratic Committee, co-founded JP Progressives, a "local community-based organization [] concerned about issues and electing progressive candidates," and worked at Metro Housing Boston. [Dkt. 100-7 at 7:17-22, 8:1-2]. She was also an on-call

minister at Hope Central Church in Jamaica Plain, which is affiliated with the United Church of Christ and the Disciples of Christ, and she had been a chaplain at another organization. [Id. at 7:23-8:1, 9:9-13, 11:13-20]. Rosseau also "knew the councilor personally" and "had interacted with him many times." [Id. at 8:3-4]. When extending an invitation to a different community leader to give the invocation at a meeting, former City Councilor Kim Janey acknowledged that the "Unitarian Universalist Urban Ministry, under [the reverend's] leadership, is deeply active in the Roxbury community, providing and hosting [a] wide array of services and events. [The reverend's] work to restore the First Church of Roxbury, and continued efforts to reinvigorate the building, are evidence of this commitment to social justice and service." [Dkt. 100-8 at 3].

Former Councilor Janey explained to one invocation speaker that "[o]pening our meetings with prayer provides the Council with a moment of meditation and reflection as we address the important work before us as a body." [Id.]. The content of the invocations is written or determined by the invited speaker. [Dkt. 112 at ¶ 22]. The invocations may take the form of a "blessing," "opening remarks," "a prayer," "a sermon," a "poem," a "reflection," or "something like that." [Dkt. 112 at ¶¶ 21, 29; see Dkt. 100-6 at 107:15-25]. The majority of invocations have been given by individuals from a variety of Christian denominations, but there have "also been a number of representatives from other types of religions," including rabbis and an imam. [Dkt. 112 at ¶¶ 24-26]. There have also been "some laypeople" or "non-religious speakers," including individuals from organizations doing work within the community, who have given invocations. [Id. at ¶¶ 24, 27-28]. For example, the City Clerk has given several invocations, usually reading from a "book of reflections," and a leader of the Boston Debate League, who was also in divinity school, gave an invocation. [Id. at ¶¶ 30-31].

TST provides video evidence of one invocation given at a City Council meeting.  See https://www.youtube.com/watch?v=qb5iu6B1TxA ("August 2021 Video").  In that video clip, the City Council is called to order and roll call occurs.  Id. at 3:00-3:45.  The City Councilor who invited the invocation speaker then introduces the speaker, who founded a church in Boston and served on several boards of directors in Boston.  Id. at 4:03-5:57.  The speaker, who is a pastor, then takes the microphone.  In addition to welcoming remarks, she references the Bible and states, "Let us pray," before she gives a prayer.  Id. at 6:24.  She states that she "pray[s] for each member of the Boston City Council" and asks for the Lord to give them "understanding," "wisdom," and "knowledge" as they proceed with their duties.  Id. at 7:17-9:49.  The meeting then proceeds with the Pledge of Allegiance and the first order of business.  Id. at 9:56-10:43.  Contrary to TST's characterization in its statement of facts, the video shows that the audience is not instructed to stand for the invocation, nor are they directed to participate in the prayer.  [See Dkt. 110 at ¶¶ 1, 4].

There are two other videos of City Council meetings mentioned briefly in the parties' papers.  One is referenced by the City in its statement of facts, and it is of an imam who gave the invocation in April 2023.[2]  See https://www.youtube.com/watch?v=Ti7QMgpUK8Q &list=PLQaoo0hI2DAjk5JId3kvv1N3WJt8GgBFr&index=24 ("April 2023 Video").  The meeting proceeds much as the other did—the City Clerk conducts roll call, the City Councilor introduces the speaker, and the speaker gives the invocation.  The imam opens by stating that he always greets "the audience" by saying, in Arabic, "Peace be upon you."  Id. at 5:30-5:44.  He then proceeds to read from the Koran and gives a few remarks at the end.  In those remarks, he states that it is "incumbent upon you [the City Councilors], as our representatives, to get to know

---

[2] The imam had previously been invited to give the invocation by Councilor Charles Yancey, who left City Council in 2015.  [Dkt. 112 at ¶ 26].

one another, not in the superficial way . . . because you represent me and us," and "the more you

get to know each other outside of the walls of the City Hall, the more you all can come together

. . . [and] we'll get the benefit of your relationship." Id. 8:35-9:34.  At no point in the video,

which begins prior to the roll call, are people instructed to stand.  Still, after reading from the

Koran, the imam states, "You can sit down now," which suggests that people were standing and

may have done so of their own volition.  Id. at 6:58.

     The other video is cited by TST in a footnote in its response to the City's statement of

facts.  [See Dkt. 112 at ¶ 31 n.1].  In that video, which is from a September 2016 City Council

meeting, the City Clerk does roll call, the City Councilor introduces the speaker, and the speaker

gives the invocation.  See https://www.youtube.com/watch?v=T1rDy1ioPnE ("September 2016

Video").  At this meeting, the City Councilor instructs everyone to stand for the invocation and

the Pledge of Allegiance.  Id. at 1:50-1:59.  The speaker, who was involved in several nonprofits

and studying at divinity school, speaks about the mission of the Boston Debate League.  She then

instructs everyone to bow their heads before offering a prayer that thanks the Lord for the City

Councilors' service, asking the Lord to remind the Councilors that "nothing is too hard for

[them]" and if they "humble themselves" before the Lord, they will be lifted up.  Id. at 5:57-9:57.

She asks for guidance to allow the City Council to be "the best politicians, the best governing

body that this nation has ever seen."  Id.

     Invocation speakers previously received a stipend from the City.  [Dkt. 112 at ¶ 9].  One

invocation speaker testified that she received a $75 stipend when she first gave an invocation in

2012, though she did not remember receiving one after that.  [Id. at ¶ 10].  The stipend practice

stopped in 2016 or 2017 after City Council investigated the practice.  [Id. at ¶ 9; see Dkt. 110 at

¶¶ 8-10].  TST claims that this practice ceased because of TST's initial demand for inclusion and in contemplation of this litigation.[3]  [Dkt. 112 at ¶ 9; see Dkt. 104 at ¶ 10].

### B.     TST's Requests for Inclusion

On October 6, 2016, Travis LeSaffre ("LeSaffre"), Head of the Boston Chapter of TST, sent an email to former Councilor Mark Ciommo ("Ciommo"), asking him to "appoint[] [LeSaffre] as [Ciommo's] invited clergy member to perform an invocation."  [Dkt. 100-10 at 2; see Dkt. 112 at ¶ 32].  LeSaffre similarly reached out to former Councilor Tito Jackson and former Councilor Wu.  [Dkt. 112 at ¶ 33; see Dkt. 100-11].  In response, former Councilor Wu explained that many Councilors had a "long list" of individuals they would like to invite but are unable to accommodate, and the invitations are "often used to recognize faith leaders who are active in the community and organizations that are representative of [the Councilors'] districts." [Dkt. 100-11 at 2].

