No. 23-1642

# United States Court of Appeals for the First Circuit

THE SATANIC TEMPLE, INC.,

*Plaintiff-Appellant,*

*v.*

CITY OF BOSTON,

*Defendant-Appellee.*

On Appeal from the United States District Court for the District of Massachusetts

Civil Action No. 1:21-cv-10102-AK

The Honorable Angel Kelley, United States District Judge

**BRIEF OF *AMICUS CURIAE* FIRST LIBERTY INSTITUTE IN SUPPORT OF APPELLEE THE CITY OF BOSTON AND AFFIRMANCE**

Lea E. Patterson
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway
Suite 1600
Plano, TX 75075
(972) 941-4444
lepatterson@firstliberty.org

Joel S. Nolette (# 1209712)
Stephen J. Obermeier
Krystal B. Swendsboe
Kahlil H. Epps
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
(202) 719-7000
jnolette@wiley.law

Date: March 25, 2024

*Counsel for* Amicus Curiae *First Liberty Institute*

## DISCLOSURE STATEMENT

First Liberty Institute is a nonprofit, public interest law firm and 501(c)(3) organization.  It has no parent corporation, and it does not issue stock.

# **TABLE OF CONTENTS**

INTEREST OF *AMICUS CURIAE*.............................................................1

SUMMARY OF THE ARGUMENT ..........................................................2

ARGUMENT ..............................................................................................3

    I.     THE BOSTON CITY COUNCIL'S INVOCATION
           PRACTICE IS CONSTITUTIONAL ....................................3

          A.    The Test for Determining Constitutionality Under
                 the Establishment Clause Is Whether the Relevant
                 Invocation Practice Is Consistent with the History
                 and Tradition of Legislative Prayer in America ........................3

          B.    The Boston City Council's Invocation Custom Is
                 Consistent with the History and Tradition of
                 Legislative Prayer in America ...................................................6

    II.    THE SATANIC TEMPLE'S ARGUMENTS TO THE
           CONTRARY FLOUT BINDING PRECEDENT AND
           ASK THIS COURT TO CREATE A CIRCUIT SPLIT.....................7

          A.    The Satanic Temple Seeks to Revive Dead
                 Precedent .....................................................................................8

          B.    The Satanic Temple Attempts to Extend
                 "Inclusivity" and "Nondiscrimination" Beyond
                 Their Recognized Scope ...........................................................10

          C.    The Satanic Temple Tries to Distort What
                 Constitutes Impermissible "Control".......................................14

          D.    The Satanic Temple Endeavors to Expand
                 "Coercion" and "Proselytization" Beyond
                 Recognition ................................................................................16

CONCLUSION .........................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Humanist Ass'n v. McCarty*,
   851 F.3d 521 (5th Cir. 2017) ...............................................................17

*Am. Legion v. Am. Humanist Ass'n*,
   588 U.S. 29 (2019) ........................................................................1, 5

*Barker v. Conroy*,
   921 F.3d 1118 (D.C. Cir. 2019) ..............................................................6

*Bormuth v. Cnty. of Jackson*,
   870 F.3d 494 (6th Cir. 2017) (en banc) ...............................2, 7, 17, 20

*Bruns v. Mayhew*,
   750 F.3d 61 (1st Cir. 2014) ..................................................................13

*Carson v. Makin*,
   596 U.S. 767 (2022) .............................................................................1

*Fields v. Speaker of Pa. House of Reps.*,
   936 F.3d 142 (3d Cir. 2019) ..........................................10, 12, 15, 17

*Firewalker-Fields v. Lee*,
   58 F.4th 104 (4th Cir. 2023) ..................................................................9

*Freedom From Religion Found., Inc. v. Mack*,
   49 F.4th 941 (5th Cir. 2022) ...................................................1–2, 6, 9

*Groff v. DeJoy*,
   600 U.S. 447 (2023) .............................................................................1, 8

*Hassan v. City of New York*,
   804 F.3d 277 (3d Cir. 2015) ............................................................11–12

*Johnson v. Duxbury*,
   931 F.3d 102 (1st Cir. 2019) ................................................................16

*Kennedy v. Bremerton Sch. Dist.*,
   597 U.S. 507 (2022) ........................................................................1, 5, 8

*Lemon v. Kurtzman*,
    403 U.S. 602 (1971) ................................................................4, 8–9

*Lund v. Rowan Cnty.*,
    863 F.3d 268 (4th Cir. 2017) (en banc) ......................................19–20

*Marsh v. Chambers*,
    463 U.S. 783 (1983) ..................................3–7, 10–12, 14, 17