LeSaffre sent another email to several City Councilors on August 17, 2017.  [Dkt. 112 at ¶ 36; see Dkt. 100-12].  In that email, LeSaffre asked the City Council to "[a]llow all individuals equal opportunity to perform invocations" or "[r]emove invocations from all future City Council meetings."  [Dkt. 100-12 at 2].  Around this time, some City Councilors received emails from individuals stating that they did not want TST to give an invocation.  [Dkt. 104-1 at 42-45].

---

[3] The deposition testimony TST cites to support this claim is that of O'Donnell.  [See Dkt. 104-1 at 34-38]. O'Donnell acknowledged that the investigation into the stipend "coincides with TST's first request."  [Id. at 35]. When asked, "Was it because of TST's demand?" she responded, "It was looked at and considered best practice to stop the stipend."  [Id.].  When counsel persisted, "But did the process of looking at the process of whether we are giving money to these priests, was that occasioned by TST's demand for invite?" O'Donnell responded, "Yes, the policy was looked at then."  [Id.].  When TST continued to push O'Donnell on the topic, she explained, "I was not involved in that decision whether or not to stop the payment."  [Id. at 36].  And when TST again asked, "Was the purpose of reviewing the determination to pay these priests part of a purpose of avoiding liability thereby avoiding a court order requiring TST to have an invitation?  Is that why you guys did you, your [sic] review?" O'Donnell responded, "The re—the review was done.  And again, I did not conduct this review.  But the review of the policy of paying the people giving the invocation was looked at, and it was determined that it was best practice to stop the stipend."  [Id. at 37-38].

7

There is no evidence that any City Councilors responded to those emails.  [See id.].  One former City Councilor, Annissa Essaibi-George ("Essaibi-George"), commented in response to TST's request[4]:

> It is absurd that this group feels entitled to being invited to give remarks at the beginning of the Council [m]eeting, and frankly its [sic] insulting to all of the amazing religious and secular leaders who are invited.  They are invited because of all of the incredible work that they do across the City, work to end youth violence, work to provide shelter and stability to the homeless, or compassion and support for people in recovery.  I will not give up the opportunity to highlight one of these amazing leaders who I am privileged to work with for the Satanic Temple.  The City Council does important, serious work for the people of Boston and when we invite someone to participate in our meeting it is out of a profound respect, not a sense of obligation.

[Dkt. 100-13 at 2].  Former Councilor Tim McCarthy responded to NBC Boston's inquiry on the issue by stating, "I would not consider anyone that doesn't have a positive impact on my community, my constituents, my family and me personally.  Every leader I have invited, they all check the forementioned boxes.  This issue is not about the honor bestowed to a faith leader by a Boston City Councilor, this is a publicity stunt."  [Dkt. 104-1 at 10].

On October 2, 2018, a representative from TST again requested an opportunity for someone from TST to give the invocation at an upcoming City Council meeting.  [Dkt. 112 at ¶ 39].  The next day, O'Donnell informed TST via telephone that the City Council does not accept requests from speakers to deliver invocations and City Councilors decide who will deliver the invocation.  [Id. at ¶ 40; see Dkt. 100-14 at 2].  O'Donnell also stated that the City Council does not have a written policy concerning invocations.  [Dkt. 112 at ¶ 40; see Dkt. 100-14 at 2].  On October 9, 2018, O'Donnell emailed the TST representative, explaining that each City Councilor may invite "either clergy or a lay person" to give the invocation, and that the City Councilors do not themselves offer the invocation.  [Dkt. 112 at ¶¶ 41-42; Dkt. 100-14 at 2].

---

[4] It is unclear to whom the message was circulated or whether this was a draft of a public statement to be made.

TST filed a complaint with the Massachusetts Commission Against Discrimination on October 17, 2018.  [Dkt. 100-14].  City Councilors again received emails from members of the public between March – April 2019 regarding TST's request for inclusion as an invocation speaker, and again it appears no City Councilor responded.  [Dkt. 104-1 at 39-41].

TST provides an affidavit from its co-founder and co-director, Lucien Greaves, which states that TST engaged in "charitable acts and community involvement activities within the Boston community."  [Dkt. 104-1 at 13].  These activities included "Menstruatin' with Satan," a drive to collect tampons and sanitary napkins for Rosie's Place, a safe haven for LGBTQIA+ women, in November through December 2016, November 2019 to March 2020, and July 2021; "Warmer than Hell," a coat and winter clothing drive for Second Chances in January 2017; and tabling at Boston Pride every year from 2016 to 2019.  [Id. at 13-14].  TST does not provide evidence that any of the City Councilors knew of or were also involved in these activities.  There is no evidence in the record of other groups requesting invocation invitations and receiving them.  In fact, at a deposition for this action, former Councilor Essaibi-George stated, "I don't think anyone's ever asked me, with the exception, I think, why I'm here today, to offer remarks, a prayer, or a blessing before the [C]ity [C]ouncil," when asked whether other groups have "solicited an invite."  [Dkt. 100-6 at 121:15-23].

## C.    Litigation

TST filed the suit before this Court on January 20, 2021.  [See Dkt. 1].  While TST asserted violations of the Establishment Clause of the U.S. Constitution ("Count I"), the Free Speech and Free Exercise Clause of the U.S. Constitution ("Count II"), the Equal Protection Clause of the U.S. Constitution ("Count III"), and the Free Exercise Clause of the Massachusetts Constitution ("Count IV"), the Court dismissed Counts II and III.  [See Dkt. 21].  TST then spent

the majority of fact discovery attempting to take the deposition of then-mayoral candidate, and

later Mayor, Wu, including issuing a notice of deposition for November 2, 2021—Election Day.

[See, e.g., Dkt. 40; see also Dkt. 90; Dkt. 96].  The Court ultimately granted the City's motion

for a protective order to quash Wu's deposition and awarded the City attorneys' fees and costs

for TST's counsel's use of abusive discovery tactics when he continued to pursue Wu's

deposition.  [See Dkt. 47; Dkt. 63; Dkt. 78; Dkt. 96].  Each party has filed a motion for summary

judgment, which are opposed.  [Dkt. 98; Dkt. 101; Dkt. 109; Dkt. 111].  The Court held a motion

hearing on the cross-motions for summary judgment on June 28, 2023.