*New Doe Child #1 v. United States*,
    901 F.3d 1015 (8th Cir. 2018) ..............................................6

*Perrier-Bilbo v. United States*,
    954 F.3d 413 (1st Cir. 2020) .................................................5

*Rojas v. City of Ocala*,
    40 F.4th 1347 (11th Cir. 2022) .............................................9

*St. Augustine Sch. v. Underly*,
    78 F.4th 349 (7th Cir. 2023) .................................................9

*Shurtleff v. City of Boston*,
    596 U.S. 243 (2022) ............................................................9

*Snyder v. Murray City Corp.*,
    159 F.3d 1227 (10th Cir. 1998) (en banc) .........................10–13, 15

*Town of Greece v. Galloway*,
    572 U.S. 565 (2014) ............................. 4, 6–7, 11–12, 15–16, 18–19

*Williamson v. Brevard Cnty.*,
    928 F.3d 1296 (11th Cir. 2019) .......................................15

**Other Authorities**

Cong. Globe, 35th Cong., 1st Sess. (Dec. 10, 1857) ...........................6–7

*Princess Bride* (Twentieth Century Fox 1987) ..........................................9

*Reports of Proceedings of the City Council of Boston for the Year
Commencing Jan. 1, 1909, and Ending Feb. 5, 1910* (1910), *available at*
http://tiny.cc/LittlePrayer* ..................................................18–19

## INTEREST OF *AMICUS CURIAE*

First Liberty Institute ("First Liberty") is a nonprofit, public interest law firm dedicated to defending religious liberty for all Americans through *pro bono* legal representation of individuals and institutes of diverse faiths—Catholic, Protestant, Islamic, Jewish, the Falun Gong, Native American religious practitioners, and others.[1] First Liberty has won several religious freedom cases at the U.S. Supreme Court, including *Groff v. DeJoy*, 600 U.S. 447 (2023); *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022); *Carson v. Makin*, 596 U.S. 767 (2022); and *American Legion v. American Humanist Association*, 588 U.S. 29 (2019).

As part of its mission, First Liberty has represented several government officials and entities against Establishment Clause challenges to their invocation practices. For instance, the Fifth Circuit recently upheld the prayer custom of First Liberty client Wayne Mack, a Texas Justice of the Peace, in a suit challenging his practice of having predominantly Christian guest chaplains open sessions of court with prayer. *See Freedom From Religion Found., Inc. v. Mack*, 49 F.4th 941 (5th

---

[1] The Satanic Temple, Inc. ("Satanic Temple") does not object to First Liberty filing an *amicus curiae* brief in this matter, but before the deadline to file this brief the City of Boston did not state its position whether it consented to filing. Thus, First Liberty has moved for leave to file this *amicus curiae* brief. No party or party's counsel has authored this brief, in whole or in part, or contributed money that was intended to fund preparing or submitting this brief. No person contributed money that was intended to fund preparing or submitting this brief besides *amicus curiae* First Liberty, its members, or its counsel.

1

Cir. 2022).  Before that, in the Sixth Circuit, First Liberty successfully defended the County of Jackson, Michigan's custom of legislator-led prayer in an Establishment Clause case claiming that the custom was ahistorical and unduly coercive.  *See Bormuth v. Cnty. of Jackson*, 870 F.3d 494 (6th Cir. 2017) (en banc).  Thus, First Liberty has a strong interest and expertise in the proper interpretation and application of the Establishment Clause, especially in cases where the First Amendment is weaponized to challenge historically grounded "legislative prayer" practices.

## SUMMARY OF THE ARGUMENT

Going back to the 1800s, the Boston City Council regularly has opened its meetings with an invocation.  This case is about allowing the Boston City Council to carry on that historical and ecumenical practice—one the Supreme Court has referenced approvingly—without having to turn the invocation opportunity into a free-for-all.  In granting summary judgment for the City of Boston, the district court correctly held, at bottom, that the Establishment Clause does not prohibit the Boston City Council's invocation practice as currently conducted and does not require the Boston City Council to invite the Satanic Temple to give an invocation.  Thus, this Court should affirm.

Asking this Court to hold otherwise, the Satanic Temple advances a hodgepodge of arguments about purported deficiencies in the Boston City Council's invocation practice. These arguments misapprehend the Supreme Court's

Establishment Clause precedents and contort the legislative-prayer decisions from other circuits. In effect, the Satanic Temple asks the Court to contravene binding authority and split from its sister circuits on any number of subsidiary questions implicated in the Establishment Clause analysis. The Court should reject this invitation.