## II.   LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in

order to see whether there is a genuine need for trial."  Mesnick v. Gen. Elec. Co., 950 F.2d 816,

822 (1st Cir. 1991) (citation omitted).  Summary judgment may be granted when the record,

viewed in the light most favorable to the non-moving party, presents no "genuine issue of

material fact," and the moving party is entitled to judgment as a matter of law.  Paul v. Murphy,

948 F.3d 42, 49 (1st Cir. 2020) (citation omitted).  A factual dispute is "genuine" when the

evidence is such that a reasonable factfinder could resolve the issue in favor of the non-moving

party, and a fact is "material" where it might affect the outcome of the suit under the applicable

law.  See Patco Constr. Co., Inc. v. People's United Bank, 684 F.3d 197, 206-07 (1st Cir. 2012);

Morris v. Gov't Dev. Bank, 27 F.3d 746, 748 (1st Cir. 1994).  Courts must evaluate "the record

and [draw] all reasonable inferences therefrom in the light most favorable to the non-moving

part[y]."  Est. of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010) (citation omitted).

"Where, as here, a district court rules simultaneously on cross-motions for summary judgment, it

must view each motion, separately, through this prism."  Id.  A non-moving party may "defeat a

summary judgment motion by demonstrating, through submissions of evidentiary quality, that a

trialworthy issue persists." Paul, 948 F.3d at 49 (citation omitted).  Where the non-moving party

bears the ultimate burden of proof, the non-moving party "must present definite, competent

evidence to rebut the motion." Mesnick, 950 F.2d at 822.

## III.    DISCUSSION

The Court must determine whether either party is entitled to judgment as a matter of law

on two claims.  The first is whether the City violated the Establishment Clause when it did not

extend an invitation to TST or grant its request to present an invocation at a City Council

meeting.  While TST does not claim that the City's legislative prayer practice generally runs

afoul of the Establishment Clause, the Court still must consider whether the City Council's

selection process for invocation speakers renders its legislative prayer practice unconstitutional.

The second is whether City Council's invocation selection process burdens TST's religious

beliefs in violation of Massachusetts free exercise law.

### A.    The Establishment Clause

The First Amendment, which applies to the states through the Fourteenth Amendment,

states that the government "shall make no law respecting an establishment of religion."  U.S.

Const. amend. I; Cantwell v. Connecticut, 310 U.S. 296, 303 (1940).  "The clearest command of

the Establishment Clause is that one religious denomination cannot be officially preferred over

another." Larson v. Valente, 456 U.S. 228, 244 (1982).  The City Council's invocations are a

form of legislative prayer, a practice that "is deeply embedded in the history and tradition of this

country." Marsh v. Chambers, 463 U.S. 783, 786 (1983).  This practice "has coexisted with the

principles of disestablishment and religious freedom" from "colonial times through the founding

of the Republic and ever since." Id.  Legislative prayer "is meant to lend gravity to the occasion

and reflect values long part of the Nation's heritage.  Prayer that is solemn and respectful in tone, that invites lawmakers to reflect upon shared ideals and common ends before they embark on the fractious business of governing, serves that legitimate function."  <u>Town of Greece v. Galloway</u>, 572 U.S. 565, 582-83 (2014).  Legislative prayer need not be nonsectarian.  <u>Id.</u> at 580-81 ("<u>Marsh</u> nowhere suggested that the constitutionality of legislative prayer turns on the neutrality of its content. . . .  Nor did the Court imply the rule that prayer violates the Establishment Clause any time it is given in the name of a figure deified by only one faith or creed.").  To be lawful, the legislative prayer practice at issue must "fit[] within the tradition long followed in Congress and the state legislatures."  <u>Id.</u> at 577.

### 1.    Discrimination Against TST

TST does not claim that the City's practice of opening City Council meetings with an invocation violates the Establishment Clause.  As TST explained at the motion hearing, the essence of this action is an allegation of discrimination—TST claims that the City discriminated against it because of its religious views when the City Council refused to invite TST to give the invocation.  The City counters that there is no evidence that its religious beliefs are the reason TST did not receive an invitation to give an invocation, and the true question is whether the City Council's legislative prayer practice endorses or establishes a particular religion over another.

Establishment Clause jurisprudence is not a paragon of clarity on the issue of legislative prayer.  Although "historical patterns cannot justify contemporary violations of constitutional guarantees," <u>Marsh</u>, 463 U.S. at 790, "the Establishment Clause must be interpreted 'by reference to historical practices and understandings,'" <u>Town of Greece</u>, 572 U.S. at 576 (citation omitted).  While there are no bright-line rules or tests to apply to legislative prayer cases, the Supreme Court has made it clear that "the prayer opportunity [cannot be] exploited to proselytize

or advance any one, or to disparage any other, faith or belief."  Marsh, 463 U.S. at 794-95; see

Town of Greece, 572 U.S. at 585 ("Absent a pattern of prayers that over time denigrate,

proselytize, or betray an impermissible government purpose, a challenge based solely on the

content of a prayer will not likely establish a constitutional violation.").  The ultimate question is

whether the legislative prayer practice "compelled its citizens to engage in religious observance,"

which is a "fact-sensitive" inquiry "that considers both the setting in which the prayer arises and

the audience to whom it is directed."  Town of Greece, 572 U.S. at 587.

There is even less guidance on the proof required for a discrimination claim in the

legislative prayer context of the Establishment Clause.  However, the Supreme Court has

provided some direction on the issue.  In Marsh v. Chambers, the Supreme Court found that a

state legislature's prayer practice did not violate the First Amendment when "[w]eighed against

the historical background."  463 U.S. at 793.  There, a single clergyman of one denomination had

given prayers in the Judeo-Christian tradition for sixteen years and was paid at the public

expense.  Id.  The Supreme Court explained that "[a]bsent proof that the chaplain's

reappointment stemmed from an impermissible motive," his "long tenure does not in itself

conflict with the Establishment Clause."  Id. at 793-94.  The Supreme Court articulated a similar

explanation decades later in Town of Greece v. Galloway:

> [T]he Court disagrees with the view taken by the Court of Appeals that the town of
> Greece contravened the Establishment Clause by inviting a predominantly Christian set
> of ministers to lead the prayer.  The town made reasonable efforts to identify all of the
> congregations located within its borders and represented that it would welcome a prayer
> by any minister or layman who wished to give one.  That nearly all of the congregations
> in town turned out to be Christian does not reflect *an aversion or bias on the part of town
> leaders against minority faiths*.  So long as the town maintains *a policy of
> nondiscrimination*, the Constitution does not require it to search beyond its borders for
> non-Christian prayer givers in an effort to achieve religious balancing.  The quest to
> promote "a 'diversity' of religious views" would require the town "to make wholly
> inappropriate judgments about the number of religions [it] should sponsor and the relative

13

frequency with which it should sponsor each," a form of government entanglement with religion that is far more troublesome than the current approach.