**ARGUMENT**

## I. THE BOSTON CITY COUNCIL'S INVOCATION PRACTICE IS CONSTITUTIONAL

### A. The Test for Determining Constitutionality Under the Establishment Clause Is Whether the Relevant Invocation Practice Is Consistent with the History and Tradition of Legislative Prayer in America

Although the Satanic Temple proposes a variety of tests and standards that the Boston City Council's invocation practice purportedly fails as currently conducted, the central question in this appeal is simply whether that practice comports with the history and tradition of legislative prayer in America.

The practice of legislatures and "other deliberative public bodies" opening their sessions with prayer is "deeply embedded in the history and tradition of this country"—so deeply embedded that it predates the nation. *See Marsh v. Chambers*, 463 U.S. 783, 786–87 (1983). Indeed, this tradition was so commonplace that it took until 1983 for the Supreme Court to confront for the first time—and reject—a challenge to legislative prayer under the Establishment Clause. *See generally id.* In

*Marsh*, the Nebraska legislature had chosen and paid out of the public fisc the same Presbyterian minister for sixteen years to open its legislative sessions with generally "Judeo-Christian" prayers. *See id.* at 784–85, 792–93. A member of that legislature sued, claiming that this practice violated the Establishment Clause. *See id.* at 785. Under the Supreme Court's then-prevailing Establishment Clause jurisprudence, the court of appeals agreed. *See id.* at 786 (referencing *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971)). But brushing aside *Lemon*, *see Marsh*, 463 U.S. at 796 (Brennan, J., dissenting), the Supreme Court reversed, upholding the Nebraska legislature's prayer custom because it was consistent with the "history and tradition" of legislative prayer in this country, *see id.* at 786, 795 (majority opinion).

The Supreme Court has since recognized repeatedly that *Marsh*'s history-and-tradition test governs the Establishment Clause analysis in legislative-prayer cases, even while other tests applied in other kinds of Establishment Clause cases. *See, e.g.*, *Town of Greece v. Galloway*, 572 U.S. 565, 575 (2014). Thus, in *Town of Greece*, the Supreme Court followed *Marsh* to uphold a town's custom of opening its monthly board meetings with prayer from guest chaplains—who were almost exclusively Christian and who almost always uttered specifically Christian prayers—because the custom "fit[] within the tradition long followed in Congress and the state legislatures." *See* 572 U.S. at 570–72, 575, 577; *see also id.* at 615 (Breyer, J., dissenting); *id.* at 618 (Kagan, J., dissenting).

More recently, the Supreme Court has extended *Marsh*'s history-and-tradition test to *all* Establishment Clause cases. *See Kennedy*, 597 U.S. at 534–36. Recognizing that the other tests it had contrived to analyze claims under the Establishment Clause had "invited chaos in lower courts" and "created a minefield for legislators," the Supreme Court made clear in *Kennedy* that the "Establishment Clause must be interpreted by reference to historical practices and understandings" rather than other standards. *See id.* at 534–35 (internal quotation marks omitted).

Thus, even if *Marsh* left any question about the controlling test, *Kennedy* leaves no doubt that the question for the Court in this case is simply whether the Boston City Council's invocation practice "accord[s] with history." *See id.* at 536 (cleaned up).[2]

---

[2] Recently, the Supreme Court also has recognized that a "strong presumption of constitutionality" accompanies "established, religiously expressive . . . [governmental] practices" of various kinds. *See Am. Legion*, 588 U.S. at 57. The Satanic Temple argues that this presumption is "non-precedent," and thus not binding here, because it was announced by only a plurality of the Supreme Court. *See* Appellant Br. at 25. This argument is wrong. *See Am. Legion*, 588 U.S. at 52–57 (Part II-B) (opinion of Alito, J., joined by Roberts, C.J., and Breyer, Kagan, and Kavanaugh, JJ.); *id.* at 35 (noting that "Justice Alito . . . delivered the opinion of the Court with respect to Part[] . . . II-B"); *see also Perrier-Bilbo v. United States*, 954 F.3d 413, 425 (1st Cir. 2020) (following "the Supreme Court's . . . recent framework" by applying "*American Legion*'s presumption of constitutionality").