572 U.S. at 585-86 (emphasis added).

Taken together, these cases suggest that allowing some individuals to give prayers at a legislative session but not others due to "an aversion or bias . . . against minority faiths" or other "impermissible motive" is discrimination in violation of the Establishment Clause. Id. at 585; Marsh, 463 U.S. at 793. Other federal courts to consider similar claims have applied this same approach. See Williamson v. Brevard County, 928 F.3d 1296, 1308 (11th Cir. 2019) (finding that the selection process employed by a board of commissioners reflected "an aversion or bias on the part of the [county] leaders against minority faiths" and had therefore failed to maintain "a policy of nondiscrimination," which indicated that "the prayer opportunity has been exploited to proselytize or advance" a "class of religions to the exclusion of many others" (citations omitted)); The Satanic Temple, Inc. v. City of Scottsdale, No. 18-CV-00621-PHX-DGC, 2020 WL 587822, at *2, 7 (D. Ariz. Feb. 6, 2020) (considering whether the city's denial of the plaintiff's request to give an invocation was "because of 'an aversion or bias . . . against minority faiths'" and therefore in violation of the Establishment Clause (citation omitted)), aff'd The Satanic Temple, Inc. v. City of Scottsdale, 856 Fed. Appx. 724, 726 (9th Cir. 2021) ("After weighing the credibility of the witnesses, the district court properly concluded that TST had failed to prove by a preponderance of the evidence that TST's religious beliefs were a factor, let alone a substantial motivating factor, in [the] decision not to approve TST to give a legislative prayer.").[5]

---

[5] TST itself acknowledges that the "case-dispositive question is whether any of the decisionmakers intentionally discriminated." [Dkt. 113 at ¶ 3].

14

TST can prevail on its Establishment Clause claim if the evidence shows that the City's denial of TST's request to give the invocation was based on TST's religious beliefs. The City provides ample evidence that the refusal to invite TST to give an invocation was not because of TST's religious beliefs. All of the evidence submitted suggests that individual City Councilors invited speakers who served their constituents and were active in their communities, and TST did not qualify as such. For example:

- In response to TST's first request for an invocation, former Councilor Wu explained that the invocation invitations are used to recognize leaders "who are active in the community and organizations that are representative of their districts." [Dkt. 100-11 at 2].

- In a deposition, O'Donnell similarly stated that invitations are extended to people the Councilors "have relationships with because of their districts," such as "work that the individual does in their districts or does for their constituents." [Dkt. 100-1 at 53:7-12].

- In 2017, apparently in response to one of TST's requests for an invocation, former Councilor Essaibi-George, like former Councilor Wu, stated that invocation speakers are "invited because of all of the incredible work that they do across the City, work to end youth violence, work to provide shelter and stability to the homeless, or compassion and support for people in recovery." [Dkt. 100-13 at 2].

This evidence shows that the City Council's refusal to extend an invitation to TST was not motivated by an "aversion or bias" toward TST's beliefs. Town of Greece, 572 U.S. at 585. The introductions of the invocation speakers in the videos in the record similarly focus on the work the speakers had done in the community. Moreover, TST's own papers suggest that City

Council invited invocation speakers based on their status as "political insiders," not their religious beliefs. [See Dkt. 102 at 3]. It is possible that City Councilors select invocation speakers based on political affiliations and connections, as TST states. But those political considerations do not equate to discrimination based on religious beliefs.

TST provides no evidence that the decision not to extend an invitation to TST was motivated by animus or bias. The City provides evidence that it was, in fact, motivated by other, lawful reasons. This evidence ranges from the City Councilors' contemporaneous responses to TST's requests for an invitation to evidence revealed years later through fact discovery, such as depositions. The evidence, viewed as a whole, does not suggest that these reasons were pretextual.[6] There is no evidence that other groups asked to give an invocation and an invitation was then extended to them.[7] [See Dkt. 100-6 at 121:19-23]. While TST provides some evidence that it had been involved in the greater Boston community, which is the primary factor City Councilors consider when selecting invocation speakers, through "Menstruatin' with Satan,"

---

[6] While TST acknowledges that the "case-dispositive question is whether any of the decisionmakers intentionally discriminated," it maintains that "discoverable information" regarding such intent has been withheld from TST because it was not allowed to take now-Mayor Wu's deposition. [Dkt. 113 at ¶¶ 3-4]. The Court has already discussed, on multiple occasions and at length, TST's attempt to take Mayor Wu's deposition. [See, e.g., Dkt. 96]. TST ignores the fact that the City Council is comprised of many members, and it chose to depose only former Councilor Essaibi-George and one 30(b)(6) designee, even though the City identified several other 30(b)(6) deponents, and the identities of other City Council members are publicly known. If relevant evidence is absent from the summary judgment record, it is the result of TST's own actions.

[7] TST cites to an email exchange between City Councilors and representatives of the Jewish Community Relations Council of Greater Boston ("JCRCGB") to support its assertion that other groups have requested and received invitations to give the invocation. [Dkt. 102 at 12; see Dkt. 104-1 at 24-25]. The emails themselves do not support that conclusion. In that email exchange, the JCRCGB representatives write that they are excited to "showcase GBJCL (our literacy program) at the September 26th City Council meeting." [Dkt. 104-1 at 25]. They inquire, "Would the invited clergy member have to be from the City of Boston or could we open it up to a Rabbi that is involved in our programming? What does this actually look like during the meeting?" [Id. at 25]. These questions are not a request for an invitation. In context, it is clear that the invitation to give the invocation had already been extended to JCRCGB, and the organization's representatives wanted to know whether they could select a rabbi from the organization that is generally involved in their programming. [Id.]. There is no response to these questions included in the email exchange. [See id. at 24-25]. Moreover, even if the rabbi the organization chose to give the invocation was not from Boston—and the record is not clear on that matter—the organization is clearly Boston-based.

"Warmer than Hell," and Boston Pride tabling, there is no evidence that the City Councilors knew of those activities, nor that those activities took place within the Councilors' districts. Indeed, the evidence clearly conflicts with that conclusion—former Councilor Essaibi-George explained that she was unaware of TST's activities and community contributions when they sought inclusion in the invocation calendar and, indeed, the most she had read about TST was in the pamphlet given to her on the day of her deposition for this litigation.  [Dkt. 100-6 at 150:18-21].

The emails sent from the public to the City Councilors fall short of supporting TST's discrimination claim.  Emails from the public expressing disagreement with TST's beliefs—particularly where, as here, there is no evidence that any City Councilor responded to those emails—do not support an inference that City Councilors did not invite TST to give an invocation because they shared the same opinion as the senders.  City Councilors are public officials who interact with constituents regularly and whose email addresses are publicly available.  See https://www.boston.gov/departments/city-council#city-council-members.  If they could be held liable for every belief a constituent expressed, there would be no end to their liability.  That is a step too far that the Court is not willing to take.