## B. The Boston City Council's Invocation Custom Is Consistent with the History and Tradition of Legislative Prayer in America

The relevant inquiry, then, is straightforward. To determine the constitutionality of the Boston City Council's invocation practice, the Court is to "identify the essential characteristics of the practice" and then "determine whether that practice falls within the tradition the Supreme Court has recognized as consistent with the Establishment Clause." *Barker v. Conroy*, 921 F.3d 1118, 1130 (D.C. Cir. 2019); *see also Mack*, 49 F.4th at 951 (similar); *New Doe Child #1 v. United States*, 901 F.3d 1015, 1021 (8th Cir. 2018) (similar).

The Boston City Council's invocation practice—essentially, opening meetings with an invocation given by rotating guest chaplains who are selected by Councilors on an *ad hoc* basis—easily passes that test. The practice of "local legislative bodies" like the Boston City Council opening their meetings with prayer has ample historical precedent. *See Town of Greece*, 572 U.S. at 576 (majority opinion) (referencing approvingly a prayer before the Boston City Council in 1909); Appellant Add. at 21 (reciting the undisputed fact that the Boston City Council's invocation practice dates back to the 1800s). So too, the use of invited guest chaplains in these customs has deep historical roots. *See, e.g.*, *Marsh*, 463 U.S. at 788 n.10 (noting how, on the heels of reaffirming its own elected-chaplaincy custom in the 1850s, Congress began "inviting local clergy to officiate" before reinstituting an elected chaplaincy); Cong. Globe, 35th Cong., 1st Sess. 25, 27 (Dec. 10, 1857)

6

(R. Morris) (noting, in the context of debating Congress's elected chaplaincy, the practice of "many . . . State legislatures[] of inviting neighboring pastors to act as their chaplains"); *see also Bormuth*, 870 F.3d at 510 (referencing a study relied on by the *Marsh* Court finding that every legislative body surveyed "honor requests from individual legislators . . . to invite a constituent minister to conduct the prayer" (cleaned up)).[3]  The invocation's place at the opening of the Boston City Council's sessions, and the variegated nature of the practice overall, further situates this custom well "within the tradition" of legislative prayer "long followed" in this country.  *See Town of Greece*, 572 U.S. at 577, 582–83; *see also* Appellant Add. at 21, 23 (recounting these undisputed facts about the Boston City Council's invocation practice).

## II. THE SATANIC TEMPLE'S ARGUMENTS TO THE CONTRARY FLOUT BINDING PRECEDENT AND ASK THIS COURT TO CREATE A CIRCUIT SPLIT

Although the Boston City Council's invocation practice easily passes the controlling history-and-tradition test under the Establishment Clause, the Satanic

---

[3] In fact, although an invocation practice generally led by just one chaplain is plainly constitutional, *see generally Marsh*, 463 U.S. 783, congressional debates over that practice in the 1850s suggest that an invocation practice led by guest chaplains was historically understood to be even more unassailable under the Establishment Clause, *see, e.g.*, Cong. Globe, 35th Cong., 1st Sess. 25, 25 (Dec. 10, 1857) (R. Dowdell) (introducing a later-adopted resolution to invite "the ministers of the Gospel in this city" to open legislative sessions with prayer and noting that the resolution "avoids many objections" to Congress's elected-chaplaincy custom).

Temple advances a variety of arguments why the Court should find that practice unconstitutional and reverse the district court. These arguments, however, contradict Supreme Court precedent and conflict with the law in other circuits on several subsidiary issues implicated in the Establishment Clause analysis. The Court should reject these arguments.

### A. The Satanic Temple Seeks to Revive Dead Precedent

The Satanic Temple first wrongly seeks reversal by invoking *Lemon*, in all but name, to argue that the Boston City Council's invocation practice amounts to an impermissible "endorsement of favored religions" and violates the "rule against excessive government entanglement with religion." Appellant Br. at 23, 27; *see also Kennedy*, 597 U.S. at 534 (discussing how *Lemon* required analyzing whether the challenged governmental action created the appearance of "an 'endorsement' of religion" or the "potential for entanglement with religion").

Setting aside that *Lemon* has never applied in the legislative-prayer context, *see supra*, in *Kennedy* the Supreme Court made unmistakably clear that "*Lemon* and its . . . offshoot[s]" no longer apply *at all* in cases arising under the Establishment Clause. *See Kennedy*, 597 U.S. at 534–35; *see also id.* at 546–47, 569 (Sotomayor, J., dissenting) (recognizing that the majority "completely repudiate[d]" *Lemon* and "replace[d]" it with a "'history and tradition' test"); *see also Groff*, 600 U.S. at 460 & n.7 (noting that *Kennedy* abrogated *Lemon*); *accord Firewalker-Fields v. Lee*, 58

F.4th 104, 121 & n.5 (4th Cir. 2023); *Rojas v. City of Ocala*, 40 F.4th 1347, 1351 (11th Cir. 2022). In other words, as Miracle Max the miracle man might have put it, even if *Lemon* was only "mostly dead" before *Kennedy*, it is now "all dead." *See Princess Bride* (Twentieth Century Fox 1987).