TST's reliance on the City Council's decision to end the stipend given to invocation speakers is misplaced.  Even if the Court assumes that City Council reviewed its stipend policy as a result of receiving TST's request for inclusion, the decision to terminate that practice does not suggest discriminatory intent.  While TST cites to Village of Arlington Heights v. Metro. Hous. Dev. Corp., for the proposition that a change in the City Council's process is evidence of discrimination, Arlington Heights stands only for the proposition that "[d]epartures from the normal procedural sequence also might afford evidence that improper purposes are playing a

17

role." 429 U.S. 252, 267 (1977). There was no such departure and "improper" purpose here. City Council did not give a stipend to one speaker and not to another; rather, it ended a practice for everyone after it determined that the "best practice" was to stop the stipend. [See Dkt. 104-1 at 37-38]. Nor did City Council terminate the invocation practice entirely to keep one group from participating; it simply eliminated a singular element of the practice—an element that says nothing about how and why a speaker is selected. Despite TST's claims otherwise, it is unclear how the termination of the stipend demonstrates "aversion or bias" based on religious beliefs. Town of Greece, 572 U.S. at 585. The decision to end the stipend affected all invocation speakers equally.

The Court would be remiss not to acknowledge the differences between Town of Greece and this case. In Town of Greece, the town made "reasonable efforts to identify all of the congregations located within its borders and represented that it would welcome a prayer by any minister or layman who wished to give one." 572 U.S. at 585. Such practices would support a finding that there has been no Establishment Clause violation. The City Council here does neither of these things. Instead, invocation speakers are invited at the discretion of the individual City Councilors, which heightens Establishment Clause concerns. The evidence on record, however, suggests that the City Councilors' discretion was not exercised in such a way that individuals or groups were excluded from giving an invocation because of their religious beliefs. The City Council did not allow some requests while denying others, and the City Councilors' primary motivation in inviting an invocation speaker, based on the evidence before the Court, has always been the individual or organization's involvement in the community. While the Court understands TST's desire to enjoy what it describes as the "benefit" of sharing its message in this forum, the record is simply devoid of any evidence that would support the conclusion that

the failure to extend an invocation invitation to TST stemmed from an "impermissible motive."

Marsh, 463 U.S. at 793.

### 2.    City Council's Legislative Prayer Practice as a Whole

In their briefs, the parties discuss a number of cases that have considered the

constitutionality of various legislative prayer practices.  See Town of Greece, 572 U.S. at 565;

Marsh, 463 U.S. at 783; Lund v. Rowan County, 863 F.3d 268 (4th Cir. 2017); Bormuth v.

County of Jackson, 870 F.3d 494 (6th Cir. 2017); Rubin v. City of Lancaster, 710 F.3d 1087,

1097 (9th Cir. 2013).  The case before this Court is unlike those cases.  In those cases, the

plaintiffs brought broad challenges against the government's legislative prayer policies and

practices.  They argued that the government's actions, through its legislative prayer, had the

effect of placing an "official seal of approval" on Christianity.  Rubin, 710 F.3d at 1097; see

also, e.g., Lund, 863 F.3d at 274 (plaintiffs arguing that "the Board, by delivering exclusively

Christian prayers, affiliated the county with Christianity, advanced Christianity, and coerced the

plaintiffs into participating in religious exercises").  TST makes no such claim here.  TST instead

asserts that it was discriminated against when it asked for and was denied an opportunity to give

the invocation at a City Council meeting.  [Dkt. 102 at 2-3].  As explained, it was not.  And even

if the Court assumes that TST does claim, like the plaintiffs in the cases that have come before

this, that City Council's legislative prayer practice as a whole violates the Establishment Clause,

TST's Establishment Clause action fails.

Because there is no definitive test to apply to legislative prayer challenges, it is necessary

to understand how previous courts have evaluated this issue.  In Marsh, the Supreme Court

evaluated a "challenge to the practice of opening sessions with prayers by a State-employed

clergyman."  463 U.S. at 786.  It found that the state's practice did not run afoul of the

Establishment Clause after examining the "features" of the legislature's practice: a clergyman of only one denomination had been selected for sixteen years; the chaplain was "paid at public expense"; and the prayers offered followed "the Judeo-Christian tradition." Id. at 793. In Town of Greece, the Supreme Court considered whether the town "impose[d] an impermissible establishment of religion by opening its monthly board meetings with a prayer." 572 U.S. at 569-70. There, the Court noted that the town "made reasonable efforts to identify all of the congregations located within its borders and represented that it would welcome a prayer by any minister or layman who wished to give one," though it stopped short of *requiring* such efforts in legislative prayer cases. Id. at 585. The Supreme Court also determined that the offering of the invocation did not compel "citizens to engage in a religious observance," because the "principal audience for these invocations is not, indeed, the public but lawmakers themselves," and the government had not "directed the public to participate in the prayers, singled out dissidents for opprobrium, or indicated that their decisions might be influenced by a person's acquiescence in the prayer opportunity." Id. at 587-88. The town board "at no point solicited . . . gestures by the public," such as standing, bowing their heads, or making the sign of the cross. Id. at 588. Moreover, the town "neither reviewed the prayers in advance of the meetings nor provided guidance as to their tone or content," and the "prayers often sounded both civic and religious themes." Id. at 571. Under Town of Greece, the question is whether "the course and practice over time shows that the invocations denigrate nonbelievers or religious minorities, threaten damnation, or preach conversion," which would suggest the prayer "fall[s] short of the desire to elevate the purpose of the occasion and to unite lawmakers in their common effort." Id. at 583.

Appellate courts have used Marsh and Town of Greece to evaluate similar legislative prayer claims under the Establishment Clause. In Rubin v. City of Lancaster, the plaintiff

challenged a city council's practice of opening its meetings with invocations, which were frequently in the Christian tradition. 710 F.3d at 1090, 1095. The city compiled a database of religious congregations with an established presence in the city and invited those groups to open a city-council meeting with an invocation. Id. at 1089. The question at the heart of the case was "whether the City itself has taken steps to affiliate itself with Christianity" through its legislative prayer practices. Id. at 1097. Given the "litany of neutrality-enforcing safeguards," the Ninth Circuit held that it had not. Id. The court described these safeguards: "No person attending a city-council meeting, including a city employee or official, is required to participate in any prayer. No volunteer is paid to pray. Neither the council nor the clerk may engage in any prior inquiry, review of, or involvement in, the content of any prayer to be offered. Moreover, the clerk has never removed a congregation's name from the list of invitees or refused to include one." Id. (internal quotation marks omitted).