Thus, the Supreme Court has fully and finally interred "endorsement" and "entanglement" (along with the other facets of *Lemon*) and in their place established history and tradition as the lodestar under the Establishment Clause. *See, e.g.*, *Mack*, 49 F.4th at 954 n.20 ("History—not endorsement—matters." (citing *Kennedy*, 597 U.S. at 534–36)); *St. Augustine Sch. v. Underly*, 78 F.4th 349, 353 (7th Cir. 2023) (noting that *Lemon*'s inquiry into "entanglement" and the like "has been abrogated by the U.S. Supreme Court" (citing *Kennedy*, 597 U.S. at 534–36)). *Lemon*'s "long Night of the Living Dead . . . is now over." *Mack*, 49 F.4th at 954 n.20 (citing *Lamb's Chapel v. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 398 (1993) (Scalia, J., concurring in the judgment)).

The Satanic Temple nevertheless seeks "to drag *Lemon* once more from its grave." *See Shurtleff v. City of Boston*, 596 U.S. 243, 288 (2022) (Gorsuch, J., concurring in the judgment). But under *Marsh*, and especially after *Kennedy*, this Court must "let [*Lemon*] lie." *See id.*

9

### B. The Satanic Temple Attempts to Extend "Inclusivity" and "Nondiscrimination" Beyond Their Recognized Scope

The Satanic Temple incorrectly contends that the Boston City Council's invocation practice violates the Establishment Clause for failing to be "'an honest endeavor to achieve inclusivity and nondiscrimination,'" which—according to the Satanic Temple—requires that "the opportunity to give the prayer must be made available equally to all interested participants." Appellant Br. at 25, 28 (quoting *Am. Legion*, 588 U.S. at 63). This argument is mistaken.

First, *Marsh* forecloses the Satanic Temple's expansive, any-takers conception of "inclusivity." There, the Supreme Court upheld the Nebraska legislature's custom of having the same Presbyterian minister open its legislative sessions with prayer consistently for sixteen years, punctuated only occasionally for substitutes to preside during that minister's absences or by legislators' special request. 463 U.S. at 793 & n.14. Thus, under *Marsh*, the Establishment Clause does "not require that a legislative body ensure a kind of equal public access" in its prayer custom to anyone who wants to give one. *Snyder v. Murray City Corp.*, 159 F.3d 1227, 1233 (10th Cir. 1998) (en banc). And this principle holds true whether the invocation practice is led generally by the same chaplain (as in *Marsh*) or by varying guest chaplains (as here)—either way, the Establishment Clause does not impose an "accept all comers" requirement. *See Fields v. Speaker of Pa. House of Reps.*, 936 F.3d 142, 158 (3d Cir. 2019) (noting how such a requirement for guest-chaplain

programs would create an irrational "asymmetry" with *Marsh*'s approval of having "one paid chaplain from a single denomination in place for decades"); *accord Snyder*, 159 F.3d at 1233.

Second, the Satanic Temple's formulation of nondiscrimination, under which it claims to have experienced wrongful discrimination under the Establishment Clause by not being invited to give a prayer, is wrong three times over.

For one, the Satanic Temple incorrectly equates the Establishment Clause's nondiscrimination requirement with the Equal Protection Clause's nondiscrimination requirement. *See* Appellant Br. at 36–37 (relying on *Hassan v. City of New York*, 804 F.3d 277, 297–98 (3d Cir. 2015)). As the district court implicitly found, that equivalence is wrong. *See* Appellant Add. at 33–34, 47–48. In *Town of Greece*, the Supreme Court equated the Establishment Clause's "nondiscrimination" requirement with the absence of religion-based "aversion or bias." *See* 572 U.S. at 585–86. And *Town of Greece*'s motive-based understanding of discrimination under the Establishment Clause comports with *Marsh*'s requirement of an "impermissible motive" to render unconstitutional an otherwise-permissible legislative-prayer custom. *See Marsh*, 463 U.S. at 793–94; *see also id.* at 823 n.1 (Stevens, J., dissenting) (noting that the *Marsh* Court's "'impermissible motive'" requirement turned on "the subjective motivation of legislators"). By contrast, under the Equal Protection Clause, discrimination "need not be motivated

by ill will, enmity, or hostility" to be actionable. *See Hassan*, 804 F.3d at 298 (internal quotation marks omitted).