The Fourth Circuit confronted a similar question in Lund v. Rowan County. Four factors convinced the court that the county's legislative prayer practice violated the Establishment Clause. See 863 F.3d at 271-272. First, the government actors themselves, elected members of the county's board of commissioners, gave the prayers. Id. at 277. These "elected officials [therefore] took up a ministerial function." Id. at 290. Moreover, the content of the prayers was "entirely at the discretion of the commissioner." Id. at 273. Second, the prayers were used to proselytize. The prayers were "invariably and unmistakably Christian in content," with several prayers "confess[ing] sin and ask[ing] for forgiveness on the community's behalf," and others "impl[ying] that Christianity was superior to other faiths" and "implor[ing] attendees to accept Christianity." Id. Third, the public audience was instructed to participate. For example, after calling the meeting to order, the chairperson would ask everyone in attendance, including

constituents, to stand up, and a commissioner would then ask the community to "join him in worship." Id. at 272.  Fourth, the "intimate setting of a municipal board meeting present[ed] a heightened potential for coercion." Id. at 287.  The Fourth Circuit emphasized the need to look at the "totality of the circumstances"—the "crucial interaction between the elements"—when evaluating legislative prayer practices under the Establishment Clause. Id. at 289.  In Bormuth v. County of Jackson, the Sixth Circuit evaluated a similar challenge to legislator-led prayer, considering largely the same factors but reaching the opposite conclusion on the record before it. 870 F.3d at 512.

From these cases, the Court gleans five general factors to consider when evaluating broad challenges to a legislative prayer practice: (1) the identity of the speaker; (2) whether the speaker is paid to give a prayer; (3) the government's review of the speaker's chosen prayer content; (4) whether the nature of the prayer proselytizes or denigrates other religions; and (5) the selection process.[8]

As to the first factor, the City Council's invocation speaker is a guest, often a member of the clergy, not the City Councilors themselves.  Contrary to TST's assertions, the fact that these speakers are selected by individual City Councilors does not require the Court to conclude that the "[C]ouncil members might as well be the sole providers of invocations."  [Dkt. 102 at 16]. This argument ignores the fundamental differences in lawmaker-led prayer and prayer led by guest speakers.  See Lund, 863 F.3d at 278 (explaining that "lawmaker-led prayer . . . both identifies the government with religion more strongly than ordinary invocations and heightens the constitutional risks posed by requests to participate and by sectarian prayers").  When

---

[8] The particular setting, e.g., that of a municipal board meeting versus a state legislature, has not been considered by the majority of courts, and this Court does not find it necessary to evaluate that factor now.  Even if it did, the Court notes that the invocation here occurs right after roll call, before the City Council's official business begins, which lessens any concerns of possible coercion.  See Lund, 863 F.3d at 287.

government actors "themselves, not guest ministers, [lead] the community in prayer" and "compose[] each invocation 'according to their personal faiths,'" there is "much greater and more intimate government involvement." Id. Such is not the case here.

　　While the majority of City Council's invocation speakers have been undoubtedly of a Christian denomination, speakers of other denominations and laypeople have also been asked to give the invocation. [See Dkt. 112 at ¶¶ 24-31]. The inclusion of rabbis, an imam, and laypersons allows for a "'diversity' of religious views." Town of Greece, 572 U.S. at 585-86. While there could be even more diversity of speakers, the fact that the majority of speakers have been of a Christian denomination is not a sufficient basis to determine that City Council's invocation practice violates the Establishment Clause. See Marsh, 463 U.S. at 793 ("We, no more than Members of the Congresses of this century, can perceive any suggestion that choosing a clergyman of one denomination advances the beliefs of a particular church."); Town of Greece, 572 U.S. at 570-71, 584-85; Brevard, 928 F.3d at 1310 ("We have found no Establishment Clause problems presented when local governments mostly invited Christian volunteer invocation-givers, so long as this was reasonably reflective of the community's demographics and did not advance a single faith."). Furthermore, the Court must view this fact in combination with the other facts before it.

　　As to the second factor, it is undisputed that the invocation speakers received a stipend for their participation until 2016 or 2017 when the practice ceased. [See Dkt. 112 at ¶¶ 9-10]. The evidence suggests that the stipend was nominal, and speakers received no other financial benefits. [See id. at ¶ 10; see also Dkt. 100-7 at 16:2-4]. Given the nominal financial amount at issue, and the fact that the practice has not existed for at least five years, the Court is not persuaded that this feature of City Council's historical legislative practice violates the

23

Establishment Clause, particularly when viewing the facts as a whole.  See Marsh, 463 U.S. at 794 ("Nor is the compensation of the chaplain from public funds a reason to invalidate the Nebraska Legislature's chaplaincy . . . .").

Regarding the third consideration, there is no evidence that the City Councilors review or are otherwise involved in the speaker's prayer selection.  See Town of Greece, 572 U.S. at 571 ("Greece neither reviewed the prayers in advance of the meetings nor provided guidance as to their tone or content . . . .  The town instead left the guest clergy free to compose their own devotions.").  The evidence instead shows that the speakers determine and write their own invocations.  [See Dkt. 100-7 at 29:16-18 ("I usually write my invocations depending on what is going on or what time or year something is happening.")].

As to the fourth factor, whether the nature of the prayers given at City Council meetings evinces "a pattern of prayers that over time denigrate, proselytize, or betray an impermissible government purpose," the evidence on record suggests that it does not.  Town of Greece, 572 U.S. at 585.  There are few examples of City Council invocations in the record before this Court, especially when considering that the City Council meets every week.  Of the three examples, all of the speakers direct their prayer largely toward the City Council itself.  One speaker explicitly notes, "I pray for each member of the Boston City Council," asking the Lord to give them understanding, wisdom, and knowledge as they proceed with their duties.  August 2021 Video at 7:17-9:49.  Another speaker reads from the Koran and then implores the City Councilors to get to know one another outside of the walls of City Hall, as they represent the people, and the more they can come together, the more the people benefit.  April 2023 Video at 8:35-9:34.  In the third video, the speaker thanks the Lord for the service of the City Councilors and asks the Lord to remind them that "nothing is too hard" and to guide them to be the "best politicians, the best

24

governing body that this nation has ever seen." September 2016 Video at 5:57-9:57. To be sure, each of the speakers incorporates religious references, sometimes beginning with, "Let us pray," and reading from holy books, "but they also invoked universal themes, as by . . . calling for a 'spirit of cooperation' among town leaders." Town of Greece, 572 U.S. at 584. In other words, the invocations included "both civic and religious themes" and largely serve "to elevate the purpose of the occasion and to unite lawmakers in their common effort." Id. at 571, 582-83. Indeed, it appears that the "principal audience for these invocations is not . . . the public but lawmakers themselves, who may find that a moment of prayer or quiet reflection sets the mind to a higher purpose and thereby eases the task of governing." Id. at 587. Such prayers "do not fall outside the tradition [the Supreme] Court has recognized" as allowed by the Establishment Clause. Id. at 584. None of the prayers, at least those in the record before the Court, "denigrate nonbelievers or religious minorities, threaten damnation, or preach conversion," even with their references to a deity or prayer. Id. at 582-83.