Also, given the Satanic Temple's own submissions in this case, the Boston City Council was well within its rights to decline extending an invitation to the Satanic Temple to give an invocation without committing wrongful discrimination. Under the Establishment Clause, a prayer custom may not be "exploited . . . to disparage any other . . . faith or belief." *See Marsh*, 463 U.S. at 794–95. Thus, "the Establishment Clause condemns" a legislative prayer that "strays across th[e] line" into "disparagement." *Snyder*, 159 F.3d at 1234. And while occasional prayers of this sort "do not despoil a practice that on the whole" is consistent with the tradition of "solemn, respectful prayer approved in *Marsh*," *see Town of Greece*, 572 U.S. at 585, 590, a legislative body nonetheless "has the discretion to prevent a proposed prayer that would be intolerable to that tradition," *Snyder*, 159 F.3d at 1236; *see also Fields*, 936 F.3d at 157 (observing that "nondiscrimination" in this context does not require a legislative body to "abide prayers from . . . Satanists . . . and groups that deride religion").

There is no question that the prayer the Satanic Temple has proposed to give before the Boston City Council would be intolerable to the tradition of solemn, respectful prayer approved in *Marsh*. According to the Satanic Temple, had it received an opportunity to give an invocation, it would have uttered the following:

Let us stand now unavowed and *unfettered by arcane doctrines borne of fearful minds in darkened times*.  Let us embrace the Luciferian impulse to eat of the tree of knowledge and dissipate our blissful and *comforting delusions of old*.  Let us demand that individuals be judged for their concrete actions not their fealty to *arbitrary social norms and elusory categorizations*.  Let us reason our solutions with agnosticism in all things, holding fast only to that which is demonstrably true.  Let us stand firm against any and all *arbitrary authority that threatens the personal sovereignty of one or of all*.  That which will not bend must break and that which can be destroyed by the truth should never be spared its demise.  It is done.  Hail Satan.

*See* Appellant App. at 101–03 (emphases added).  Given the derisive and disparaging tenor of this prayer, the Boston City Council would have been "well within its rights under *Marsh* to deny permission for [the Satanic Temple] to recite [its] proposed prayer."  *See Snyder*, 159 F.3d at 1235.  Thus, the Boston City Council's failure to invite the Satanic Temple to give an invocation cannot constitute wrongful discrimination.

Further, even if the Satanic Temple's equivalence between Establishment Clause discrimination and Equal Protection Clause discrimination were correct, the Satanic Temple's argument fails on its own terms.  Under the Equal Protection Clause, a party claiming discrimination "must show state-imposed disparate treatment compared with others similarly situated 'in all relevant respects.'"  *Bruns v. Mayhew*, 750 F.3d 61, 65 (1st Cir. 2014).  This standard requires the Satanic Temple to show "that the parties with whom [it] seeks to be compared have engaged in the same activity vis-à-vis the government entity without such distinguishing or

13

mitigating circumstances as would render the comparison inutile." *Id.* at 66 (internal quotation marks omitted). But the Satanic Temple itself asserts that such distinguishing circumstances are present here—according to it, the Boston City Council has reserved the prayer opportunity for "friends and political allies alone," of which the Satanic Temple is neither. *See* Appellant Br. at 22. Thus, the Satanic Temple's argument is self-defeating. Even under the Equal Protection Clause, no wrongful discrimination occurred here because, by the Satanic Temple's own telling, it is not similarly situated in all relevant respects to those who have received invocation invitations.

### C. The Satanic Temple Tries to Distort What Constitutes Impermissible "Control"

The Satanic Temple also wrongly argues that, to comply with the Establishment Clause, "governments may not control prayer, not even surreptitiously by controlling who gives a customary blessing over government meetings." Appellant Br. at 27. Not so.

Once again, *Marsh* forecloses this argument. There, a committee of the Nebraska legislature chose the same Presbyterian minister biennially for sixteen years to open the legislature's sessions with prayer (and paid him a salary for his services). *See* 463 U.S. at 784–85, 793. *Marsh* blessed such an arrangement as "grounded in historic practice." *See id.* at 793 n.13, 793–94. Thus, *Marsh* "establish[es] the constitutional principle that a legislative body does not violate the

Establishment Clause when it chooses a particular person to give its invocational prayers." *Snyder*, 159 F.3d at 1233.