Moreover, the prayers do not demonstrate an intent to force "citizens to engage in a religious observance." Id. at 587. In one video, the City Councilor asks people to rise for the invocation and the Pledge of Allegiance. At no point in the other two videos do City Councilors ask the public to rise for the invocation, nor do any of the videos indicate any requests from City Councilors to bow heads, make the sign of the cross, or participate in any similar gestures. The singular instance on record of a City Councilor asking everyone to rise—not just for the invocation, but also for the Pledge of Allegiance—does not suggest a "pattern of prayers" that violates the Establishment Clause by "direct[ing] the public to participate in the prayers, singl[ing] out dissidents for opprobrium, or indicat[ing] that their decisions might be influenced

by a person's acquiescence in the prayer opportunity.'"[9] Id. at 588; see also Bormuth, 870 F.3d at

517 ("[W]e do not agree that soliciting adult members of the public to assist in solemnizing the

meetings by rising and remaining quiet in a reverent position is coercive.  These 'commonplace'

and 'reflexive' requests—whether from ministers or elected individuals following their own

faith's normative cues—do not alone mandate participation, especially as most are preceded with

a polite 'please.'" (citations omitted)).  A City Councilor requesting the audience to stand for the

invocation and the Pledge of Allegiance is a far cry from asking the audience to "join . . . in

worship."  See Lund, 863 F.3d at 272.

That leaves us with the fifth factor, the process used to identify and invite invocation

speakers.  While the Court has already evaluated City Council's invocation speaker selection

process as it relates to TST's particular claim of discrimination, it has not examined City

Council's process generally.  TST's claim could be construed not as an individual allegation of

discrimination, but rather as alleging that the City's legislative prayer practice generally violates

the Establishment Clause because the selection process is discriminatory.

---

[9] In rebuttal to the City's argument that the audience was not directed to stand for the invocation in the August 2021 Video, TST provides a link to another video for the first time in its reply in support of its motion for summary judgment, stating that it "conflated" one invocation invitee with another.  [See Dkt. 114 at 2].  The video is not included in TST's statement of facts or in its response to the City's statement of facts.  "[A]rguments raised for the first time in a reply memorandum will not be considered," and TST's claim that it "conflated" one invitee with another does not convince the Court that the video is properly before the Court.  Facey v. Dickhaut, 91 F. Supp. 3d 12, 22 (D. Mass. 2014).  Even if the Court does consider the video, it does not change the Court's review.  In that video, which is from a September 2018 City Council meeting, the former City Council President asks "the guests [to] please rise as Councilor Essaibi-George comes up to introduce our clergy for the day . . . and remain standing as Councilor Essaibi-George leads us in the Pledge of Allegiance."  https://www.youtube.com/watch?v=NTXFgOjpbTE at 1:33-1:46.  As in the other video, the public is asked to stand not just for the invocation but also for the Pledge of Allegiance.  And two examples in which the public is asked to stand does not, any more than the one example properly before the Court, convince the Court that there is a "pattern" of forced public participation.  See Town of Greece, 572 U.S. at 589; Bormuth, 870 F.3d at 571.  Moreover, when asked whether it was "normal" to ask everyone to stand for the invocation and Pledge of Allegiance, former Councilor Essaibi-George responded, "I don't know whether I characterize it as normal.  Every [C]ouncil [P]resident or whoever's leading the body, sometimes phrases it in different ways.  Sometimes there are [C]ouncilors and—and whoever's in the chamber is not necessarily asked, stands on their own, if they're able.  So I actually don't know whether I'd say that's normal."  [Dkt. 113 at 24].  While she acknowledges that there may be "an expectation that people generally stand during the prayer," that is a far cry from a consistent request from a City Councilor to the public to stand only for the invocation.  [Id.].

The City Council's process—or lack thereof—for selecting invocation speakers is the most troublesome to the Court of all factors to consider regarding legislative prayer practices. There is no dispute that the selection of the invocation speaker is left to each individual City Councilor's discretion, and there are no formal written policies governing this procedure. This leaves ample room for abuse, which concerns the Court. However, the lack of a formal, written policy does not by itself create a constitutional problem (though the existence of one could provide neutrality-enforcing guidelines that would help avoid constitutional issues in the future), nor does the fact that the selection of speakers is left to the discretion of the individual Councilors. Brevard, 928 F.3d at 1314. The ultimate question is whether the City "maintains a policy of nondiscrimination" in the way it chooses invocation speakers. Town of Greece, 572 U.S. at 585. In other words, the "issue lies in how the [Councilors] exercised their discretion in practice." Brevard, 928 F.3d at 1314-15.

The evidence the City provides shows that it does maintain a policy of nondiscrimination, and TST fails to provide evidence that the City Councilors "exercised [their] plenary discretion in plainly unconstitutional ways." Brevard, 928 F.3d at 1312. Speakers from a variety of Christian denominations, rabbis, and leaders of other faiths, including an imam, in addition to laypeople, have been asked to give the invocation at City Council meetings. All evidence before the Court indicates that City Councilors choose invocation speakers not because of the religion they are affiliated with, but because of their involvement in the communities the Councilors represent. TST's own briefing repeatedly suggests—without evidence—that invocation invitations are reserved for "political allies," not certain religious groups. [See, e.g., Dkt. 102 at 8]. Of course, this is not a case where City Council "at no point excluded or denied an opportunity to a would-be prayer giver," nor has City Council made "reasonable efforts to

27

identify all of the congregations located within its borders," as in <u>Town of Greece</u>.  572 U.S. at 571, 585.  City Councilors did, in fact, deny one request—TST's—to give an invocation, and speaker selection is left to each City Councilor's individual discretion.  But, as the Court has already explained, here, the rejection of one group (there are no other rejections on record)[10] who had been previously unknown to the City Councilors does not constitute a violation of the Establishment Clause.  Moreover, the evidence before the Court suggests that the City Councilors' discretion generally has been exercised within the limits of the Establishment Clause, as nothing in the record suggests that the selection or exclusion of speakers is based on religious beliefs rather than community involvement.