Similarly, and contrary to the Satanic Temple's suggestion, the combination of the Boston City Councilors' "unfettered discretion" to select guest chaplains and the "invitation-only" nature of the prayer opportunity does not inherently violate the Establishment Clause. *See* Appellant Br. at 28, 31–32. That a legislative body lacks a "formal, written policy" regarding its invocation practice and leaves the "selection of speakers . . . to the discretion of individual" legislators does not by itself pose a "constitutional problem." *See Williamson v. Brevard Cnty.*, 928 F.3d 1296, 1314 (11th Cir. 2019); *see also Town of Greece*, 572 U.S. at 598 (Alito, J., concurring) (observing that a local government does not violate the Establishment Clause "simply because its procedure for lining up guest chaplains does not comply in all respects with what might be termed a 'best practices' standard"); *cf. Fields*, 936 F.3d at 157 (noting, in the legislative-prayer context, that "the perfect should not be the enemy of the good"). Rather, what matters is how the prayer custom actually operates. *See Williamson*, 928 F.3d at 1314–15. So long as religion-based "aversion or bias" does not taint the custom's operation, there is no Establishment Clause problem. *See Town of Greece*, 572 U.S. at 585–86 (majority opinion).

Also in this vein, the Satanic Temple erroneously attempts to paint a sinister picture of the Boston City Council's purported, antecedent "review" of guest-

chaplain prayers to "effectuate its control" over those prayers, referencing two examples from the record where the text of a guest chaplain's prayer was emailed to Councilors or their aides without any commentary to or from the Council. *See* Appellant Br. at 29 (citing Appellant App. at 800, 804). This is much ado about nothing. Even if these emails could be considered "review," such review would be a problem only if it amounted to the Boston City Council acting as a "supervisor[] . . . of religious speech" to "promote a preferred system of belief" or "prescribe a religious orthodoxy." *See Town of Greece*, 572 U.S. at 581. But there is no factual support for the Satanic Temple's suggestion that this was happening here. And at the summary-judgment stage, the Satanic Temple was required to present more than its own "improbable inferences . . . and unsupported speculation" on this point. *See Johnson v. Duxbury*, 931 F.3d 102, 105 (1st Cir. 2019).

### D. The Satanic Temple Endeavors to Expand "Coercion" and "Proselytization" Beyond Recognition

Finally, the Satanic Temple's claim that the Boston City Council's invocation practice is impermissibly "exploited to proselytize" is meritless. *See* Appellant Br. at 33–36, 36 n.5. In making this argument, the Satanic Temple asserts that the Boston City Council "sometimes directs the audience to participate in the prayer" by asking them to "please rise" and that the invocation "sometimes takes the form of 'a sermon'" (referencing one example of a purported "sermon" introduced by

16

now-U.S. Representative Ayanna Pressley). *See id.* These facts—assuming they are facts—do not pose an Establishment Clause problem.

First, the Boston City Council's "please rise" requests are not unconstitutionally coercive. Consider *Fields*. 936 F.3d 142. There, as part of its prayer custom, the Pennsylvania House of Representatives both posted a sign outside the legislative chamber asking "all guests who are physically able . . . to stand during the prayer" and had the Speaker of the House introduce the prayer by requesting "members and all guests" to "please rise" for it. *See id.* at 161 (cleaned up). The Third Circuit held that such "mere[] requests" did not violate the Establishment Clause. *See id.* at 162–63; *see also Am. Humanist Ass'n v. McCarty*, 851 F.3d 521, 526 (5th Cir. 2017) (observing that a school board's "polite requests" to audience members to "stand for [an] invocation" before meetings did "not coerce prayer"). This conclusion necessarily follows from the nation's history and tradition of legislative prayer, which presumes that adults are "not readily susceptible to religious indoctrination or peer pressure." *See Marsh*, 463 U.S. at 792 (cleaned up). Thus, the Boston City Council did not violate the Establishment Clause by politely soliciting "members of the public to assist in solemnizing the meetings by rising" during the opening invocation. *See Bormuth*, 870 F.3d at 517.

Second, the occasional prayer that invokes a specific tradition or makes a spiritual request—that is, the "sermon" with which the Satanic Temple takes issue—does not render the Boston City Council's invocation practice unconstitutional.