This case is unlike <u>Williamson v. Brevard County</u>, which found that a county board's selection process rendered its legislative prayer practice unconstitutional.  928 F.3d at 1314-15.  In <u>Brevard</u>, the evidence suggested that the commissioners used their plenary discretion "to discriminate on the basis of religious beliefs, favoring some monotheistic religions over others and disfavoring and excluding—at least—religions that are polytheistic, pantheistic, or otherwise outside of the 'mainstream.'"  <u>Id.</u> at 1311.  This evidence included statements from the commissioners themselves which indicated that they considered "the specific religious beliefs of a prospective invocation-giver" and that "certain religions or types of religions would be flatly banned from giving an invocation."  <u>Id.</u> at 1313-14.  The court found that these comments reflected "an aversion or bias on the part of [county] leaders against minority faiths," and a "fair

---

[10] TST provides an email dated December 12, 2020, from Rajan Zed, "a Hindu leader," in which he asks to read an invocation at a City Council meeting.  [Dkt. 104-1 at 46].  The recipients of the email are a number of City Councilors.  There is no indication that any of the Councilors responded.  Even if the Court assumes Zed's request was not granted, this second denial fails to support a claim that the selection process is discriminatory.  There is nothing in the record regarding Zed's congregation—merely that he is "a Hindu leader"— his involvement in the community, or the City Councilors' reasons for not extending an invitation to lead an invocation to Zed.  If anything, this email suggests that the City Council did, in fact, follow a non-discriminatory policy of not allowing requests to give the invocation.

examination of the lengthy summary judgment record" showed that the "[c]ommissioners consciously held and acted upon views about which religions and types of religious beliefs were the right kind for invocations and which were not." Id. at 1315. No such evidence exists here. This is not to say that there must be a "smoking gun" indicating clear religious bias to find that the City Council's selection process fails to adhere to a policy of nondiscrimination, but there must be *something* to suggest that the selection process reflects "an aversion or bias on the part of town leaders against minority faiths." Town of Greece, 572 U.S. at 585. On the summary judgment record before this Court, the selection process here does not reflect such prejudice. This is particularly true when the Court views the selection process in light of the other factors discussed. When the Court considers the City Council's legislative prayer practice as a whole, it cannot say that "the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other, faith or belief," Marsh, 463 at 794-95, such that it "promote[s] a preferred system of belief or code of moral behavior" in violation of the Establishment Clause, Town of Greece, 572 U.S. at 581. Judgment must be awarded in favor of the City on TST's Establishment Clause claim.

### B.  Massachusetts Free Exercise Claim

The City also seeks summary judgment on TST's claim that the City Council's legislative prayer practice burdens TST's free exercise of religion under Massachusetts law. See Mass. Gen. Laws. Const. amend. art. 46, § 1. The question is whether the state action complained of "substantially burdens [the] free exercise of religion, and, if it does, whether the [government] has shown that it has an interest sufficiently compelling to justify that burden." Society of Jesus of New Eng. v. Massachusetts, 808 N.E.2d 272, 279 (Mass. 2004) (first modification in original). "The party claiming an unconstitutional burden on the free exercise of religion must show (1) a

sincerely held religious belief, which (2) conflicts with, and thus is burdened by, the state

requirement.  Once the claimant has made that showing, the burden shifts to the state" to

demonstrate "both that the (3) requirement pursues an unusually important governmental goal,

and that (4) an exemption would substantially hinder the fulfillment of the goal."  Id. (citation

and internal quotation marks omitted).

 TST's claim fails on the second prong of this analysis.  See Curtis v. Sch. Comm. of

Falmouth, 652 N.E.2d 580, 587 (Mass. 1995) ("The preliminary inquiry in a free exercise

analysis is whether the challenged governmental action creates a burden on the exercise of a

plaintiff's religion.").  TST argues that City Council's legislative prayer practice is unlawfully

burdensome because "it amounts to a forced choice" that requires TST to "continue to venerate

Satan and thereby forfeit [its] opportunity to access a prayer opportunity," or it can "abandon the

defining aspect of [its] creed in the hopes that this will make [it] sufficiently palatable to the

political ruling class."  [Dkt. 111 at 10].  This manufactured burden cannot sustain TST's free

exercise challenge.  A "'substantial burden' is one that is coercive or compulsory in nature."

Curtis, 652 N.E.2d at 587 (citations omitted).  The City Council's legislative prayer practice is

neither.  The City has neither "condition[ed] receipt of an important benefit on conduct

proscribed by a religious faith," nor has it "denie[d] such a benefit because of conduct mandated

by a religious belief," and there is no indication that the City Council's legislative prayer practice

has made it "more difficult to practice certain religions."  Id. at 588.  Because TST's "right to

maintain [its] religion has not been hampered" by the City Council's legislative prayer practice,

judgment must be awarded in favor of the City.  Fedele v. Sch. Comm. of Westwood, 587

N.E.2d 757, 761 (Mass. 1992).

IV.    **CONCLUSION**

For the foregoing reasons, the City's motion for summary judgment [Dkt. 98] is

**GRANTED**, and TST's motion for summary judgment [Dkt. 101] is **DENIED**.

**SO ORDERED.**

Dated: July 31, 2023                                    /s/ Angel Kelley
                                                        Hon. Angel Kelley
                                                        United States District Judge

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| The Satanic Temple, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 21-CV-10102-AK |
| v. | ) | |
| | ) | |
| City of Boston, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## JUDGMENT

**A. KELLEY, D.J.**

In accordance with the Court's Memorandum and Order dated July 31, 2023 (Dkt. No. 119), granting the City's motion for summary judgment and denying TST's motion for summary judgment, it is hereby ORDERED:

Judgment entered for City of Boston.

Dated: July 31, 2023                                                    /s/ Miguel A. Lara
                                                                                       Deputy Clerk

1

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **THE SATANIC TEMPLE, INC.** | **CASE NO.** 21-CV-10102 |
| PLAINTIFF, | |
| *V.* | **NOTICE OF APPEAL** |
| **CITY OF BOSTON, MA** | |
| DEFENDANT. | |

**NOTICE IS GIVEN** that Plaintiff-Appellant The Satanic Temple, Inc. respectfully appeals to the United States Court of Appeals for the First Circuit from the following orders from this Court:

- The final order, granting Boston summary judgment and denying TST summary judgment (ECF 119, dated July 31, 2023) and judgment (ECF 120, dated July 31, 2023);

- The order denying TST's motion for discovery sanctions (ECF 88, dated February 14, 2023);

- The order denying reconsideration as to the dismissal of the Free Speech / Free Exercise claim (ECF 76, dated December 6, 2022);

- The order denying TST's motion to recuse (ECF 75, dated December 6, 2022)

- The order granting Boston's motion to prohibit the deposition of Michelle Wu (ECF 47, dated April 6, 2022), and related orders:

  - The order denying reconsideration (ECF 78, dated December 23, 2022);

  - The order granting attorney's fees (ECF 87, dated February 14, 2023);

  - The order granting motion to quash (ECF 63, dated September 16, 2022); and

  - The order denying certificate of appealability (ECF 51, dated April 15, 2022).

There being a final judgment, appellate jurisdiction is founded on 28 USC § 1291.

Respectfully submitted,



**Matt Kezhaya**                    matt@crown.law
Ark. # 2014161            direct: (479) 431-6112
Minn. # 0402193          general: (612) 276-2216

150 S. Fifth St., Suite 1850, Minneapolis, MN 55402

## CERTIFICATE OF SERVICE

**NOTICE IS GIVEN** that I, Matt Kezhaya, efiled the foregoing document by uploading it to the Court's CM/ECF system on August 2, 2023, which sends service to registered users, including all other counsel of record in this cause. *s/ Matt Kezhaya*