For one, the prayer in question is not problematic under the Establishment Clause. The Satanic Temple takes issue with the fact that, during the opening invocation in September 2016, a Christian faith leader asked "the God of Abraham to 'order their [the councilors'] steps' and to direct them 'how to pray.'" Appellant Br. at 36 & n.5. But the reference to a specific religious tradition, or the making of a spiritual request in prayer, is generally irrelevant in this context. Compare this prayer to the Reverend Arthur Little's prayer before the Boston City Council in 1909, cited approvingly in *Town of Greece*, *see* 572 U.S. at 576:

> Almighty God, our Heavenly Father . . . . we desire to invoke Thy presence, Thy blessing and Thy guidance upon [the town's officials] . . . . Bless Thou these men, who, by the suffrages of the people and by the appointment of God—for they are the ministers of God—to-day are to take into their care and keeping the administration in part of the affairs of this city . . . . may the cause of righteousness, our civic righteousness, be promoted. . . . Lead Thou us on, and if our lives are spared to the end of the year may each one of us come to its close with a consciousness that under Thy divine love we have tried to serve our country, we have tried to serve our city, we have tried to serve our fellow-men, we have tried to serve our God. And to Him we will give the praise and honor, dominion and power, for He is the source of all power, world without end. Amen.

*Reports of Proceedings of the City Council of Boston for the Year Commencing Jan. 1, 1909, and Ending Feb. 5, 1910* at 1–2 (1910), *available at*

18

http://tiny.cc/LittlePrayer.  Though more than a century apart, these similar prayers both "fit[] within the tradition" of legislative prayer "long followed" in this country and thus readily comport with the Establishment Clause.  *See Town of Greece*, 572 U.S. at 576–77.

Further, even if this prayer in September 2016 were problematic under the Establishment Clause by crossing the line into proselytizing rhetoric (though it is not), such occasional episodes "do not despoil a practice that on the whole reflects and embraces our tradition" of legislative prayer.  *See id.* at 585.  Here, tellingly, although more than a decade's worth of the Boston City Council's weekly meetings are viewable online, the Satanic Temple has mustered just this one example of a purportedly impermissible prayer.[4]  Thus, even if the Satanic Temple were correct about this particular prayer, there is no dispute that the Boston City Council's "prayer opportunity as a whole" is constitutional.  *See id.*

*Lund v. Rowan County* is not to the contrary.  *See* Appellant Br. at 33, 35 (citing 863 F.3d 268, 281, 286–87 (4th Cir. 2017) (en banc)).  There, the *en banc* Fourth Circuit found a county custom of legislator-led prayer unconstitutional not because of "any particular feature alone" but rather because of the "combination" of all its features, including "invocations that drew exclusively on Christianity and

---

[4] *See* https://www.youtube.com/@BostonCityCouncil/videos.

sometimes served to advance that faith" as well as having government officials "as the sole prayer-givers." *Lund*, 863 F.3d at 281. Undisputedly, the Boston City Council's ecumenical and guest-chaplain-led invocation custom involves no "combination" of such features. Thus, *Lund* is inapt. *See also Bormuth*, 870 F.3d at 509 n.5, 512–13, 518 (finding *Lund* "unpersuasive" while also distinguishing it because of the "litany" of proselytizing and disparaging prayers at issue in it).

## CONCLUSION

Under the history-and-tradition test that has always governed legislative-prayer cases like this one, the Boston City Council's legislative-prayer custom is constitutional. The Court should reject the Satanic Temple's invitation to flout binding precedent and create a circuit split by concluding otherwise. Instead, the Court should affirm the district court's judgment that the Boston City Council's invocation practice comports with the Establishment Clause.

Dated: March 25, 2024

Respectfully submitted,

*/s/ Joel S. Nolette*
Joel S. Nolette (# 1209712)
Stephen J. Obermeier
Krystal B. Swendsboe
Kahlil H. Epps
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
(202) 719-7000
jnolette@wiley.law

Lea E. Patterson
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway
Suite 1600
Plano, TX 75075
(972) 941-4444
lepatterson@firstliberty.org

*Counsel for* Amicus Curiae *First Liberty Institute*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Joel S. Nolette, hereby certify that this brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 4,844 words.

I, Joel S. Nolette, also hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, Microsoft 365 Apps for Enterprise, in fourteen-point Times New Roman font.

Dated: March 25, 2024

*/s/ Joel S. Nolette*
Joel S. Nolette

*Counsel for* Amicus Curiae *First Liberty Institute*

## <u>CERTIFICATE OF SERVICE</u>

I, Joel S. Nolette, certify that on March 25, 2024, I caused the foregoing to be filed with the Clerk of Court of the U.S. Court of Appeals for the First Circuit by using the Court's CM/ECF system.  I further certify that all counsel of record will be served by the CM/ECF system.

*/s/ Joel S. Nolette*
Joel S. Nolette

*Counsel for* Amicus Curiae *First Liberty Institute*